**CHIEF'S PREFACE**

The Fontana Police Department has a solid reputation for providing a level of service to its diverse community that is considered second to none. This service could not be achieved without the dedicated employees that make up the Fontana Police Department. The general orders contained in this manual will not only serve our employees as a resource guide, but will guarantee the service we provide is delivered in a fair and consistent manner. It is important for employees of the Fontana Police Department to take an active role in the evolution of the general orders contained in this manual. As the role of the police department evolves, so to must this manual. This manual must be viewed as an instrument to assist our employees in providing a level of service that our community has come to enjoy. It is our responsibility to maintain the public safety of the community and preserve the quality of life our citizens deserve. This is a responsibility the Fontana Police Department firmly recognizes and makes a priority on a daily basis. One of the most important aspects of this manual is to ensure the safety of our employees and residents. Adhering to the tenets of this manual will provide the best opportunity to provide this level of service in a safe and impartial manner.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000613

**LAW ENFORCEMENT CODE OF ETHICS**

As a law enforcement officer, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice.

I will keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency. I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I will never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

I recognize the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.

I know that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence.

I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession . . . law enforcement.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000614

## MISSION, VISION STATEMENT AND CORE VALUES

### MISSION STATEMENT

- The Fontana Police Department is committed to protecting the community by providing quality "Service with Integrity." As an organization, we will continue to build diverse community based partnerships. These partnerships will be guided by innovation and perseverance to ensure Fontana's future as a well-developed, dignified, and respected community in the Inland Empire.

### VISION

- Dedicated to excellence and professionalism, we are committed to working with the people of Fontana to enhance the safety and security of our diverse community.

### CORE VALUES

- **Tradition**: We are a tradition rich organization, respectful of past accomplishments, optimistic about current challenges, and inspirationally leading the way for Fontana's future.
- **Excellence**: We strive for excellence in all we do. We work to identify our organizational vulnerabilities and are committed to improvement via training, communication, and initiative.
- **Accountability**: We hold ourselves accountable for our deeds. We are aware of the impact our actions have and are dedicated to providing service with integrity.
- **Mindful**: We are mindful of the trust and confidence placed in us by the community. We honor this responsibility and strive for validation each and every day.

**"TEAM" Fontana Police Department**

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000615

# Table of Contents

**Chief's Preface.** . . . . . . . . . . . . . . . . . . . . . . . . **1**

**Law Enforcement Code of Ethics.** . . . . . . . . . . . . . . . . . . . **2**

**Mission, Vision Statement and Core Values.** . . . . . . . . . . . . . . . **3**

**Chapter 1 - Law Enforcement Role and Authority.** . . . . . . . . . . . . . **9**
100 - Law Enforcement Authority. . . . . . . . . . . . . . . . . . . 10
102 - Chief Executive Officer. . . . . . . . . . . . . . . . . . . . 14
104 - Oath of Office. . . . . . . . . . . . . . . . . . . . . . . 15
106 - Policy Manual. . . . . . . . . . . . . . . . . . . . . . . 16

**Chapter 2 - Organization and Administration.** . . . . . . . . . . . . . . **19**
200 - Organizational Structure and Responsibility. . . . . . . . . . . . . 20
204 - Special Order. . . . . . . . . . . . . . . . . . . . . . . 22
206 - Emergency Operations Plan. . . . . . . . . . . . . . . . . . 23
208 - Training. . . . . . . . . . . . . . . . . . . . . . . . . 24
212 - Electronic Mail. . . . . . . . . . . . . . . . . . . . . . 27
214 - Administrative Communications. . . . . . . . . . . . . . . . . 29
216 - Staffing Levels. . . . . . . . . . . . . . . . . . . . . . 30
218 - License to Carry a Firearm. . . . . . . . . . . . . . . . . . 31
220 - Retiree Concealed Firearms. . . . . . . . . . . . . . . . . . 37

**Chapter 3 - General Operations.** . . . . . . . . . . . . . . . . . . . **42**
300 - Use of Force. . . . . . . . . . . . . . . . . . . . . . . 43
306 - Handcuffing and Restraints. . . . . . . . . . . . . . . . . . 54
308 - Control Devices and Techniques. . . . . . . . . . . . . . . . 58
309 - Conducted Energy Device. . . . . . . . . . . . . . . . . . . 63
310 - Officer-Involved Shootings and Deaths. . . . . . . . . . . . . . 69
312 - Firearms. . . . . . . . . . . . . . . . . . . . . . . . 78
314 - Vehicle Pursuits. . . . . . . . . . . . . . . . . . . . . . 90
316 - Officer Response to Calls. . . . . . . . . . . . . . . . . . 102
318 - Canines. . . . . . . . . . . . . . . . . . . . . . . . . 105
320 - Domestic Violence. . . . . . . . . . . . . . . . . . . . . 117
322 - Search and Seizure. . . . . . . . . . . . . . . . . . . . 133
324 - Temporary Custody of Juveniles. . . . . . . . . . . . . . . . 136
326 - Senior and Disability Victimization. . . . . . . . . . . . . . . 149
328 - Discriminatory Harassment. . . . . . . . . . . . . . . . . . 164
330 - Child Abuse. . . . . . . . . . . . . . . . . . . . . . . 170
332 - Missing Persons. . . . . . . . . . . . . . . . . . . . . . 178
334 - Public Alerts. . . . . . . . . . . . . . . . . . . . . . . 185
335 - Code Red Notification System. . . . . . . . . . . . . . . . . 191
336 - Victim and Witness Assistance. . . . . . . . . . . . . . . . . 196
338 - Hate Crimes. . . . . . . . . . . . . . . . . . . . . . . 200

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000616

340 - Standards of Conduct. . . . . 205
344 - Report Preparation. . . . . 213
345 - Online Reporting. . . . . 220
346 - Media Relations. . . . . 222
348 - Subpoenas and Court Appearances. . . . . 226
350 - Reserve Officers. . . . . 230
351 - Technical Reserves. . . . . 236
352 - Mutual Aid and Outside Agency Assistance. . . . . 237
356 - Registered Offender Information. . . . . 238
358 - Major Incident Notification. . . . . 242
360 - Death Investigation. . . . . 244
362 - Identity Theft. . . . . 248
364 - Private Persons Arrests. . . . . 249
365 - Noise Ordinance. . . . . 251
368 - Limited English Proficiency Services. . . . . 254
370 - Communications with Persons with Disabilities. . . . . 262
372 - Mandatory Employer Notification. . . . . 270
374 - Biological Samples. . . . . 272
375 - DNA Processing. . . . . 276
376 - Chaplains. . . . . 280
380 - Child and Dependent Adult Safety. . . . . 286
382 - Service Animals. . . . . 289
386 - Off-Duty Law Enforcement Actions. . . . . 292
389 - Department Use of Social Media. . . . . 294
390 - Gun Violence Restraining Orders. . . . . 297

**Chapter 4 - Patrol Operations. . . . . 303**

400 - Patrol Function. . . . . 304
402 - Bias-Based Policing. . . . . 306
404 - Briefing Training. . . . . 310
406 - Crime and Disaster Scene Integrity. . . . . 311
408 - Inland Valley SWAT. . . . . 313
410 - Ride-Along Policy. . . . . 323
412 - Hazardous Material Response. . . . . 332
414 - Hostage and Barricade Incidents. . . . . 334
415 - BARRICADED SUBJECTS. . . . . 340
416 - Response to Bomb Calls. . . . . 346
418 - Mental Illness Commitments. . . . . 351
420 - Cite and Release Policy. . . . . 357
422 - Foreign Diplomatic and Consular Representatives. . . . . 361
424 - Rapid Response and Deployment. . . . . 365
428 - Immigration Violations. . . . . 367
430 - Emergency Utility Service. . . . . 373
433 - Aircraft Accidents. . . . . 374
434 - Use of Narcan (Naloxone). . . . . 378
435 - Field Training Officer Program. . . . . 380
437 - Obtaining Air Support. . . . . 383

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000617

439 - Contacts and Temporary Detentions. . . . . . . . . . . . . . . . . . . 384
441 - Criminal Organizations. . . . . . . . . . . . . . . . . . . . . . . 388
447 - Mobile Data Computer Use. . . . . . . . . . . . . . . . . . . . . . 393
449 - Body Worn Computer. . . . . . . . . . . . . . . . . . . . . . . . 396
450 - Medical Marijuana. . . . . . . . . . . . . . . . . . . . . . . . . 408
452 - Bicycle Patrol Unit. . . . . . . . . . . . . . . . . . . . . . . . 413
460 - Automated License Plate Readers (ALPRs). . . . . . . . . . . . . . . . 416
463 - Public Recording of Law Enforcement Activity. . . . . . . . . . . . . . 419
464 - Medical Aid and Response. . . . . . . . . . . . . . . . . . . . . . 422
465 - Suspicious Activity Reporting. . . . . . . . . . . . . . . . . . . . 426
466 - Crisis Intervention Incidents. . . . . . . . . . . . . . . . . . . . 428
467 - Civil Disputes. . . . . . . . . . . . . . . . . . . . . . . . . . 433
468 - Policy Title. . . . . . . . . . . . . . . . . . . . . . . . . . . 435
469 - First Amendment Assemblies. . . . . . . . . . . . . . . . . . . . . 436
470 - Verified Alarm. . . . . . . . . . . . . . . . . . . . . . . . . . 443
471 - Facial Recognition. . . . . . . . . . . . . . . . . . . . . . . . 445

**Chapter 5 - Traffic Operations. . . . . . . . . . . . . . . . . . . . . 450**

500 - Traffic Function and Responsibility. . . . . . . . . . . . . . . . . . 451
502 - Traffic Collision Reporting. . . . . . . . . . . . . . . . . . . . . 454
510 - Vehicle Towing and Release. . . . . . . . . . . . . . . . . . . . . 456
512 - Vehicle Impound Hearings. . . . . . . . . . . . . . . . . . . . . . 460
514 - Impaired Driving. . . . . . . . . . . . . . . . . . . . . . . . . 462
516 - Traffic Citations. . . . . . . . . . . . . . . . . . . . . . . . . 467
520 - Disabled Vehicles. . . . . . . . . . . . . . . . . . . . . . . . . 470
524 - 72-Hour Parking Violations. . . . . . . . . . . . . . . . . . . . . 471
527 - Motorcycle Assigned to Traffic Enforcement. . . . . . . . . . . . . . . 473

**Chapter 6 - Investigation Operations. . . . . . . . . . . . . . . . . . . 475**

600 - Investigation and Prosecution. . . . . . . . . . . . . . . . . . . . 476
602 - Sexual Assault Investigations. . . . . . . . . . . . . . . . . . . . 483
603 - Informants. . . . . . . . . . . . . . . . . . . . . . . . . . . . 489
606 - Asset Forfeiture. . . . . . . . . . . . . . . . . . . . . . . . . 496
609 - Cellular Site Simulator Usage and Privacy. . . . . . . . . . . . . . . 502
612 - Brady Material Disclosure. . . . . . . . . . . . . . . . . . . . . . 505
613 - Unmanned Aerial System (UAS) Operations. . . . . . . . . . . . . . . . 507

**Chapter 7 - Equipment. . . . . . . . . . . . . . . . . . . . . . . . . 510**

700 - Department Owned and Personal Property. . . . . . . . . . . . . . . . 511
702 - Personal Communication Devices. . . . . . . . . . . . . . . . . . . 514
704 - Vehicle Maintenance. . . . . . . . . . . . . . . . . . . . . . . . 517
706 - Vehicle Use. . . . . . . . . . . . . . . . . . . . . . . . . . . 519
707 - Cash Handling, Security and Management. . . . . . . . . . . . . . . . 524
708 - Long Range Acoustical Device (LRAD). . . . . . . . . . . . . . . . . 526
709 - Military Equipment. . . . . . . . . . . . . . . . . . . . . . . . 528

**Chapter 8 - Support Services. . . . . . . . . . . . . . . . . . . . . . 531**

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000618

800 - Crime Analysis. . . . . . . . . . . . . . . . . . . . . . 532
802 - The Dispatch Center. . . . . . . . . . . . . . . . . . . . 533
804 - Property and Evidence. . . . . . . . . . . . . . . . . . . 538
806 - Records Bureau. . . . . . . . . . . . . . . . . . . . . . 554
808 - Restoration of Firearm Serial Numbers. . . . . . . . . . . . . 556
810 - Records Maintenance and Release. . . . . . . . . . . . . . . 558
812 - Protected Information. . . . . . . . . . . . . . . . . . . 568
814 - Computers and Digital Evidence. . . . . . . . . . . . . . . 572
820 - Animal Control. . . . . . . . . . . . . . . . . . . . . . 576
821 - Handling Wildlife Calls. . . . . . . . . . . . . . . . . . . 581
822 - Guidelines for using pharmaceuticals by authorized employees. . . . . . 583

**Chapter 9 - Custody. . . . . . . . . . . . . . . . . . . . . 585**

900 - Temporary Custody of Adults. . . . . . . . . . . . . . . . . 586
902 - Custodial Searches. . . . . . . . . . . . . . . . . . . . 608
904 - Prison Rape Elimination. . . . . . . . . . . . . . . . . . 613

**Chapter 10 - Personnel. . . . . . . . . . . . . . . . . . . . 623**

1000 - Recruitment and Selection. . . . . . . . . . . . . . . . . 624
1004 - Promotional and Transfer Policy. . . . . . . . . . . . . . . 631
1010 - Reporting of Employee Convictions. . . . . . . . . . . . . . 636
1011 - Peer Support Program. . . . . . . . . . . . . . . . . . . 638
1012 - Drug- and Alcohol-Free Workplace. . . . . . . . . . . . . . 645
1014 - Communicable Diseases. . . . . . . . . . . . . . . . . . 648
1015 - Unscheduled Leave Policy. . . . . . . . . . . . . . . . . . 653
1018 - Smoking and Tobacco Use. . . . . . . . . . . . . . . . . . 655
1020 - Personnel Complaints. . . . . . . . . . . . . . . . . . . 656
1022 - Seat Belts. . . . . . . . . . . . . . . . . . . . . . . 668
1024 - Body Armor. . . . . . . . . . . . . . . . . . . . . . . 670
1026 - Personnel Records. . . . . . . . . . . . . . . . . . . . 671
1028 - Request for Change of Assignment. . . . . . . . . . . . . . 680
1030 - Commendations and Awards. . . . . . . . . . . . . . . . . 682
1032 - Fitness for Duty. . . . . . . . . . . . . . . . . . . . . 683
1034 - Meal Periods and Breaks. . . . . . . . . . . . . . . . . . 687
1035 - Lactation Break Policy. . . . . . . . . . . . . . . . . . . 689
1036 - Payroll Record Procedures. . . . . . . . . . . . . . . . . . 691
1038 - Overtime Compensation Requests. . . . . . . . . . . . . . . 692
1039 - Vacation, Earned Compensation and Shift Trade Requests. . . . . . . 694
1040 - Outside Employment. . . . . . . . . . . . . . . . . . . . 695
1042 - Occupational Disease and Work-Related Injury Reporting. . . . . . . . 700
1044 - Personal Appearance Standards. . . . . . . . . . . . . . . . 702
1046 - Uniform Regulations. . . . . . . . . . . . . . . . . . . . 706
1048 - Police Cadets. . . . . . . . . . . . . . . . . . . . . . 714
1050 - Nepotism and Conflicting Relationships. . . . . . . . . . . . . 716
1051 - Facility Security and Identification. . . . . . . . . . . . . . 719
1052 - Department Badges. . . . . . . . . . . . . . . . . . . . 722
1054 - Transitional (Light) Duty Assignments. . . . . . . . . . . . . . 724

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000619

1056 - Employee Speech, Expression and Social Networking. . . . . . . . . . 729

**Attachments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 733**
COUNTY PURSUIT MOU.pdf. . . . . . . . . . . . . . . . . . . . . . . . 734
Uniform Equipt Specs Maunal 10-13-21 FINAL.pdf. . . . . . . . . . . . . . 735
FONTANA POLICE MILITARY EQUIPMENT INVENTORY.pdf. . . . . . . . . 736
Uniform Equipt Specs Maunal 02-13-23 FINAL.pdf. . . . . . . . . . . . . . 737
Hate Crime Checklist.pdf. . . . . . . . . . . . . . . . . . . . . . . . 738
Statutes and Legal Requirements.pdf. . . . . . . . . . . . . . . . . . . 739
Commission on Peace Officer Standards and Training Hate Crimes Model Policy 2019.pdf. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 740
Uniform Equipment Specs.pdf. . . . . . . . . . . . . . . . . . . . . . 741
Uniform Equipt Specs Maunal 03-14-18 FINAL.pdf. . . . . . . . . . . . . . 742
Supplemental Hate Crime Report.pdf. . . . . . . . . . . . . . . . . . . 743

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000620

# Chapter 1 - Law Enforcement Role and Authority

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000621

# Chapter 3 - General Operations

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000654

# Use of Force

## 300.1 PURPOSE AND SCOPE

This policy provides guidelines on the reasonable use of force. While there is no way to specify the exact amount or type of reasonable force to be applied in any situation, every member of this department is expected to use these guidelines to make such decisions in a professional, impartial, and reasonable manner (Government Code § 7286).

In addition to those methods, techniques, and tools set forth below, the guidelines for the reasonable application of force contained in this policy shall apply to all policies addressing the potential use of force, including but not limited to the Control Devices and Techniques and Conducted Energy Device policies.

Retaliation prohibitions for reporting suspected violations are addressed in the Anti-Retaliation Policy.

### 300.1.1 DEFINITIONS

Definitions related to this policy include:

**Deadly force** - Any use of force that creates a substantial risk of causing death or serious bodily injury, including but not limited to the discharge of a firearm (Penal Code § 835a).

**Feasible** - Reasonably capable of being done or carried out under the circumstances to successfully achieve the arrest or lawful objective without increasing risk to the officer or another person (Government Code § 7286(a)).

**Force** - The application of physical techniques or tactics, chemical agents, or weapons to another person. It is not a use of force when a person allows him/herself to be searched, escorted, handcuffed, or restrained.

**Serious bodily injury** - A serious impairment of physical condition, including but not limited to the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement (Penal Code § 243(f)(4)).

**Totality of the circumstances** - All facts known to the officer at the time, including the conduct of the officer and the subject leading up to the use of force (Penal Code § 835a).

## 300.2 POLICY

The use of force by law enforcement personnel is a matter of critical concern, both to the public and to the law enforcement community. Officers are involved on a daily basis in numerous and varied interactions and, when warranted, may use reasonable force in carrying out their duties.

Officers must have an understanding of, and true appreciation for, their authority and limitations. This is especially true with respect to overcoming resistance while engaged in the performance of law enforcement duties.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000655

The Department recognizes and respects the value of all human life and dignity without prejudice to anyone. Vesting officers with the authority to use reasonable force and to protect the public welfare requires monitoring, evaluation and a careful balancing of all interests.

### 300.2.1 DUTY TO INTERCEDE

Any officer present and observing another law enforcement officer or an employee using force that is clearly beyond that which is necessary, as determined by an objectively reasonable officer under the circumstances, shall, when in a position to do so, intercede (as defined by Government Code § 7286) to prevent the use of unreasonable force.

When observing force used by a law enforcement officer, each officer should take into account the totality of the circumstances and the possibility that other law enforcement officers may have additional information regarding the threat posed by the subject (Government Code § 7286(b)).

### 300.2.2 FAIR AND UNBIASED USE OF FORCE

Officer are expected to carry out their duties, including the use of force, in a manner that is fair and unbiased (Government Code § 7286(b)). See the Bias-Based Policing Policy for additional guidance.

### 300.2.3 DUTY TO REPORT EXCESSIVE FORCE

Any officer who observes a law enforcement officer or an employee use force that potentially exceeds what the officer reasonably believes to be necessary shall immediately report these observations to a supervisor (Government Code § 7286(b)).

As used in this subsection, "immediately" means as soon as it is safe and feasible to do so.

### 300.2.4 FAILURE TO INTERCEDE

An officer who has received the required training on the duty to intercede and then fails to act to intercede when required by law, may be disciplined in the same manner as the officer who used force beyond that which is necessary (Government Code § 7286(b)).

## 300.3 USE OF FORCE

Officers shall use only that amount of force that reasonably appears necessary given the facts and totality of the circumstances known to or perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose (Penal Code § 835a).

The reasonableness of force will be judged from the perspective of a reasonable officer on the scene at the time of the incident. Any evaluation of reasonableness must allow for the fact that officers are often forced to make split-second decisions about the amount of force that reasonably appears necessary in a particular situation, with limited information and in circumstances that are tense, uncertain, and rapidly evolving.

Given that no policy can realistically predict every possible situation an officer might encounter, officers are entrusted to use well-reasoned discretion in determining the appropriate use of force in each incident. Officers may only use a level of force that they reasonably believe is proportional to

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000656

the seriousness of the suspected offense or the reasonably perceived level of actual or threatened resistance (Government Code § 7286(b)).

It is also recognized that circumstances may arise in which officers reasonably believe that it would be impractical or ineffective to use any of the approved or authorized tools, weapons, or methods provided by the Department. Officers may find it more effective or reasonable to improvise their response to rapidly unfolding conditions that they are confronting. In such circumstances, the use of any improvised device or method must nonetheless be objectively reasonable and utilized only to the degree that reasonably appears necessary to accomplish a legitimate law enforcement purpose.

While the ultimate objective of every law enforcement encounter is to avoid or minimize injury, nothing in this policy requires an officer to retreat or be exposed to possible physical injury before applying reasonable force.

### 300.3.1 USE OF FORCE TO EFFECT AN ARREST

Any peace officer may use objectively reasonable force to effect an arrest, to prevent escape, or to overcome resistance. A peace officer who makes or attempts to make an arrest need not retreat or desist from his/her efforts by reason of resistance or threatened resistance on the part of the person being arrested; nor shall an officer be deemed the aggressor or lose his/her right to self-defense by the use of reasonable force to effect the arrest, prevent escape, or to overcome resistance. Retreat does not mean tactical repositioning or other de-escalation techniques (Penal Code § 835a).

### 300.3.2 FACTORS USED TO DETERMINE THE REASONABLENESS OF FORCE

When determining whether to apply force and evaluating whether an officer has used reasonable force, a number of factors should be taken into consideration, as time and circumstances permit (Government Code § 7286(b)). These factors include but are not limited to:

(a) The apparent immediacy and severity of the threat to officers or others (Penal Code § 835a).

(b) The conduct of the individual being confronted, as reasonably perceived by the officer at the time (Penal Code § 835a).

(c) Officer/subject factors (age, size, relative strength, skill level, injuries sustained, level of exhaustion or fatigue, the number of officers available vs. subjects).

(d) The conduct of the involved officer leading up to the use of force (Penal Code § 835a).

(e) The effects of suspected drugs or alcohol.

(f) The individual's apparent mental state or capacity (Penal Code § 835a).

(g) The individual’s apparent ability to understand and comply with officer commands (Penal Code § 835a).

(h) Proximity of weapons or dangerous improvised devices.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000657

(i) The degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained.

(j) The availability of other reasonable and feasible options and their possible effectiveness (Penal Code § 835a).

(k) Seriousness of the suspected offense or reason for contact with the individual.

(l) Training and experience of the officer.

(m) Potential for injury to officers, suspects, bystanders, and others.

(n) Whether the person appears to be resisting, attempting to evade arrest by flight, or is attacking the officer.

(o) The risk and reasonably foreseeable consequences of escape.

(p) The apparent need for immediate control of the subject or a prompt resolution of the situation.

(q) Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the officer or others.

(r) Prior contacts with the subject or awareness of any propensity for violence.

(s) Any other exigent circumstances.

### 300.3.3 PAIN COMPLIANCE TECHNIQUES

Pain compliance techniques may be effective in controlling a physically or actively resisting individual. Officers may only apply those pain compliance techniques for which they have successfully completed department-approved training. Officers utilizing any pain compliance technique should consider:

(a) The degree to which the application of the technique may be controlled given the level of resistance.

(b) Whether the person can comply with the direction or orders of the officer.

(c) Whether the person has been given sufficient opportunity to comply.

The application of any pain compliance technique shall be discontinued once the officer determines that compliance has been achieved.

### 300.3.4 ALTERNATIVE TACTICS - DE-ESCALATION

As time and circumstances reasonably permit, and when community and officer safety would not be compromised, officers should consider actions that may increase officer safety and may decrease the need for using force:

(a) Summoning additional resources that are able to respond in a reasonably timely manner.

(b) Formulating a plan with responding officers before entering an unstable situation that does not reasonably appear to require immediate intervention.

(c) Employing other tactics that do not unreasonably increase officer jeopardy.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

Fontana PD Policy Manual



In addition, when reasonable, officers should evaluate the totality of circumstances presented at the time in each situation and, when feasible, consider and utilize reasonably available alternative tactics and techniques that may persuade an individual to voluntarily comply or may mitigate the need to use a higher level of force to resolve the situation before applying force (Government Code § 7286(b)).

### 300.3.5 RESTRICTIONS ON THE USE OF A CHOKE HOLD

Officers of this department are not authorized to use a choke hold. A choke hold means any defensive tactic or force option in which direct pressure is applied to a person's trachea or windpipe (Government Code § 7286.5).

### 300.3.6 ADDITIONAL RESTRICTIONS

Terms such as "positional asphyxia," "restraint asphyxia," and "excited delirium" continue to remain the subject of debate among experts and medical professionals, are not universally recognized medical conditions, and frequently involve other collateral or controlling factors such as narcotics or alcohol influence or pre-existing medical conditions. While it is impractical to restrict an officer's use of reasonable control methods when attempting to restrain a combative individual, officers are not authorized to use any restraint or transportation method which might unreasonably impair an individual's breathing or respiratory capacity for a period beyond the point when the individual has been adequately and safely controlled. Once the individual is safely secured, officers should promptly check and continuously monitor the individual's condition for signs of medical distress (Government Code § 7286.5).

## 300.4 CAROTID CONTROL HOLD

The proper application of the carotid control hold may be effective in restraining a violent or combative individual. However, the use of the carotid control hold is subject to the following:

(a) The officer shall have successfully completed department-approved training in the use and application of the carotid control hold.

(b) The carotid control hold may only be used when circumstances perceived by the officer at the time indicate that such application is in accordance with section 300.5 Deadly Force.

(c) Any individual who has had the carotid control hold applied, regardless of whether he/she was rendered unconscious, shall be promptly examined by paramedics or other qualified medical personnel and should be monitored until examined by paramedics or other appropriate medical personnel.

(d) The officer shall inform any person receiving custody, or any person placed in a position of providing care, that the individual has been subjected to the carotid control hold and whether the subject lost consciousness as a result.

(e) Any officer attempting or applying the carotid control hold shall promptly notify a supervisor of the use or attempted use of such hold.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000659

(f) The use or attempted use of the carotid control hold shall be thoroughly documented by the officer in any related reports.

**300.5 DEADLY FORCE APPLICATIONS**

Where feasible, the officer shall, prior to the use of deadly force, make reasonable efforts to identify him/herself as a peace officer and to warn that deadly force may be used, unless the officer has objectively reasonable grounds to believe the person is aware of those facts (Penal Code 835a).

If an objectively reasonable officer would consider it safe and feasible to do so under the totality of the circumstances, officers shall evaluate and use other reasonably available resources and techniques when determining whether to use deadly force. To the extent that it is reasonably practical, officers should consider their surroundings and any potential risks to bystanders prior to discharging a firearm (Government Code § 7286(b)).

The use of deadly force is only justified when the officer reasonably believes it is necessary in the following circumstances (Penal Code § 835a):

(a) An officer may use deadly force to protect him/herself or others from what he/she reasonably believes is an imminent threat of death or serious bodily injury to the officer or another person.

(b) An officer may use deadly force to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the officer reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended.

Officers shall not use deadly force against a person based on the danger that person poses to him/herself, if an objectively reasonable officer would believe the person does not pose an imminent threat of death or serious bodily injury to the officer or to another person (Penal Code § 835a).

An “imminent” threat of death or serious bodily injury exists when, based on the totality of the circumstances, a reasonable Officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the Officer or another person. An officer’s subjective fear of future harm alone is insufficient as an imminent threat. An imminent threat is one that from appearances is reasonably believed to require instant attention (Penal Code § 835a).

300.5.1 SHOOTING AT OR FROM MOVING VEHICLES

When feasible, officers should take reasonable steps to move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants. An officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others (Government Code § 7286(b)).

Officers should not shoot at any part of a vehicle in an attempt to disable the vehicle.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000660

### 300.5.2 WARNING SHOTS

Generally, warning shots fired for the purpose of summoning aid are discouraged and may not be discharged unless the officer reasonably believes that they appear necessary, effective and reasonably safe.

### 300.5.3 DISPLAYING OF FIREARMS

Given that individuals might perceive the display of a firearm as a potential application of force, officers should carefully evaluate each tactical situation and use sound discretion when drawing a firearm in public by considering the following guidelines (Government Code § 7286(b)):

(a) If the officer does not initially perceive a threat but reasonably believes that the potential for such threat exists, firearms should generally be kept in the low-ready or other position not directed toward an individual.

(b) If the officer reasonably believes that a threat exists based on the totality of circumstances presented at the time (e.g., high-risk stop, tactical entry, armed encounter), firearms may be directed toward such threat until the officer no longer perceives such threat.

Once it is reasonably safe to do so, officers should carefully secure all firearms. Any intentional pointing of a firearm at an individual by an officer should be verbally reported to a supervisor or documented in applicable report.

## 300.6 REPORTING THE USE OF FORCE

Any use of force by a member of this department shall be documented promptly, completely, and accurately in an appropriate report, depending on the nature of the incident. The officer should articulate the factors perceived and why he/she believed the use of force was reasonable under the circumstances.

### 300.6.1 NOTIFICATION TO SUPERVISORS

Any use of force by an officer shall be reported immediately to a supervisor, including but not limited to the following circumstances (Penal Code § 832.13):

(a) The application caused a visible injury.

(b) The application would lead a reasonable officer to conclude that the individual may have experienced more than momentary discomfort.

(c) The individual subjected to the force complained of injury or continuing pain.

(d) The individual indicates intent to pursue litigation.

(e) Any application of a conducted energy device or control device.

(f) Any application of a restraint device other than handcuffs, shackles, or belly chains.

(g) The individual subjected to the force was rendered unconscious.

(h) An individual was struck or kicked.

(i) An individual alleges unreasonable force was used or that any of the above has occurred.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000661

As used in this subsection, "immediately" means as soon as it is safe and feasible to do so.

300.6.2 REPORTING TO CALIFORNIA DEPARTMENT OF JUSTICE
Statistical data regarding all officer-involved shootings and incidents involving use of force resulting in serious bodily injury is to be reported to the California Department of Justice as required by Government Code § 12525.2. See the Records Bureau Policy.

300.6.3 REPORT RESTRICTIONS
Officers shall not use the term "excited delirium" to describe an individual in an incident report. Officers may describe the characteristics of an individual's conduct, but shall not generally describe the individual's demeanor, conduct, or physical and mental condition at issue as "excited delirium" (Health and Safety Code § 24402).

**300.7 MEDICAL CONSIDERATION**
Once it is reasonably safe to do so, properly trained officers should promptly provide or procure medical assistance for any person injured or claiming to have been injured in a use of force incident (Government Code § 7286(b)).

Prior to booking or release, medical assistance shall be obtained for any person who exhibits signs of physical distress, who has sustained visible injury, expresses a complaint of injury or continuing pain, or who was rendered unconscious. Any individual exhibiting signs of physical distress after an encounter should be continuously monitored until he/she can be medically assessed.

Based upon the officer’s initial assessment of the nature and extent of the subject’s injuries, medical assistance may consist of examination by fire personnel, paramedics, hospital staff, or medical staff at the jail. If any such individual refuses medical attention, such a refusal shall be fully documented in related reports and, whenever practicable, should be witnessed by another officer and/or medical personnel. If a recording is made of the contact or an interview with the individual, any refusal should be included in the recording, if possible.

The on-scene supervisor or, if the on-scene supervisor is not available, the primary handling officer shall ensure that any person providing medical care or receiving custody of a person following any use of force is informed that the person was subjected to force. This notification shall include a description of the force used and any other circumstances the officer reasonably believes would be potential safety or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration).

Persons who exhibit extreme agitation, violent irrational behavior accompanied by profuse sweating, extraordinary strength beyond their physical characteristics and imperviousness to pain (sometimes called “excited delirium”), or who require a protracted physical encounter with multiple officers to be brought under control, may be at an increased risk of sudden death. Calls involving these persons should be considered medical emergencies. Officers who reasonably suspect a medical emergency should request medical assistance as soon as practicable and have medical personnel stage away if appropriate.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000662

See the Medical Aid and Response Policy for additional guidelines.

## 300.8 SUPERVISOR RESPONSIBILITY

A supervisor should respond to any reported use of force, if reasonably available. The responding supervisor is expected to (Government Code § 7286(b)):

(a) Obtain the basic facts from the involved officers. Absent an allegation of misconduct or excessive force, this will be considered a routine contact in the normal course of duties.

(b) Ensure that any injured parties are examined and treated.

(c) When possible, separately obtain a recorded interview with the subject upon whom force was applied. If this interview is conducted without the person having voluntarily waived his/her *Miranda* rights, the following shall apply:

1. The content of the interview should not be summarized or included in any related criminal charges.

2. The fact that a recorded interview was conducted should be documented in a property or other report.

3. The recording of the interview should be distinctly marked for retention until all potential for civil litigation has expired.

(d) Once any initial medical assessment has been completed or first aid has been rendered, ensure that photographs have been taken of any areas involving visible injury or complaint of pain, as well as overall photographs of uninjured areas. These photographs should be retained until all potential for civil litigation has expired.

(e) Identify any witnesses not already included in related reports.

(f) Review and approve all related reports.

(g) Determine if there is any indication that the subject may pursue civil litigation.

1. If there is an indication of potential civil litigation, the supervisor should complete and route a notification of a potential claim through the appropriate channels.

(h) Evaluate the circumstances surrounding the incident and initiate an administrative investigation if there is a question of policy non-compliance or if for any reason further investigation may be appropriate.

In the event that a supervisor is unable to respond to the scene of an incident involving the reported application of force, the supervisor is still expected to complete as many of the above items as circumstances permit.

## 300.9 BODY WORN CAMERA REQUIREMENT
### ACTIVATION OF A BODY WORN CAMERA (BWC)

An employee should activate the BWC to record uses of force. Pursuant to The Body Worn Camera Policy 451, employees should activate the BWC prior to required contacts, or as soon as safely possible to do so.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000663

Fontana PD Policy Manual



The safety of employees and members of the public is the highest priority, and the department acknowledges there may be situations in which operation of the device is impractical or may be an impediment to public or employee safety.

**REVIEW OF USE OF FORCE BWC DIGITAL FILES**

The BWC policy allows for the review of BWC digital files. An employee may review his or her own BWC recording and an employee may share a BWC recording with other employees as outlined in the BWC policy.

The BWC policy allows for an administrative review of an employee's BWC digital files for limited administrative purposed as outlined in the BWC policy.More specifically, an administrative review of BWC digital files is allowed on an incident involving a use of force by an employee, including canines, which results in injury or death.

## 300.10 USE OF FORCE COMPLAINTS

The receipt, processing, and investigation of civilian complaints involving use of force incidents should be handled in accordance with the Personnel Complaints Policy (Government Code § 7286(b)).

## 300.11 USE OF FORCE ANALYSIS

The Fontana Police Department requires all use of force incidents to be analyzed by two supervisors, holding the rank of sergeant or above. This process provides supervisors the ability to provide involved officers with immediate feedback on performance and reinforce department policy. The analysis should include all available written, photographed, and video evidence related to the incident.

Any potential policy violations should be detailed in a memorandum addressed to the commander of the division the involved employee is primarily assigned to.

Additionally, instances of employees demonstrating meritorious conduct during a use of force incident should be documented into the Guardian Tracking system.

In addition to routine reporting and dialog, the Field Services and Special Operations Division Commanders will meet regularly with the Sergeants and Lieutenants assigned to their command to address the following:

(a) The identification of any trends in use of force by members

(b) Training needs and recommendations

(c) Equipment needs recommendations

(d) Policy revision recommendations

Identified trends and training needs should be reported to the Administrative Services Division Commander for incorporation into the annual training plan.

Identified trends and training needs should be reported to the Administrative Services Division Commander for incorporation into the annual training plan.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000664

### 300.12 POLICY REVIEW

The Chief of Police or the authorized designee should regularly review and update this policy to reflect developing practices and procedures (Government Code § 7286(b)).

### 300.13 POLICY AVAILABILITY

The Chief of Police or the authorized designee should ensure this policy is accessible to the public (Government Code § 7286(c)).

### 300.14 PUBLIC RECORDS REQUESTS

Requests for public records involving an officers's personnel records shall be processed in accordance with Penal Code § 832.7 and the Personnel Records and Records Maintenance and Release policies (Government Code § 7286(b)).

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000665

# Control Devices and Techniques

## 308.1 PURPOSE AND SCOPE

This policy provides guidelines for the use and maintenance of control devices that are described in this policy.

## 308.2 POLICY

In order to control subjects who are violent or who demonstrate the intent to be violent, the Fontana Police Department authorizes officers to use control devices in accordance with the guidelines in this policy and the Use of Force Policy.

## 308.3 ISSUING, CARRYING AND USING CONTROL DEVICES

Control devices described in this policy may be carried and used by members of this department only if the device has been issued by the Department or approved by the Chief of Police or the authorized designee.

Only officers who have successfully completed department-approved training in the use of any control device are authorized to carry and use the device.

Control devices may be used when a decision has been made to control, restrain or arrest a subject who is violent or who demonstrates the intent to be violent, and the use of the device appears reasonable under the circumstances. When reasonable, a verbal warning and opportunity to comply should precede the use of these devices.

When using control devices, officers should carefully consider potential impact areas in order to minimize injuries and unintentional targets.

## 308.4 RESPONSIBILITIES

### 308.4.1 WATCH COMMANDER RESPONSIBILITIES

The Watch Commander may authorize the use of a control device by selected personnel or members of specialized units who have successfully completed the required training.

### 308.4.2 USER RESPONSIBILITIES

All normal maintenance, charging or cleaning shall remain the responsibility of personnel using the various devices.

Any damaged, inoperative, outdated or expended control devices or munitions, along with documentation explaining the cause of the damage, shall be returned to the Rangemaster for disposition. Damage to City property forms shall also be prepared and forwarded through the chain of command, when appropriate, explaining the cause of damage.

## 308.5 BATON GUIDELINES

The need to immediately control a suspect must be weighed against the risk of causing serious injury. The head, neck, throat, spine, heart, kidneys and groin should not be intentionally targeted

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000670

except when the officer reasonably believes the suspect poses an imminent threat of serious bodily injury or death to the officer or others.

When carrying a baton, uniformed personnel shall carry the baton in its authorized holder on the equipment belt. Plainclothes and non-field personnel may carry the baton as authorized and in accordance with the needs of their assignment or at the direction of their supervisor.

## 308.6 TEAR GAS GUIDELINES

Tear gas may be used for crowd control, crowd dispersal or against barricaded suspects based on the circumstances. Only the Watch Commander, Incident Commander or Crisis Response Unit Commander may authorize the delivery and use of tear gas, and only after evaluating all conditions known at the time and determining that such force reasonably appears justified and necessary.

When practicable, fire personnel should be alerted or summoned to the scene prior to the deployment of tear gas to control any fires and to assist in providing medical aid or gas evacuation if needed.

## 308.7 OLEORESIN CAPSICUM (OC) GUIDELINES

As with other control devices, oleoresin capsicum (OC) spray and pepper projectiles may be considered for use to bring under control an individual or groups of individuals who are engaging in, or are about to engage in violent behavior. Pepper projectiles and OC spray should not, however, be used against individuals or groups who merely fail to disperse or do not reasonably appear to present a risk to the safety of officers or the public.

### 308.7.1 OC SPRAY

Uniformed personnel carrying OC spray shall carry the device in its holster on the equipment belt. Plainclothes and non-field personnel may carry OC spray as authorized, in accordance with the needs of their assignment or at the direction of their supervisor.

### 308.7.2 PEPPER PROJECTILE SYSTEMS

Pepper projectiles are plastic spheres that are filled with a derivative of OC powder. Because the compressed gas launcher delivers the projectiles with enough force to burst the projectiles on impact and release the OC powder, the potential exists for the projectiles to inflict injury if they strike the head, neck, spine or groin. Therefore, personnel using a pepper projectile system should not intentionally target those areas, except when the officer reasonably believes the suspect poses an imminent threat of serious bodily injury or death to the officer or others.

Officers encountering a situation that warrants the use of a pepper projectile system shall notify a supervisor as soon as practicable. A supervisor shall respond to all pepper projectile system incidents where the suspect has been hit or exposed to the chemical agent. The supervisor shall ensure that all notifications and reports are completed as required by the Use of Force Policy.

Each deployment of a pepper projectile system shall be documented. Unintentional discharges shall be promptly reported to a supervisor. Only non-incident use of a pepper projectile system, such as training and product demonstrations, is exempt from the reporting requirement.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000671

#### 308.7.3 TREATMENT FOR OC SPRAY EXPOSURE

Persons who have been sprayed with or otherwise affected by the use of OC should be promptly provided with clean water to cleanse the affected areas. Those persons who complain of further severe effects shall be examined by appropriate medical personnel.

### 308.8 POST-APPLICATION NOTICE

Whenever tear gas or OC has been introduced into a residence, building interior, vehicle or other enclosed area, officers should provide the owners or available occupants with notice of the possible presence of residue that could result in irritation or injury if the area is not properly cleaned. Such notice should include advisement that clean up will be at the owner’s expense. Information regarding the method of notice and the individuals notified should be included in related reports.

### 308.9 KINETIC ENERGY PROJECTILE GUIDELINES

This department is committed to reducing the potential for violent confrontations. Kinetic energy projectiles, when used properly, are less likely to result in death or serious physical injury and can be used in an attempt to de-escalate a potentially deadly situation.

#### 308.9.1 DEPLOYMENT AND USE

Only department-approved kinetic energy munitions shall be carried and deployed. Approved munitions may be used to compel an individual to cease his/her actions when such munitions present a reasonable option.

Officers are not required or compelled to use approved munitions in lieu of other reasonable tactics if the involved officer determines that deployment of these munitions cannot be done safely. The safety of hostages, innocent persons and officers takes priority over the safety of subjects engaged in criminal or suicidal behavior.

Circumstances appropriate for deployment include, but are not limited to, situations in which:

(a) The suspect is armed with a weapon and the tactical circumstances allow for the safe application of approved munitions.

(b) The suspect has made credible threats to harm him/herself or others.

(c) The suspect is engaged in riotous behavior or is throwing rocks, bottles or other dangerous projectiles at people and/or officers.

(d) There is probable cause to believe that the suspect has already committed a crime of violence and is refusing to comply with lawful orders.

#### 308.9.2 DEPLOYMENT CONSIDERATIONS

Before discharging projectiles, the officer should consider such factors as:

(a) Distance and angle to target.

(b) Type of munitions employed.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000672

Fontana PD Policy Manual



(c) Type and thickness of subject's clothing.

(d) The subject's proximity to others.

(e) The location of the subject.

(f) Whether the subject's actions dictate the need for an immediate response and the use of control devices appears appropriate.

A verbal warning of the intended use of the device should precede its application, unless it would otherwise endanger the safety of officers or when it is not practicable due to the circumstances. The purpose of the warning is to give the individual a reasonable opportunity to voluntarily comply and to warn other officers and individuals that the device is being deployed.

Officers should keep in mind the manufacturer's recommendations and their training regarding effective distances and target areas. However, officers are not restricted solely to use according to manufacturer recommendations. Each situation must be evaluated on the totality of circumstances at the time of deployment.

The need to immediately incapacitate the subject must be weighed against the risk of causing serious injury or death. The head, neck, chest, spine, and groin should not be intentionally targeted, except when the officer reasonably believes the suspect poses an imminent threat of serious bodily injury or death to the officer or others.

### 308.9.3 SAFETY PROCEDURES

Launchers specifically designated for use with kinetic energy projectiles will be specially marked in a manner that makes them readily identifiable as such.

Officers will inspect the launcher and projectiles at the beginning of each shift to ensure that the launcher is in proper working order and the projectiles are of the approved type and appear to be free from defects.

When it is not deployed, the launcher will be unloaded and properly and securely stored in the vehicle. When deploying the kinetic energy projectile launcher, the officer shall visually inspect the kinetic energy projectiles to ensure that an unauthorized munition is not being loaded into the launcher.

Due to the fact that the lower receiver of the kinetic energy projectile launcher is similar to the lower receiver of the patrol rifle, no officer shall deploy and/or sling both the kinetic energy projectile launcher and the patrol rifle simultaneously.

## 308.10 TRAINING FOR CONTROL DEVICES

The Training Sergeant shall ensure that all personnel who are authorized to carry a control device have been properly trained and certified to carry the specific control device and are retrained or recertified as necessary.

(a) Proficiency training shall be monitored and documented by a certified, control-device weapons or tactics instructor.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000673

Fontana PD Policy Manual



(b) All training and proficiency for control devices will be documented in the officer's training file.

(c) Officers who fail to demonstrate proficiency with the control device or knowledge of this agency's Use of Force Policy will be provided remedial training. If an officer cannot demonstrate proficiency with a control device or knowledge of this agency's Use of Force Policy after remedial training, the officer will be restricted from carrying the control device and may be subject to discipline.

## 308.11 REPORTING USE OF CONTROL DEVICES AND TECHNIQUES

Any application of a control device or technique listed in this policy shall be documented in the related incident report and reported pursuant to the Use of Force Policy.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000674

# Vehicle Pursuits

## 314.1 PURPOSE AND SCOPE

This policy provides guidelines for vehicle pursuits in order to protect the safety of involved officers, the public, and fleeing suspects.

### 314.1.1 DEFINITIONS

**Blocking** - A low-speed tactic where one or more authorized police department emergency vehicles intentionally restrict the movement of a suspect vehicle, with the goal of containment or preventing a pursuit. Blocking is not boxing in or a roadblock.

**Boxing-in** - A tactic designed to stop a suspect's moving vehicle by surrounding it with law enforcement vehicles and then slowing all vehicles to a stop.

**Pursuit Intervention** - An attempt to stop the suspect's ability to continue to flee in a vehicle through tactical application of technology, tire deflation devices, blocking or vehicle intercept, boxing-in, the PIT (known as Pursuit Intervention Technique or Precision Immobilization Technique), ramming, or roadblock procedures.

**Pursuit Intervention Technique (PIT)** - A low-speed tactic intentionally applied to cause the suspect vehicle to spin out and terminate the pursuit.

**Ramming** - The deliberate act of impacting a suspect's vehicle with another vehicle to functionally damage or otherwise force the suspect's vehicle to stop.

**Roadblocks** - A tactic designed to stop a suspect's vehicle by intentionally placing an emergency vehicle or other immovable object in the path of the suspect's vehicle.

**Tire deflation device** - A device that extends across the roadway designed to puncture the tires of the pursued vehicle, sometimes referred to as spike strips.

**Terminate** - To discontinue a pursuit or stop chasing fleeing vehicles.

**Trail** - Following the path of the pursuit at a safe speed while obeying all traffic laws and without activating emergency equipment. If the pursuit is at a slow rate of speed, the trailing vehicle will maintain sufficient distance from the pursuit vehicles so as to clearly indicate an absence of participation in the pursuit

**Vehicle Pursuit** - An event involving one or more law enforcement officers attempting to apprehend a suspect, who is attempting to avoid arrest while operating a motor vehicle by using high-speed driving or other evasive tactics, such as driving off a highway, turning suddenly, or driving in a legal manner but willfully failing to yield to an officer's signal to stop.

## 314.2 OFFICER RESPONSIBILITIES

Vehicle pursuits shall only be conducted using authorized police department emergency vehicles that are equipped with and displaying emergency lighting and sirens as required by Vehicle Code

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000702

§ 21055. Officers are responsible for continuously driving with due regard and caution for the safety of all persons and property (Vehicle Code § 21056).

### 314.2.1 WHEN TO INITIATE A PURSUIT

Officers are authorized to initiate a pursuit when the officer reasonably believes that a suspect, who has been given appropriate signal to stop by a law enforcement officer, is attempting to evade arrest or detention by fleeing in a vehicle.

Factors that should be considered in deciding whether to initiate a pursuit include:

(a) The seriousness of the known or reasonably suspected crime and its relationship to community safety.

(b) The importance of protecting the public and balancing the known or reasonably suspected offense and the apparent need for immediate capture against the risks to officers, innocent motorists, and others.

(c) The safety of the public in the area of the pursuit, including the type of area, time of day, the amount of vehicular and pedestrian traffic (e.g., school zones), and the speed of the pursuit relative to these factors.

(d) The pursuing officers familiarity with the area of the pursuit, the quality of radio communications between the pursuing units and the dispatcher, and the driving capabilities of the pursuing officers under the conditions of the pursuit.

(e) Whether weather, traffic, and road conditions unreasonably increase the danger of the pursuit when weighed against the risk of the suspect's escape.

(f) Whether the identity of the suspect has been verified and whether there is comparatively minimal risk in allowing the suspect to be apprehended at a later time.

(g) The performance capabilities of the vehicles used in the pursuit in relation to the speeds and other conditions of the pursuit.

(h) Emergency lighting and siren limitations on unmarked police department vehicles that may reduce visibility of the vehicle, such as visor or dash-mounted lights, concealable or temporary emergency lighting equipment, and concealed or obstructed siren positioning.

(i) Suspect and officer vehicle speeds.

(j) Other persons in or on the pursued vehicle (e.g., passengers, co-offenders, hostages).

(k) Availability of other resources such as air support or vehicle locator or deactivation technology.

### 314.2.2 WHEN TO TERMINATE A PURSUIT

Pursuits should be terminated whenever the totality of objective circumstances known or which reasonably ought to be known to the officer or supervisor during the pursuit indicates that the present risks of continuing the pursuit reasonably appear to outweigh the risks resulting from the suspect’s escape.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000703

The factors listed in this policy on when to initiate a pursuit will apply equally to the decision to terminate a pursuit. Officers and supervisors must objectively and continuously weigh the seriousness of the offense against the potential danger to innocent motorists, themselves, and the public when electing to continue a pursuit.

In addition to the factors that govern when to initiate a pursuit, other factors should be considered in deciding whether to terminate a pursuit, including:

(a) The distance between the pursuing vehicle and the fleeing vehicle is so great that further pursuit would be futile or require the pursuit to continue for an unreasonable time and/or distance.

(b) The pursued vehicle's location is no longer definitely known.

(c) The pursuing vehicle sustains damage or a mechanical failure that renders it unsafe to drive.

(d) The pursuing vehicle's emergency lighting equipment or siren becomes partially or completely inoperable.

(e) Hazards to uninvolved bystanders or motorists.

(f) The danger that the continued pursuit poses to the public, the officers, or the suspect, balanced against the risk of allowing the suspect to remain at large.

(g) The identity of the suspect is known and it does not reasonably appear that the need for immediate capture outweighs the risks associated with continuing the pursuit.

(h) Extended pursuits of violators for misdemeanors not involving violence, risk of serious harm, or weapons (independent of the pursuit) are generally discouraged.

### 314.2.3 SPEED LIMITS

The speed of a pursuit is a factor that should be evaluated on a continuing basis by the officer and supervisor. Evaluation of vehicle speeds should take into consideration public safety, officer safety, and the safety of the occupants of the fleeing vehicle.

Should high vehicle speeds be reached during a pursuit, officers and supervisors should also consider these factors when determining the reasonableness of the speed of the pursuit:

(a) Pursuit speeds have become unreasonably unsafe for the surrounding conditions.

(b) Pursuit speeds have exceeded the driving ability of the officer.

(c) Pursuit speeds are beyond the capabilities of the pursuit vehicle thus making its operation unsafe.

## 314.3 PURSUIT UNITS

When involved in a pursuit, unmarked police department emergency vehicles should be replaced by marked emergency vehicles whenever practicable.

Vehicle pursuits should be limited to three vehicles (two units and a supervisor); however, the number of units involved may vary with the circumstances.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000704

Fontana PD Policy Manual



An officer or supervisor may request additional units to join a pursuit if, after assessing the factors outlined above, it reasonably appears that the number of officers involved may be insufficient to safely arrest the suspects. All other officers should stay out of the pursuit, but should remain alert to its progress and location. Any officer who drops out of a pursuit may then, if necessary, proceed to the termination point at legal speeds, following the appropriate rules of the road.

### 314.3.1 MOTORCYCLE OFFICERS

When involved in a pursuit, police department motorcycles should be replaced by marked four-wheel emergency vehicles as soon as practicable.

### 314.3.2 UNMARKED POLICE VEHICLES

Unmarked police vehicles, with emergency equipment, are generally prohibited from initiating or joining in any pursuit. Officers in such vehicles, however, may become involved in emergency activities involving known or suspected felony crimes. Those officers should terminate their involvement in any pursuit immediately upon arrival of a sufficient number of marked police emergency vehicles or any helicopter. The exemptions provided by Vehicle Code § 21055 do not apply to officers using vehicles without emergency equipment. Any unmarked police vehicles without emergency equipment shall not be involved in any pursuits.

### 314.3.3 PRIMARY UNIT RESPONSIBILITIES

The initial pursuing unit will be designated as the primary pursuit unit and will be responsible for the conduct of the pursuit unless the officer is unable to remain reasonably close to the suspect's vehicle. The primary responsibility of the officer initiating the pursuit is the apprehension of the suspects without unreasonable danger to any person.

The primary unit should notify the dispatcher commencing with a request for priority radio traffic, that a vehicle pursuit has been initiated, and as soon as practicable provide information including but not limited to:

(a) The location, direction of travel, and estimated speed of the suspect's vehicle.
(b) The description of the suspect's vehicle including license plate number, if known.
(c) The reason for the pursuit.
(d) Known or suspected weapons. Threat of force, violence, injuries, hostages, or other unusual hazards.
(e) The suspected number of occupants and identity or description.
(f) The weather, road, and traffic conditions.
(g) The need for any additional resources or equipment.
(h) The identity of other law enforcement agencies involved in the pursuit.

Until relieved by a supervisor or secondary unit, the officer in the primary unit is responsible for the broadcasting of the progress of the pursuit. Unless circumstances reasonably indicate otherwise, the primary pursuing officer should, as soon as practicable, relinquish the responsibility of broadcasting the progress of the pursuit to a secondary unit or air support joining the pursuit

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000705

Fontana PD Policy Manual



to minimize distractions and allow the primary pursuing officer to concentrate foremost on safe pursuit tactics.

### 314.3.4 SECONDARY UNIT RESPONSIBILITIES

The second officer in the pursuit will be designated as the secondary unit and is responsible for:

(a) Immediately notifying the dispatcher of entry into the pursuit.

(b) Remaining a safe distance behind the primary unit unless directed to assume the role of primary pursuit vehicle or if the primary pursuit vehicle is unable to continue the pursuit.

(c) Broadcasting the progress, updating known or critical information, and providing changes in the pursuit, unless the situation indicates otherwise.

(d) Identifying the need for additional resources or equipment as appropriate.

(e) Serving as backup to the primary pursuing officer once the suspect has been stopped.

### 314.3.5 PURSUIT DRIVING

The decision to use specific driving tactics requires the same assessment of the factors the officer considered when determining whether to initiate and/or terminate a pursuit. The following are tactics for units involved in the pursuit:

(a) Officers, considering their driving skills and vehicle performance capabilities, will space themselves from other involved vehicles such that they are able to see and avoid hazards or react safely to maneuvers by the fleeing vehicle.

(b) Because intersections can present increased risks, the following tactics should be considered:

1. Available units not directly involved in the pursuit may proceed safely to controlled intersections ahead of the pursuit in an effort to warn cross traffic.

2. Pursuing units should exercise due regard and caution when proceeding through controlled intersections.

(c) As a general rule, officers should not pursue a vehicle driving left of center (wrong way) against traffic. In the event that the pursued vehicle does so, the following tactics should be considered:

1. Requesting assistance from available air support.

2. Maintain visual contact with the pursued vehicle by paralleling it on the correct side of the roadway.

3. Request other units to observe exits available to the suspects.

(d) Notify the California Highway Patrol (CHP) and/or other law enforcement agency if it appears that the pursuit may enter its jurisdiction.

(e) Officers involved in a pursuit should not attempt to pass other units unless the situation indicates otherwise or they are requested to do so by the primary unit and with a clear understanding of the maneuver process between the involved units.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000706

### 314.3.6 PURSUIT TRAILING

In the event the initiating unit from this agency either relinquishes control of the pursuit to another unit or jurisdiction, that initiating unit may, with permission of a supervisor, trail the pursuit to the termination point in order to provide necessary information and assistance for the arrest of the suspects.

The term trail means to follow the path of the pursuit at a safe speed while obeying all traffic laws and without activating emergency equipment. If the pursuit is at a slow rate of speed, the trailing unit will maintain sufficient distance from the pursuit units so as to clearly indicate an absence of participation in the pursuit.

### 314.3.7 AIR SUPPORT ASSISTANCE

When available, air support assistance should be requested. Once the air unit has established visual contact with the pursued vehicle, the unit should assume control over the pursuit. The primary and secondary ground units, or involved supervisor, will maintain operational control but should consider whether the participation of air support warrants the continued close proximity and/or involvement of ground units in the pursuit.

The air unit should coordinate the activities of resources on the ground, report progress of the pursuit and provide officers and supervisors with details of upcoming traffic congestion, road hazards, or other pertinent information to evaluate whether to continue the pursuit. If ground units are not within visual contact of the pursued vehicle and the air support unit determines that it is unsafe to continue the pursuit, the air support unit should recommend terminating the pursuit.

### 314.3.8 UNITS NOT INVOLVED IN THE PURSUIT

There should be no paralleling of the pursuit route. Officers are authorized to use emergency equipment at intersections along the pursuit path to clear intersections of vehicular and pedestrian traffic to protect the public. Officers should remain in their assigned area and should not become involved with the pursuit unless directed otherwise by a supervisor.

The primary and secondary units should be the only units operating under emergency conditions (red light and siren) unless other units are assigned to the pursuit.

### 314.3.9 OPTIONAL PURSUIT MODES

The following modes are intended to enhance safety to the public and officers involved in a vehicle pursuit by encouraging a fleeing suspect to operate his/her vehicle in a safe manner and/or self-terminate the pursuit. Exigent circumstances may preclude the use of these tactics.

(a) Tracking Mode- When an air unit is participating in a vehicle pursuit, a supervisor can authorize a transition to tracking mode. While in tracking mode, the air unit will continue to broadcast the pursuit and may gain altitude and divert or discontinue the use of the spot light.

> (1) Ground units should disengage from direct pursuit of the suspect and attempt to remain out of sight of the suspect, but maintain close proximity to the suspect's vehicle if safe to do so. Ground units can continue code three operation pursuant to CVC 21055/21056.

Fontana PD Policy Manual



If the use of tracking mode does not appear to change the suspect's driving behavior, the supervisor may choose to have ground units reengage in the pursuit, transition to surveillance mode or terminate the pursuit.

(b) Surveillance Mode- When an air unit is participating in a vehicle pursuit, a supervisor can authorize the transition to surveillance mode. While in surveillance mode ground units will shut down code three operation and discontinue involvement in the pursuit.

(1) The air unit will continue broadcasting the suspect's location as usual; updating speed, location, traffic conditions etc. The air unit may gain altitude and divert or discontinue use of the spotlight. The air unit will continue until the suspect vehicle stops or some exigency occurs. At that point a supervisor can order ground units to apprehend the suspect(s), initiate a perimeter or reengage in the pursuit.

## 314.4 SUPERVISORY CONTROL AND RESPONSIBILITIES

Available supervisory and management control will be exercised over all vehicle pursuits involving officers from this department.

The field supervisor of the officer initiating the pursuit, or if unavailable, the nearest field supervisor will be responsible for:

(a) Immediately notifying involved unit and the dispatcher of supervisory presence and ascertaining all reasonably available information to continuously assess the situation and risk factors associated with the pursuit.

(b) Engaging in the pursuit, when appropriate, to provide on-scene supervision.

(c) Exercising management and control of the pursuit even if not engaged in it.

(d) Ensuring that no more than the required number of units are involved in the pursuit under the guidelines set forth in this policy.

(e) Directing that the pursuit be terminated if, in the supervisor's judgment, it is unreasonable to continue the pursuit under the guidelines of this policy.

(f) Ensuring that assistance from air support, canines, or additional resources is requested, if available and appropriate.

(g) Ensuring that the proper radio channel is being used.

(h) Ensuring that the Watch Commander is notified of the pursuit as soon as practicable.

(i) Ensuring the notification and/or coordination of outside agencies if the pursuit either leaves or is likely to leave the jurisdiction of this department.

(j) Controlling and managing Fontana Police Department units when a pursuit enters another jurisdiction.

### 314.4.1 WATCH COMMANDER RESPONSIBILITIES

Upon becoming aware that a pursuit has been initiated, the Watch Commander should monitor and continually assess the situation and ensure the pursuit is conducted within the guidelines and

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

requirements of this policy. Once notified, the Watch Commander has the final responsibility for the coordination, control, and termination of a vehicle pursuit and shall be in overall command.

The Watch Commander shall review all pertinent reports..

## 314.5 DISPATCH CENTER

If the pursuit is confined within the City limits, radio communications will be conducted on the primary channel unless instructed otherwise by a supervisor or dispatcher. If the pursuit leaves the jurisdiction of this department or such is imminent, involved units may, whenever necessary, switch radio communications to a tactical or emergency channel.

### 314.5.1 DISPATCHER RESPONSIBILITIES

Upon notification or becoming aware that a pursuit has been initiated, the dispatcher is responsible for:

(a) Clearing the radio channel of non-emergency traffic.

(b) Coordinating pursuit communications of the involved units and personnel.

(c) Broadcasting pursuit updates as well as other pertinent information as necessary.

(d) Ensuring that a field supervisor is notified of the pursuit.

(e) Notifying and coordinating with other involved or affected agencies as practicable.

(f) Notify the Watch Commander as soon as practicable.

(g) Documenting pursuit activities.

### 314.5.2 LOSS OF PURSUED VEHICLE

When the pursued vehicle is lost, the primary unit should broadcast pertinent information to assist other units in locating suspects. The primary unit or supervisor will be responsible for coordinating any further search for either the pursued vehicle or suspects fleeing on foot.

## 314.6 INTER-JURISDICTIONAL CONSIDERATIONS

When a pursuit enters another agency's jurisdiction, the primary officer or supervisor, taking into consideration distance traveled, unfamiliarity with the area and other pertinent facts, should determine whether to request the other agency to assume the pursuit. Unless entry into another jurisdiction is expected to be brief, it is generally recommended that the primary officer or supervisor ensure that notification is provided to each outside jurisdiction into which the pursuit is reasonably expected to enter, regardless of whether such jurisdiction is expected to assist.

### 314.6.1 ASSUMPTION OF PURSUIT BY ANOTHER AGENCY

Officers will relinquish control of the pursuit when another agency has assumed the pursuit, unless the continued assistance of the Fontana Police Department is requested by the agency assuming the pursuit. Upon relinquishing control of the pursuit, the involved officers may proceed, with supervisory approval, to the termination point of the pursuit to assist in the investigation. The supervisor should coordinate such assistance with the assuming agency and obtain any information that is necessary for any reports. Notification of a pursuit in progress should not be

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000709

Fontana PD Policy Manual



construed as a request to join the pursuit. Requests to or from another agency to assume a pursuit should be specific.

### 314.6.2 PURSUITS EXTENDING INTO THIS JURISDICTION

The agency that initiates a pursuit is responsible for conducting the pursuit. Units from this department should not join a pursuit unless specifically requested to do so by the pursuing agency and with approval from a supervisor. The exception to this is when a single unit from the initiating agency is in pursuit. Under this circumstance, a supervisor may authorize units from this department to join the pursuit until sufficient units from the initiating agency join the pursuit or until additional information is provided allowing withdrawal of the pursuit.

When a request is made for this department to assist or take over a pursuit that has entered the jurisdiction of Fontana Police Department, the supervisor should consider:

(a) The public's safety within this jurisdiction.

(b) The safety of the pursuing officers.

(c) Whether the circumstances are serious enough to continue the pursuit.

(d) Whether there is adequate staffing to continue the pursuit.

(e) The ability to maintain the pursuit.

As soon as practicable, a supervisor or the Watch Commander should review a request for assistance from another agency. The Watch Commander or supervisor, after considering the above factors, may decline to assist in, or assume the other agency’s pursuit.

Assistance to a pursuing allied agency by officers of this department will terminate at the City limits provided that the pursuing officers have sufficient assistance from other sources. Ongoing participation from this department may continue only until sufficient assistance is present.

In the event that a pursuit from another agency terminates within this jurisdiction, officers should provide appropriate assistance to officers from the allied agency including but not limited to scene control, coordination and completion of supplemental reports, and any other reasonable assistance requested or needed.

## 314.7 WHEN PURSUIT INTERVENTION IS AUTHORIZED

Whenever practicable, an officer shall seek approval from a supervisor before employing any intervention to stop the pursued vehicle. In deciding whether to use intervention tactics, officers/ supervisors should balance the risks of allowing the pursuit to continue with the potential hazards to the public arising from the use of each tactic, the officers, and persons in or on the pursued vehicle to determine which, if any, intervention tactic may be reasonable.

### 314.7.1 USE OF FIREARMS

An officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000710

Officers should not shoot at any part of a vehicle in an attempt to disable the vehicle (see the Use of Force Policy).

### 314.7.2 INTERVENTION STANDARDS

Any intervention tactic, depending upon the conditions and circumstances under which it is used, may present dangers to the officers, the public, or anyone in or on the vehicle being pursued. Certain applications of intervention tactics may be construed to be a use of force, including deadly force, and subject to the policies guiding such use. Officers should consider these facts and requirements prior to deciding how, when, where, and if an intervention tactic should be employed.

(a) Blocking should only be used after giving consideration to the following:

1. The technique should only be used by officers who have received training in the technique.
2. Supervisory approval should be obtained before using this technique.
3. The need to immediately stop the suspect vehicle or prevent it from leaving reasonably appears to outweigh the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.
4. It reasonably appears the technique will contain or prevent the pursuit.

(b) The PIT should only be used after giving consideration to the following:

1. The technique should only be used by officers who have received training in the technique, including speed restrictions.
2. Supervisory approval should be obtained before using the technique.
3. The need to immediately stop the suspect vehicle reasonably appears to outweigh the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.
4. It reasonably appears the technique will terminate or prevent the pursuit.

(c) Ramming a fleeing vehicle should only be done after giving consideration to the following:

1. Supervisory approval should be obtained before using the technique.
2. The need to immediately stop the suspect vehicle reasonably appears to substantially outweigh the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.
3. It reasonably appears the technique will terminate or prevent the pursuit.
4. Ramming may be used only under circumstances when deadly force would be authorized.
5. Ramming may be used when all other reasonable alternatives have been exhausted or reasonably appear ineffective.

(d) Before attempting to box a suspect vehicle during a pursuit the following should be considered:

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000711

Fontana PD Policy Manual



1. The technique should only be used by officers who have received training in the technique.

2. Supervisory approval should be obtained before using the technique.

3. The need to immediately stop the suspect vehicle reasonably appears to outweigh the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.

4. It reasonably appears the technique will terminate or prevent the pursuit.

(e) Tire deflation devices should only be used after considering the following:

1. Tire deflation devices should only be used by officers who have received training in their use.

2. Supervisory approval should be obtained before using tire deflation devices.

3. The need to immediately stop the suspect vehicle reasonably appears to outweigh the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.

4. It reasonably appears the use will terminate or prevent the pursuit.

5. Tire deflation devices should not be used when the pursued vehicle is a motorcycle, a vehicle transporting hazardous materials, or a school bus transporting children, except in extraordinary circumstances.

6. Due to the increased risk to officers deploying tire deflation devices, such deployment should be communicated to all involved personnel.

(f) Roadblocks should only be used after considering the following:

1. Roadblocks should only be used by officers who have received training in their use.

2. Supervisory approval should be obtained before using the technique.

3. The need to immediately stop the suspect vehicle reasonably appears to substantially outweigh the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.

4. It reasonably appears the technique will terminate or prevent the pursuit. Roadblocks may be used only under circumstances when deadly force would be authorized.

5. Roadblocks may be used when all other reasonable alternatives have been exhausted or reasonably appear ineffective.

### 314.7.3 CAPTURE OF SUSPECTS

Proper self-discipline and sound professional judgment are the keys to a successful conclusion of a pursuit and apprehension of evading suspects. Officers shall use only that amount of force, which reasonably appears necessary under the circumstances, to accomplish a legitimate law enforcement purpose.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

Unless relieved by a supervisor, the primary pursuing officer should coordinate efforts to apprehend the suspects following the pursuit. Officers should consider safety of the public and the involved officers when formulating plans for setting up perimeters or for containing and capturing the suspects.

## 314.8 REPORTING REQUIREMENTS

All appropriate reports should be completed to comply with applicable laws, policies, and procedures.

(a) The primary officer should complete appropriate crime/arrest reports.

(b) The Allied Agency Vehicle Pursuit Report (form CHP 187A) shall be filed with the CHP no later than 30 days following the pursuit (Vehicle Code § 14602.1). The primary officer should complete as much of the required information on the form as is known and forward the report to the Watch Commander for review and distribution.

(c) Any use of force by a member of this department shall be documented (See the Use of Force Policy)

(d) Injuries, medical treatment, damaged property should be documented inthe crime/ arrest report.

### 314.8.1 REGULAR AND PERIODIC PURSUIT TRAINING

The Training Sergeant shall make available to all officers initial and supplementary Police Officer Standard Training (POST) training on pursuits required by Penal Code § 13519.8, and no less than annual training addressing:

(a) This policy.

(b) The importance of vehicle safety and protecting the public.

(c) The need to balance the known offense and the need for immediate capture against the risks to officers and others (Vehicle Code § 17004.7(d)).

### 314.8.2 POLICY REVIEW

Officers of this department shall certify in writing that they have received, read, and understand this policy initially, upon any amendments, and whenever training on this policy is provided. The POST attestation form, or an equivalent form, may be used to document the compliance and should be retained in the member’s training file.

## 314.9 APPLICATION OF VEHICLE PURSUIT POLICY

This policy is expressly written and adopted pursuant to the provisions of Vehicle Code § 17004.7, with additional input from the POST Vehicle Pursuit Guidelines.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000713

# Officer Response to Calls

## 316.1 PURPOSE AND SCOPE

This policy provides for the safe and appropriate response to emergency and non-emergency situations whether dispatched or self-initiated.

## 316.2 RESPONSE TO CALLS

Officers dispatched "Code-3" shall consider the call an emergency response and proceed immediately. Officers responding Code-3 shall continuously operate emergency lighting equipment, including at minimum a steady forward facing red light, and shall sound the siren as reasonably necessary pursuant to Vehicle Code § 21055.

Responding with emergency light(s) and siren does not relieve the officer of the duty to continue to drive with due regard for the safety of all persons. The use of any other warning equipment without a red light and siren does not provide any exemption from the Vehicle Code. (VC 21056)

Officers should only respond Code-3 when so dispatched or when circumstances reasonably indicate an emergency response is required. Officers not authorized to respond Code-3 shall observe all traffic laws and proceed without the use of emergency lights and siren.

### 316.2.1 EMERGENCY RESPONSE - GUIDELINES

The following is a list of common calls that will be considered authorized for emergency response unless directed otherwise: 1. Assist an endangered officer 2. Injury or unknown injury traffic accidents 3. In progress calls where bodily harm has been committed or is likely to occur 4. Any type of call where a human life is seriously threatened and an urgent response to the scene by a police officer is imperative

### 316.2.2 NUMBER OF UNITS ASSIGNED

Normally, only one unit should respond to an emergency call Code-3 unless the Watch Commander or the field supervisor authorizes an additional unit(s).

## 316.3 REQUESTING EMERGENCY ASSISTANCE

Requests for emergency assistance should be limited to those situations where the involved personnel reasonably believe that there is an immediate threat to the safety of officers, or assistance is needed to prevent imminent serious harm to a citizen. In any event, where a situation has stabilized and emergency response is not required, the requesting officer shall immediately notify the Dispatch Center.

If circumstances permit, the requesting officer should give the following information:

- The unit number
- The location
- The reason for the request and type of emergency
- The number of units required

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000714

### 316.4 INITIATING CODE 3 RESPONSE

If an officer resonably believes that a Code-3 response to any call is appropriate, the officer shall notify the Dispatch Center as soon as it is practicable to do so. Generally, only one unit should respond Code-3 to any situation. Should another officer believe a Code-3 response is appropriate, the Dispatch Center shall be notified and the Watch Commander or field supervisor will make a determination as to whether one or more officers driving Code-3 is appropriate.

### 316.5 RESPONSIBILITIES OF RESPONDING OFFICERS

Officers shall exercise sound judgment and care with due regard for life and property when responding to an emergency call. Officers shall reduce speed at intersections where they do not have the right away to such a degree that they have complete control of the vehicle.

The decision to continue a Code-3 response is at the discretion of the officer. If, in the officer's judgment, the roadway conditions or traffic congestion does not permit such a response without unreasonable risk, the officer may elect to respond to the call without the use of red lights and siren at the legal speed limit. In such an event, the officer should immediately notify the Dispatch Center. An officer shall also discontinue the Code-3 response when directed by a supervisor.

Upon receiving authorization or determining a Code-3 response is appropriate, an officer shall immediately give the location from which he/she is responding.

### 316.6 COMMUNICATIONS RESPONSIBILITIES

A dispatcher shall assign a Code-3 response when an officer requests emergency assistance or available information reasonably indicates that the public is threatened with serious injury or death and immediate police response is needed. In all other circumstances, the dispatcher shall obtain authorization from the Watch Commander or a field supervisor prior to assigning units Code-3 . The dispatcher shall:

(a) Attempt to assign the closest available unit to the location requiring assistance

(b) Immediately notify the Watch Commander

(c) Confirm the location from which the unit is responding

(d) Notify and coordinate allied emergency services (e.g., fire and ambulance)

(e) Continue to obtain and broadcast information as necessary concerning the response and monitor the situation until it is stabilized or terminated

(f) Control all radio communications during the emergency and coordinate assistance under the direction of the Watch Commander or field supervisor

### 316.7 SUPERVISORY RESPONSIBILITIES

Upon being notified that a Code-3 response has been initiated, the Watch Commander or the field supervisor shall verify the following:

(a) The proper response has been initiated

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000715

(b) No more than those units reasonably necessary under the circumstances are involved in the response

(c) Affected outside jurisdictions are being notified as practical

The field supervisor shall monitor the response until it has been stabilized or terminated and assert control by directing units into or out of the response if necessary. If, in the supervisor's judgment, the circumstances require additional units to be assigned a Code-3 response, the supervisor may do so.

It is the supervisor's responsibility to terminate a Code-3 response that, in his/her judgment is inappropriate due to the circumstances.

When making the decision to authorize a Code-3 response, the Watch Commander or the field supervisor should consider the following:

- The type of call
- The necessity of a timely response
- Traffic and roadway conditions
- The location of the responding units

### 316.8 FAILURE OF EMERGENCY EQUIPMENT

If the emergency equipment on the vehicle should fail to operate, the officer must terminate the Code-3 response and respond accordingly. In all cases, the officer shall notify the Watch Commander, field supervisor, or the Dispatch Center of the equipment failure so that another unit may be assigned to the emergency response.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000716

# Report Preparation

## 344.1 PURPOSE AND SCOPE

Report preparation is a major part of each officer's job. The purpose of reports is to document sufficient information to refresh the officer’s memory and to provide sufficient information for follow-up investigation and successful prosecution. Report writing is the subject of substantial formalized training and on-the-job training.

### 344.1.1 REPORT PREPARATION

Employees should ensure that reports are sufficiently detailed for their purpose and free from errors prior to submission. It is the responsibility of the assigned employee to complete and submit all reports taken during the shift before going off-duty unless permission to hold the report has been approved by a supervisor. Generally, reports requiring prompt follow-up action on active leads, or arrest reports where the suspect remains in custody should not be held.

Handwritten reports must be prepared legibly. If the report is not legible, the submitting employee will be required by the reviewing supervisor to promptly make corrections and resubmit the report. Employees who dictate reports shall use appropriate grammar, as content is not the responsibility of the typist. Employees who generate reports on computers are subject to all requirements of this policy.

All reports shall accurately reflect the identity of the persons involved, all pertinent information seen, heard or assimilated by any other sense, and any actions taken. Employees shall not suppress, conceal or distort the facts of any reported incident, nor shall any employee make a false report orally or in writing. Generally, the reporting employee’s opinions should not be included in reports unless specifically identified as such.

## 344.2 REQUIRED REPORTING

Written reports are required in all of the following situations on the appropriate department approved form unless otherwise approved by a supervisor.

### 344.2.1 CRIMINAL ACTIVITY

When a member responds to a call for service, or as a result of self-initiated activity becomes aware of any activity where a crime has occurred, the member shall document the incident regardless of whether a victim desires prosecution. Activity to be documented in a written report includes:

(a) All arrests

(b) All felony crimes

(c) Non-Felony incidents involving threats or stalking behavior

(d) Situations covered by separate policy. These include:

1. Use of Force Policy

2. Domestic Violence Policy

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department



CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000825

3. Child Abuse Policy
4. Senior and Disability Victimization Policy
5. Hate Crimes Policy
6. Suspicious Activity Reporting Policy

(e) All misdemeanor crimes where the victim desires a report

Misdemeanor crimes where the victim does not desire a report shall be documented using the department-approved alternative reporting method (e.g., dispatch log).

344.2.2 NON-CRIMINAL ACTIVITY

The following incidents shall be documented using the appropriate approved report:

(a) Any use of force against any person by a member of this department (see the Use of Force Policy)

(b) Any firearm discharge (see the Firearms Policy)

(c) Anytime a person is reported missing, regardless of jurisdiction (see the Missing Persons Policy)

(d) Any found property or found evidence

(e) Any traffic collisions above the minimum reporting level (see Traffic Collision Reporting Policy)

(f) Suspicious incidents that may indicate a potential for crimes against children or that a child’s safety is in jeopardy

(g) All protective custody detentions

(h) Suspicious incidents that may place the public or others at risk

(i) Whenever the employee believes the circumstances should be documented or at the direction of a supervisor

344.2.3 DEATH CASES

Death investigations require specific investigation methods depending on circumstances and should be handled in accordance with the Death Investigations Policy. The handling officer should notify and apprise a supervisor of the circumstances surrounding the incident to determine how to proceed. The following cases shall be appropriately investigated and documented using the approved report:

(a) Sudden or accidental deaths.

(b) Suicides.

(c) Homicide or suspected homicide.

(d) Unattended deaths (No physician or qualified hospice care in the 20 days preceding death).

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000826

Fontana PD Policy Manual



(e) Found dead bodies or body parts.

### 344.2.4 INJURY OR DAMAGE BY CITY PERSONNEL

Reports shall be taken if an injury occurs that is a result of an act by a City employee. Additionally, reports shall be taken involving damage to City property or City equipment. The watch commander or other supervisor will determine whether an administrative report, standard report with case number, or both is necessary.

### 344.2.5 MISCELLANEOUS INJURIES

Any injury that is reported to this department shall require a report when:

(a) Attempted suicide

(b) The injury is major/serious, whereas death could result

(c) The circumstances surrounding the incident are suspicious in nature and it is desirable to record the event

The above reporting requirements are not intended to be all-inclusive. A supervisor may direct an employee to document any incident he/she deems necessary.

### 344.2.6 MANDATORY REPORTING OF JUVENILE GUNSHOT INJURIES

A report shall be taken when any incident in which a child 18 years or younger suffered an unintentional or self-inflicted gunshot wound. Records Unit personnel shall notify the California Department of Public Health (CDPH) of the incident as required by CDPH (Penal Code § 23685).

### 344.2.7 USE OF CAD SEQUENCE NUMBERS

(a) CAD Sequence Numbers / Incident Numbers will be used in place of officer generated reports when there is no workable suspect information for the following types of cases:

1. Misdemeanor thefts: PC 488 / PC 490.5.
2. Misdemeanor vandalism: PC 594(a)(1) with less than $1000 damage with the exception of cases involving graffiti.
3. Grand theft: PC 487.1 total loss less than $1500.
4. Trespass and unlawful entry: PC 602 / PC 603.
5. Prowling: PC 647(i).
6. Obscene or annoying phone calls: PC 653m
7. Bomb threats: PC 148.1
8. Vehicle burglaries.
9. Theft of mail.

(b) For purposes of this policy, no workable suspect information means the victim and/or witnesses involved in the case are unable to supply information that would allow an officer to identify a suspect through follow-up investigation. For purposes of this policy, a valid California license plate number is considered workable suspect information.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000827

(c) Officers will take case numbers and not use Sequence Numbers in any of the following situations:

1. All felonies with the exception of those felonies already indicated.
2. Any crime of violence.
3. Any crime with workable suspect information
4. Any property crime where one or more of the items taken has serial numbers that can be entered into the Department's NCIC computer system.
5. Any domestic violence situation.
6. Any 594 PC involving graffiti.
7. Any reports of lost items that are serialized or that has a unique inscription which can be entered into the Department of Justice Automated property System (PC 11108)

(d) When dispatch receives a report of a call not in-progress, the dispatcher should ask the victim whether they want to talk to an officer or would like a phone report.

1. If the victim advises that a phone report is satisfactory, the dispatcher should obtain the necessary information from the victim and issue them a Sequence Number / Incident Number.
2. If the victim has suffered some type of property loss, for example, a theft or vandalism loss, the dispatcher should include the victim's estimate of loss and what was stolen or damaged in the CAD report.
3. It is not necessary for the dispatcher to obtain any additional information from the victim that is not presently required before dispatching an officer.

(e) If a victim reports that a crime is in-progress or requests that an officer respond, the dispatcher should dispatch the call per existing policy.

1. When the officer clears the call, instead of receiving a case number, the officer should ask Dispatch for the CAD Sequence Number and provide the number to the victim instead of a report number.
2. In a situation where the victim suffered a property loss, either through theft or vandalism, the officer shall advise Dispatch the amount of loss and what was stolen or damaged, and that information shall be placed into the CAD report.

(f) Any employee issuing a Sequence Number shall advise the victim/subject that they need to maintain the Sequence Number / Incident Number and the date of the occurrence in order to obtain a CAD print out of the incident at a later date.

(g) Employees shall not use CAD Sequence Numbers / Incident Numbers in place of criminal reports for any crime other than those specifically authorized by this policy.

### 344.2.8 ALTERNATE REPORTING FOR VICTIMS

Reports that may be submitted by the public via online or other self-completed reporting processes include:

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000828

(a) Lost property.

(b) Misdemeanor thefts of property, other than firearms or materials that threaten public safety, when there is no suspect information, serial number or ability to trace the item.

1. Misdemeanor thefts of cellular telephones may be reported even though they have a serial number.

(c) Misdemeanor vandalism with no suspect information and no hate crime implications.

(d) Vehicle burglaries with no suspect information or evidence.

(e) Stolen vehicle attempts with no suspect information or evidence.

(f) Annoying telephone calls with no suspect information.

(g) Identity theft without an identifiable suspect.

(h) Online or email fraud solicitations without an identifiable suspect and if the financial loss classifies the crime as a misdemeanor.

(i) Hit-and-run vehicle collisions with no suspect or suspect vehicle.

(j) Supplemental property lists.

Members at the scene of one of the above incidents should not refer the reporting party to an alternate means of reporting without authorization from a supervisor. Members may refer victims to online victim assistance programs (e.g., Federal Communications Commission (FCC) website for identity theft, Internet Crime Complaint Center (IC3) website for computer crimes).

## 344.3 GENERAL POLICY OF EXPEDITIOUS REPORTING

In general, all officers and supervisors shall act with promptness and efficiency in the preparation and processing of all reports. An incomplete report, unorganized reports or reports delayed without supervisory approval are not acceptable. Reports shall be processed according to established priorities or according to special priority necessary under exceptional circumstances.

### 344.3.1 GENERAL POLICY OF HANDWRITTEN, TYPED, AND DICTATED REPORTS

Some incidents and report forms lend themselves to block print rather than typing. In general, the narrative portion of reports should be typed and included in the ARS system.

Felony in-custody reports may be dictated. Other lengthy reports may be dictated with a supervisors approval. Supervisors may also approve dictation of a report for training purposes.

Supervisors may require, with the foregoing general policy in mind, block printing or typing of reports of any nature for departmental consistency.

### 344.3.2 GENERAL USE OF OTHER HANDWRITTEN FORMS

County, state and federal agency forms may be block printed as appropriate. In general, the form itself may make the requirement for typing apparent.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000829

Fontana PD Policy Manual



### 344.4 REPORT CORRECTIONS

Supervisors shall review reports for content and accuracy. If a correction is necessary, the reviewing supervisor should complete the report correction process as per established ARS procedures. The original report and the correction form should be returned to the reporting employee for correction as soon as practical. It shall be the responsibility of the originating officer to ensure that any report returned for correction is processed in a timely manner.

### 344.5 REPORT CHANGES OR ALTERATIONS

Reports that have been approved by a supervisor and submitted to the records unit for filing and distribution shall not be modified or altered except by way of a supplemental report. Reviewed reports that have not yet been submitted to the records unit may be corrected or modified by the authoring officer only with the knowledge and authorization of the reviewing supervisor.

### 344.6 CRIME REPORTS AND COMMUNITY SERVICE OFFICERS

Community service officers are normally authorized to take the following types of reports:

- PC 488 and PC 487
- PC 653m
- PC 594
- Found Property
- Runaway Juveniles (RAJ's)
- Missing persons (non-critical)
- Abandoned Vehicles
- CVC 10851 (GTA) and 10851 recoveries
- Lost/stolen license plates
- Parking violations
- Non-injury Traffic Collision's (TC's)
- PC 476 and PC 470
- PC 530.5
- PC 459 vehicles and residential
- Other reports as directed by a supervisor
- Supplemental reports to all previously mentioned report types

In addition, CSO's may take reports that include suspect information in those cases in which there will be no immediate follow up by the CSO that will place them in any danger whatsoever of coming into contact with a suspect.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000830

*Report Preparation*

If a suspect resides in Fontana or one of our neighboring jurisdictions, a CSO should not be dispatched to take a report with suspect information. Due to the fact that a patrol officer would be able to continue on with a follow up investigation and possibly contact and arrest the suspect, the report should be assigned to a patrol officer or other sworn member of the department in these cases.

The safety of the CSO in these cases is our primary concern and if information develops that indicates it is unsafe for the CSO to gather and report the suspect information, the CSO should immediately bring that to the attention of a supervisor and the report should be reassigned to a patrol officer or other sworn member of the department most suited to handle the report.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000831

# Patrol Function

## 400.1 PURPOSE AND SCOPE
The purpose of this policy is to define the patrol function and address intraorganizational cooperation and information sharing.

## 400.2 INFORMATION SHARING
To the extent feasible, all information relevant to the mission of the Department should be shared among all divisions and specialized units on a timely basis. Members should be provided with opportunities on a regular basis to share information during the daily briefings and to attend briefings of other divisions or specialized units.

Additionally, information should be shared with outside agencies and the public in conformance with department policies and applicable laws. Members are encouraged to share information with other units and divisions.

## 400.3 CROWDS, EVENTS AND GATHERINGS
Officers may encounter gatherings of people, including but not limited to, civil demonstrations, civic, social and business events, public displays, parades and sporting events. Officers should monitor such events as time permits in an effort to keep the peace and protect the safety and rights of those present. A patrol supervisor should be notified when it becomes reasonably foreseeable that such an event may require increased monitoring, contact or intervention.

Officers responding to an event or gathering that warrants law enforcement involvement should carefully balance the speech and association rights of those present with applicable public safety concerns before taking enforcement action.

Generally, officers should consider seeking compliance through advisements and warnings for minor violations and should reserve greater enforcement options for more serious violations or when voluntary compliance with the law is not achieved.

Officers are encouraged to contact organizers or responsible persons to seek voluntary compliance that may address relevant public safety/order concerns.

Officers should consider enforcement of applicable state and local laws, such as Penal Code 602.1 (obstructing or intimidating business operators), when the activity blocks the entrance or egress of a facility or location and when voluntary compliance with the law is not achieved.

## 400.4 POLICY
The Fontana Police Department provides patrol services 24 hours a day, seven days a week and will prioritize responses to requests for emergency services using available resources to enhance the safety of the public and department members.

## 400.5 FUNCTION
Patrol will generally be conducted by uniformed officers in clearly marked law enforcement vehicles in assigned jurisdictional areas of Fontana. The function of patrol is to respond to calls

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000916

Fontana PD Policy Manual



for assistance and reports of criminal activity, act as a deterrent to crime, enforce state and local laws, identify community needs, provide support and assistance to the community and respond to emergencies.

Patrol services include, but are not limited to:

(a) Responding to emergency calls for service.

(b) Apprehending criminal offenders.

(c) Providing mutual aid and assistance to other agencies for emergency and law enforcement-related activities.

(d) Preventing criminal acts, traffic violations and collisions, maintaining public order and discovering hazardous situations or conditions.

(e) Responding to reports of criminal and non-criminal acts.

(f) Responding to routine calls for service, such as public assistance or public safety.

(g) Carrying out crime prevention activities such as residential inspections, business inspections and community presentations.

(h) Carrying out community oriented policing and problem-solving activities including the application of resources to improve or resolve specific problems or situations and contacting or assisting members of the public in a positive way.

(i) Directing and controlling traffic.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000917

# Briefing Training

## 404.1 PURPOSE AND SCOPE

Briefing training is generally conducted at the beginning of the officer's assigned shift. Briefing provides an opportunity for important exchange between employees and supervisors. A supervisor generally will conduct Briefing; however officers may conduct Briefing for training purposes with supervisor approval.

Briefing should accomplish, at a minimum, the following basic tasks:

(a) Briefing officers with information regarding daily patrol activity, with particular attention given to unusual situations and changes in the status of wanted persons, stolen vehicles, and major investigations

(b) Notifying officers of changes in schedules and assignments

(c) Notifying officers of new Special Orders or changes in Special Orders

(d) Reviewing recent incidents for training purposes

(e) Providing training on a variety of subjects

## 404.2 PREPARATION OF MATERIALS

The supervisor conducting Briefing is responsible for preparation of the materials necessary for a constructive briefing. Supervisors may delegate this responsibility to a subordinate officer in his or her absence or for training purposes.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department



CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000922

# Obtaining Air Support

## 437.1 PURPOSE AND SCOPE

The use of a police helicopter can be invaluable in certain situations. This policy specifies potential situations where the use of a helicopter may be requested and the responsibilities for making a request.

## 437.2 REQUEST FOR HELICOPTER ASSISTANCE

If a supervisor or officer in charge of an incident determines that the use of a helicopter would be beneficial, a request to obtain helicopter assistance may be made.

### 437.2.1 REQUEST FOR ASSISTANCE FROM ANOTHER AGENCY

After consideration and approval of the request for a helicopter, the Watch Commander, or his/her designee, will call the closest agency having helicopter support available. The Watch Commander on duty will apprise that agency of the specific details of the incident prompting the request.

### 437.2.2 CIRCUMSTANCES UNDER WHICH AID MAY BE REQUESTED

Police helicopters may be requested under any of the following conditions:

(a) When the helicopter is activated under existing mutual aid agreements

(b) Whenever the safety of law enforcement personnel is in jeopardy and the presence of the helicopters may reduce such hazard

(c) When the use of the helicopters will aid in the capture of a suspected fleeing felon whose continued freedom represents an ongoing threat to the community

(d) When a helicopter is needed to locate a person who has strayed or is lost and whose continued absence constitutes a serious health or safety hazard

(e) Vehicle pursuits

While it is recognized that the availability of helicopter support will generally provide valuable assistance to ground personnel, the presence of a helicopter will rarely replace the need for officers on the ground.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 000995

# Traffic Function and Responsibility

## 500.1 PURPOSE AND SCOPE

The ultimate goal of traffic law enforcement is to reduce traffic collisions. This may be achieved through the application of such techniques as geographic/temporal assignment of personnel and equipment and the establishment of preventive patrols to deal with specific categories of unlawful driving behavior. Traffic enforcement techniques are based on accident data, enforcement activity records, traffic volume, and traffic conditions. This department provides enforcement efforts toward violations, not only in proportion to the frequency of their occurrence in accident situations, but also in terms of traffic-related needs.

## 500.2 TRAFFIC OFFICER DEPLOYMENT

Several factors are considered in the development of deployment schedules for officers of the Fontana Police Department. Information provided by the California Statewide Integrated Traffic Reporting System (SWITRS) is a valuable resource for traffic accident occurrences and therefore officer deployment. Some of the factors for analysis include:

- Location
- Time
- Day
- Violation factors

All officers assigned to patrol or traffic enforcement functions will emphasize enforcement of accident causing violations during high accident hours and at locations of occurrence. All officers will take directed enforcement action on request, and random enforcement action when appropriate against violators as a matter of routine. All officers shall maintain high visibility while working general enforcement, especially at high accident locations.

Other factors to be considered for deployment are citizen requests, construction zones or special events.

## 500.3 ENFORCEMENT

Enforcement actions are commensurate with applicable laws and take into account the degree and severity of the violation committed. This department does not establish ticket quotas and the number of arrests or citations issued by any officer shall not be used as the sole criterion for evaluating officer overall performance (Vehicle Code § 41603). The visibility and quality of an officer's work effort will be commensurate with the philosophy of this policy. Several methods are effective in the reduction of collisions:

### 500.3.1 WARNINGS

Warnings or other non-punitive enforcement actions should be considered in each situation and substituted for arrests or citations when circumstances warrant, especially in the case of inadvertent violations.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001063

Fontana PD Policy Manual



500.3.2 CITATIONS

Citations may be issued when an officer believes it is appropriate. It is essential that officers fully explain the rights and requirements imposed on motorists upon issuance of a citation for a traffic violation. Officers should provide the following information at a minimum:

(a) Explanation of the violation or charge

(b) Court appearance procedure

500.3.3 PHYSICAL ARREST

Physical arrest can be made on a number of criminal traffic offenses outlined in the Vehicle Code or Penal Code. These physical arrest cases usually deal with, but are not limited to:

(a) Vehicular manslaughter

(b) Felony and misdemeanor driving under the influence of alcohol/drugs

(c) Felony or misdemeanor hit-and-run

(d) Refusal to sign notice to appear

(e) Any other misdemeanor at the discretion of the officer, such as reckless driving with extenuating circumstances

## 500.4 SUSPENDED OR REVOKED DRIVERS LICENSES

If an officer contacts a traffic violator for driving on a suspended or revoked license, the officer may issue a traffic citation pursuant to Vehicle Code § 14601.

If a computer check of a traffic violator's license status reveals a suspended or revoked driver license and the traffic violator still has his or her license in possession, the license shall be seized by the officer. The officer shall verbally advise the traffic violator of the suspension or revocation and issue the citation. The officer will be responsible for filling out the Verbal Notice form (DMV form DL-310) and causing that form and license to be forwarded to the Department of Motor Vehicles.

## 500.5 HIGH-VISIBILITY VESTS

The Department has provided American National Standards Institute (ANSI) Class II high-visibility vests to increase the visibility of department members who may be exposed to hazards presented by passing traffic, maneuvering or operating vehicles, machinery and equipment (23 CFR 655.601; 8 CCR 1598).

Although intended primarily for use while performing traffic related assignments, high-visibility vests should be worn at any time increased visibility would improve the safety or efficiency of the member.

500.5.1 CARE AND STORAGE OF HIGH-VISIBILITY VESTS

High-visibility vests will be issued to all employees that could be exposed to incidents that would require use of the vest per Policy Manual §500.5.1. Each vest should be stored inside

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

Fontana PD Policy Manual



the re-sealable plastic bag provided to protect and maintain the vest in a serviceable condition. Before going into service each employee shall ensure a serviceable high-visibility vest is in their possession.

A supply of high-visibility vests will be maintained in the equipment room for replacement of damaged or unserviceable vests. The Training Sergeant should be promptly notified whenever the supply of vests in the equipment room needs replenishing.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001065

# Traffic Collision Reporting

## 502.1 PURPOSE AND SCOPE

The Fontana Police Department prepares traffic collision reports in compliance with the California Highway Patrol Collision Investigation Manual (CIM) and as a public service makes traffic collision reports available to the community with some exceptions.

## 502.2 RESPONSIBILITY

The Traffic Sergeant will be responsible for distribution of the Collision Investigation Manual. The Traffic Sergeant will receive all changes in the state manual and ensure conformity with this policy. The traffic sergeant may delegate responsibility for distribution of and updating the collision investigation manual.

## 502.3 TRAFFIC COLLISION REPORTING

All traffic collision reports taken by members of this department shall be forwarded to the Traffic Bureau for approval and data entry into the Records Management System.

## 502.4 REPORTING SITUATIONS

### 502.4.1 TRAFFIC COLLISIONS INVOLVING CITY VEHICLES

Traffic collision investigation reports (CHP 555) shall be taken when a City-owned vehicle is involved in a traffic collision upon a roadway or highway wherein any damage or injury results.

Whenever a traffic collision occurs involving only minor property damage and City owned property a traffic investigation report (CHP 555) is not required. whenever there is damage to a City vehicle, an Administrative Memorandum and SCAR report shall be completed by a supervisor and forwarded to the appropriate Division Commander. Photographs of the collision scene and vehicle damage shall be taken at the scene to document all property damage, injuries and the collision scene.

The responding supervisor shall be responsible for completing all necessary documentation along with a Fontana Police Department Employee Involved Traffic Collision Routing Checklist (FPD 336). These forms will then be forwarded as indicated on the routing checklist.

### 502.4.2 TRAFFIC COLLISIONS WITH POLICE DEPARTMENT EMPLOYEES

When an employee of this department, either on-duty or off-duty, is involved in a traffic collision within the jurisdiction of the Fontana Police Department resulting in a serious injury, fatality, or any injury that might cause a liabilty concern for the City a supervisor shall notify the on-call MAIT investigators and a MAIT supervisor to respond to the scene. The supervisor shall then notify the on-duty watch commander or on-call staff lieutenant, if outside normal business hours, who will approve an AOD request to contact the San Bernardino County Sheriff's Department (SBSO) Major Accident Investigation Team (M.A.I.T.) in handling the collision investigation.

The term serious injury is defined as any injury that may result in a fatality.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001066

502.4.3 TRAFFIC COLLISIONS WITH OTHER CITY EMPLOYEES OR OFFICIALS
When any City employee or City official, either on-duty or off-duty, is involved in a traffic collision within the jurisdiction of the Fontana Police Department resulting in a serious injury, fatality, or any injury that might cause a liability concern for the City a supervisor shall notify the on-call MAIT investigators and a MAIT supervisor to respond to the scene. The MAIT supervisor shall then notify the on-duty watch commander or on-call staff lieutenant, if outside normal business hours, to determine the need, if any, to request the assistance of the San Bernardino County Sheriff's Department (SBSO) Major Accident Investigation Team (M.A.I.T.).

The term serious injury is defined as any injury that may result in a fatality.

502.4.4 TRAFFIC COLLISIONS ON PRIVATE PROPERTY
In compliance with the Collision Investigation Manual, traffic collision reports shall not be taken for traffic collisions occurring on private property, unless there is a death or injury to any person involved, a hit and run violation, or Vehicle Code violation. A collision report may be taken at the discretion of any supervisor.

502.4.5 TRAFFIC COLLISIONS ON ROADWAYS OR HIGHWAYS
Traffic collision reports shall be taken when they occur on a roadway or highway within the jurisdiction of this department under any of the following circumstances:

(a) When there is a death or injury to any persons involved in the collision

(b) When a report is requested by any involved driver

**502.5 NOTIFICATION OF TRAFFIC BUREAU SUPERVISION**
In the event of a serious injury or death related traffic collision, the Watch Commander shall notify the Traffic Sergeant or M.A.I.T. Supervisor to relate the circumstances of the traffic collision and seek assistance from the Major Accident Investigation Team as appropriate. In the absence of a Traffic Sergeant, the Watch Commander or any supervisor may assign an accident investigator or motor officer to investigate the traffic collision.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001067

# Traffic Citations

## 516.1 PURPOSE AND SCOPE

This policy outlines the responsibility for traffic citations, the procedure for dismissal, correction, and voiding of traffic citations.

## 516.2 RESPONSIBILITIES

The Traffic Sergeant shall be responsible for the development and design of all Department traffic citations in compliance with state law and the Judicial Council.

The Records Unit shall be responsible for the supply and accounting of all traffic citation books issued to employees of this department.

## 516.3 DISMISSAL OF TRAFFIC CITATIONS

Employees of this department do not have the authority to dismiss a citation once it has been issued. Only the court has the authority to dismiss a citation that has been issued (Vehicle Code § 40500(d)). Any request from a recipient to dismiss a citation shall be referred to the Traffic Sergeant. Upon a review of the circumstances involving the issuance of the traffic citation, the Traffic Sergeant may request the Field Services Division Commander to recommend dismissal of the traffic citation. If approved, the citation will be forwarded to the appropriate court with a request for dismissal. All recipients of traffic citations whose request for the dismissal of a traffic citation has been denied shall be referred to the appropriate court.

Should an officer determine during a court proceeding that a traffic citation should be dismissed in the interest of justice or where prosecution is deemed inappropriate the officer may request the court to dismiss the citation in the interest of justice. The officer must have a valid and articulable reason in order to make such a request of the court.

## 516.4 VOIDING TRAFFIC CITATIONS

Voiding a traffic citation may occur when a traffic citation has not been completed or where it is completed, but not issued. All copies of the citation shall be kept in the appropriate citation book with the word "VOID" written clearly across the citation.

## 516.5 CORRECTION OF TRAFFIC CITATIONS

When a traffic citation is issued and in need of correction, the officer issuing the citation shall be responsible for completing a Notice of Correction and Proof of Service (FPD 121) in accordance with Vehicle Code 40505. The proper copy shall be forwarded to the appropriate court. Another copy shall be attached to the corresponding citation copy in the officer's citation book. The final copy shall be mailed to the defendant.

## 516.6 DISPOSITION OF TRAFFIC CITATIONS

The court and file copies of all traffic citations issued by members of this department shall be forwarded to a supervisor for review. The citation copies shall then be filed with the Records Unit.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001079

Upon separation from employment with the this department, all employees issued traffic citations books shall return any unused citations to the Records Unit.

## 516.7 NOTICE OF PARKING VIOLATION APPEAL PROCEDURE

Disposition of notice of parking violation appeals is conducted pursuant to Vehicle Code § 40215.

### 516.7.1 APPEAL STAGES

Appeals may be pursued sequentially at three different levels:

(a) Administrative reviews are conducted by the Processing Agency who will review written/documentary data. These requests are informal written statements outlining why the notice of parking violation should be dismissed. Copies of documentation relating to the notice of parking violation and the request for dismissal must be mailed to the current mailing address of the processing agency.

(b) If the appellant wishes to pursue the matter beyond administrative review, an administrative hearing may be conducted in person or by written application, at the election of the appellant. Independent referees review the existent administrative file, amendments, and/or testimonial material provided by the appellant and may conduct further investigation or follow-up on their own.

(c) If the appellant wishes to pursue the matter beyond an administrative hearing, a Superior Court review may be presented in person by the appellant after an application for review and designated filing fees have been paid to The Superior Court of California.

### 516.7.2 TIME REQUIREMENTS

Administrative review or appearance before a hearing examiner will not be provided if the mandated time limits are not adhered to by the violator.

(a) Requests for an administrative review must be postmarked within 21 calendar days of issuance of the notice of parking violation, or within 14 calendar days of the mailing of the Notice of Delinquent Parking (Violation Vehicle Code § 40215(a)).

(b) Requests for administrative hearings must be made no later than 21 calendar days following the notification mailing of the results of the administrative review (Vehicle Code § 40215(b)).

(c) An administrative hearing shall be held within 90 calendar days following the receipt of a request for an administrative hearing, excluding time tolled pursuant to Vehicle Code § 40200 - 40225. The person requesting the hearing may request one continuance, not to exceed 21 calendar days (Vehicle Code § 40215).

(d) Registered owners of vehicles may transfer responsibility for the violation via timely affidavit of non-liability when the vehicle has been transferred, rented or under certain other circumstances (Vehicle Code § 40209 and Vehicle Code § 40210).

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001080

516.7.3 COSTS

(a) There is no cost for an administrative review.

(b) Appellants must deposit the full amount due for the citation before receiving an administrative hearing, unless the person is indigent, as defined in Vehicle Code § 40220, and provides satisfactory proof of inability to pay (Vehicle Code § 40215).

(c) An appeal through Superior Court requires prior payment of filing costs, including applicable court charges and fees. These costs will be reimbursed to the appellant in addition to any previously paid fines if appellant's liability is overruled by the Superior Court.

**516.8 JUVENILE CITATIONS**

Completion of traffic citation forms for juveniles may vary slightly from the procedure for adults. The juvenile's age, place of residency, and the type of offense should be considered before issuing the juvenile a citation.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001081

# Vehicle Maintenance

## 704.1 PURPOSE AND SCOPE

Employees are responsible for assisting in maintaining Department vehicles so that they are properly equipped, properly maintained, properly refueled and present a clean appearance.

## 704.2 DEFECTIVE VEHICLES

When a department vehicle becomes inoperative or in need of repair that affects the safety of the vehicle, that vehicle shall be removed from service for repair. Proper documentation shall be promptly completed by the employee who first becomes aware of the defective condition, describing the correction needed. The paperwork shall be promptly forwarded to vehicle maintenance for repair.

### 704.2.1 SEVERE USE

Vehicles operated under severe-use conditions, which include operations for which the vehicle is not designed or that exceed the manufacturer's parameters, should be removed from service and subjected to a safety inspection as soon as practicable. Such conditions may include rough roadway or off-road driving, hard or extended braking, pursuits or prolonged high-speed operation.

### 704.2.2 DAMAGE OR POOR PERFORMANCE

Vehicles that may have been damaged, or perform poorly shall be removed from service for inspections and repairs as soon as practicable.

### 704.2.3 REMOVAL OF WEAPONS

All firearms, weapons and control devices shall be removed from a vehicle and properly secured in the department armory prior to the vehicle being released for maintenance, service or repair.

## 704.3 VEHICLE EQUIPMENT

Certain items shall be maintained in all department vehicles for emergency purposes and to perform routine duties.

### 704.3.1 PATROL VEHICLES

Officers shall inspect the patrol vehicle at the beginning of the shift and ensure that the following equipment, at a minimum, is present in the vehicle:

- Emergency road flares
- Fire Extinguisher
- Riot Baton
- Hand Sanitizer
- Trauma Kit
- AMBU bag

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department



CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001129

- Yellow crayon or chalk
- Crime Scene Barricade Tape
- First aid kit, CPR mask
- Blanket
- Spit Mask
- Protective gloves
- Hazardous Materials Emergency Response Handbook

**704.4 VEHICLE REFUELING**

Absent emergency conditions or supervisor approval, officers driving patrol vehicles shall not place a vehicle in service that has less than one-quarter tank of fuel. Vehicles shall only be refueled at the authorized location.

**704.5 WASHING OF VEHICLES**

All units shall be kept clean at all times and weather conditions permitting, shall be washed as necessary to enhance their appearance.

Officers in patrol shall obtain clearance from the dispatcher before responding to the car wash. Only one marked unit should be at the car wash at the same time unless otherwise approved by a supervisor.

Employees using a vehicle shall remove any trash or debris at the end of their shift. Confidential material should be placed in a designated receptacle provided for the shredding of this matter.

**704.6 NON-SWORN EMPLOYEE USE**

Non-sworn employees using marked vehicles shall ensure all weapons are removed from vehicles before going into service. Non-sworn employees shall also prominently display the "out of service" placards or lightbar covers at all times. Non-sworn employees shall not operate the emergency lights or siren of any vehicle unless expressly authorized by a supervisor.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001130

# Vehicle Use

## 706.1 PURPOSE & SCOPE

The Department utilizes city owned motor vehicles in a variety of applications operated by department personnel. In order to maintain a system of accountability and ensure City owned vehicles are used appropriately, regulations relating to the use of these vehicles have been established. The term "City owned" as used in this section also refers to any vehicle leased or rented by the City.

## 706.2 AUTHORIZED USE OF VEHICLES

Employees shall not take department vehicles home after their tour of duty or other assignment (such as training) is finished except as authorized by the Chief of Police or his/her designee.

The Chief of Police may restrict an employee, listed in Section 706.3 of this General Order, from taking a vehicle home if it is determined that the needs of the department will not be served. Considerations for such a restriction may include, but is not limited to: excessive mileage, liability concerns, and/or the changing needs of the department. Such decisions will be made on a case-by-case basis.

In those cases where an employee has received authorization to drive a department vehicle home, the vehicle shall be used for official purposes only. All other General Orders pertaining to use and operation of department vehicles and equipment shall remain in full force and effect while said vehicle is in the control of the authorized employee.

### 706.2.1 SHIFT ASSIGNED VEHICLES

Personnel assigned to routine scheduled field duties shall log onto the in-car computer inputting the required information when going on duty. If the vehicle is not equipped with a working in-car computer, they shall notify the Dispatch Center for entry of the vehicle number on the shift roster. If the employee exchanges vehicles during the shift, the new vehicle number shall be entered.

Employees shall be responsible for inspecting the interior and exterior of any assigned vehicle before taking the vehicle into service and at the conclusion of their shift. Any previously unreported damage, mechanical problems, unauthorized contents or other problems with the vehicle shall be promptly reported to a supervisor and documented as appropriate.

### 706.2.2 UNSCHEDULED USE OF VEHICLES

Personnel utilizing a vehicle for any purpose other than their normally assigned duties shall first notify the Watch Commander of the reasons for use. This section does not apply to personnel permanently assigned an individual vehicle (e.g., command staff, detectives), or to Property and Evidence Unit personnel assigned transportation duties to and from the maintenance yard, etc.

### 706.2.3 UNDERCOVER VEHICLES

Unmarked units, if not assigned to an individual employee, shall not be used without first obtaining approval from the respective unit supervisor.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department



CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001131

706.2.4 DETECTIVE BUREAU VEHICLES
Investigation Division vehicle use is restricted to detective personnel Monday through Friday from 7:00 AM to 5:00 PM unless approved by a detective supervisor. After hour use of Investigation vehicles by personnel not assigned to Investigations shall be recorded with the Watch Commander on the shift roster.

706.2.5 AUTHORIZED PASSENGERS
Personnel operating department owned vehicles shall not permit persons other than City employees or persons required to be conveyed in the performance of duty or as otherwise authorized to ride as a passenger in their vehicle.

706.2.6 PARKING
City owned vehicles should be parked in their assigned stalls. Employees shall not park privately owned vehicles in any stall assigned to a City owned vehicle or in other areas of the parking lot not designated as a parking space unless authorized by a supervisor. Privately owned motorcycles shall be parked in designated areas.

706.2.7 INSPECTIONS
The interior of any vehicle that has been used to transport any person other than an employee should be inspected prior to placing another person in the vehicle and again after the person is removed. This is to ensure that unauthorized items have not been left in the vehicle.

**706.3 EMPLOYEES AUTHORIZED TO TAKE DEPARTMENT VEHICLES HOME**
The following personnel are authorized to drive department vehicles home at the end of their assigned shift or other assignments:

- Chief of Police and Deputy Chief, subject to the guidelines set by City Council, City Administration, or contract
- Captains-Subject to contractual guidelines
- Lieutenants-Subject to contractual guidelines
- Canine officers
- Emergency Services Coordinator
- Sworn members of the Investigation's Unit
- Narcotic Unit Personnel
- Motor Officers (includes Unit Supervisors)
- Others, as determined by the Chief of Police

706.3.1 VEHICLES SUBJECT TO INSPECTION
All City owned vehicles are subject to inspection and or search at any time by a supervisor and no employee assigned to or operating such vehicle shall be entitled to any expectation of privacy with respect to the vehicle or its contents.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001132

### 706.4 GUIDELINES FOR VEHICLES DRIVEN HOME

(a) Vehicles shall be parked off the street, on the property at which the employee resides. They shall be legally parked, in a manner consistent with the zoning codes and other statutes applicable in the jurisdiction in which the vehicle is parked. It is not required that the vehicle be garaged, unless required by that local jurisdiction.

(b) Motors shall be parked in a secured enclosed garage or other similar structure.

(c) Motor Officers are not restricted from taking home their assigned motors, however, during inclement weather they will be restricted from traveling through the Cajon Pass (defined as any portion of Interstate 15, north of the Kenwood off-ramp). Inclement weather can be defined as high winds, rain, ice, snow or any combination thereof. If inclement weather develops after a motor is secured at an officer's residence then an alternative mode of transportation should be utilized to return to work.

(d) Employees involved in any police action while in transit with the vehicle shall report their involvement to dispatch as soon as possible, and to the Watch Commander as soon as practical. But in no case later than 24 hours after the incident.

(e) Employees whose route of transit takes them outside of the department's radio frequencies shall take all necessary steps to insure, as much as possible, that they are able to contact a law enforcement agency by radio from any point in their transit route.

(f) Employees shall immediately report any damage to their vehicle or any complaints by neighbors residing near their home. Employees shall report these facts directly to their division commander.

(g) When on leave for a week or longer, employees who are assigned a take home vehicle shall leave their vehicle at the station.

(h) Employees assigned a take home vehicle may participate in the City's Ride Share Program.

(i) Employees assigned a take home vehicle may make incidental stops on their way to and from work. These stops may include, but are not limited to, stopping at a store, dropping off or picking up a child at school or school attendance during a time period that immediately proceeds or follows the employee's work schedule.

(j) If department needs require the use of unmarked vehicles for a police operation the cars assigned to unit members in Investigations may be utilized for the duration of the operation. This will, therefore, impact the member's ability to take their unit home. Advanced notice will be provided if this should occur. This provision does not apply to Investigations Unit personnel who are on call.

#### 706.4.1 KEYS

All uniformed field personnel approved to operate marked patrol vehicles shall be issued their own personal unit key as part of their initial equipment distribution upon hiring. Personnel assigned a

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001133

permanent vehicle shall be issued keys for their respective vehicle. The loss of any assigned key shall be promptly reported in writing through the employee's chain of command.

## 706.5 ENFORCEMENT ACTIONS

When driving an assigned vehicle to and from work outside of the jurisdiction of the Fontana Police Department, an officer shall not become involved in enforcement actions except in those circumstances where a potential threat to life or serious property damage exists.

Officers driving marked vehicles shall be armed at all times.

Officers may render public assistance, e.g. to a stranded motorist, when deemed prudent.

## 706.6 MAINTENANCE

(a) Each employee is responsible for the cleanliness (exterior and interior) and overall maintenance of their assigned vehicle.

(b) Employees shall make daily inspections of their assigned vehicle for service/ maintenance requirements and damage.

(c) Supervisors shall make, at a minimum, monthly inspections of vehicles assigned to employees under their command to ensure the vehicles are being maintained in accordance with policy.

(d) Routine maintenance and oil changes shall be done in accordance with the maintenance schedule. The vehicles will normally be serviced at the City maintenance shop.

    1. Employees should contact the vehicle maintenance coordinator to schedule routine as well as unscheduled maintenance of the vehicle.

### 706.6.1 ACCESSORIES AND/OR MODIFICATIONS

No modifications, additions or deletions of any equipment or accessories shall be made to the vehicle without written permission from their Division Commander.

## 706.7 COLLISION DAMAGE, ABUSE AND MISUSE

When a City-owned or leased vehicle is involved in a traffic collision, the involved employee shall promptly notify a supervisor. A traffic collision report shall be filed with the agency having jurisdiction.

When a collision involves a department vehicle or when a member of this department is an involved driver in a collision that occurs in this jurisdiction, and the collision results in serious injury or death, the California Highway Patrol should be summoned to handle the investigation.

Collisions involving a private passenger vehicle operated by an employee, when the vehicle use is at the request or direction of a supervisor and is in the performance of the employee's duties, shall be a liability of the Fontana Police Department, not the vehicle owner. Consideration should be given to an outside agency handling the collision investigation report (Insurance Code § 488.5).

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001134

The employee involved in the collision shall complete the City's vehicle collision form. If the employee is incapable, the supervisor shall complete the form.

Any damage to a vehicle that was not caused by a traffic collision shall be immediately reported during the shift in which the damage was discovered, documented in memorandum format and forwarded to the shift sergeant.

An administrative investigation will be conducted to determine if there is any vehicle abuse or misuse. If it is determined that misuse or abuse was a result of negligent conduct or operation, appropriate disciplinary action may result.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001135

# Attachments

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001345

# COUNTY PURSUIT MOU.pdf

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

# SAN BERNARDINO COUNTY MEMORANDUM OF UNDERSTANDING for INTER-AGENCY VEHICLE PURSUITS

I. PURPOSE

This memorandum of understanding is intended to facilitate the effective management of multiple jurisdictional vehicle pursuits.

II. OBJECTIVES

To reduce the danger of pursuits while still reasonably assuring that fleeing suspects are apprehended.

III. AGREEMENT

A. Initiating, Continuing, Supervising and Terminating Pursuits

1. Pursuits should be initiated, continued, supervised or terminated in accordance with individual agency policies.

B. Pursuits into Allied Agency Jurisdictions

1. When a pursuit extends into an allied agency's jurisdiction, the pursuing agency's supervisor-in-charge should ensure that the allied agency is notified and determine if the other agency should be requested to become involved in, or assume supervision of, the pursuit. The following should be considered:

a. The type or extent of assistance required;
b. The pursuing agency's policy regarding pursuits into other jurisdictions.

2. When the allied agency becomes involved in a pursuit, the allied agency should clearly communicate that it is becoming involved in the pursuit, and it should clearly communicate the extent to which it has become involved in the pursuit. This information should be communicated to the units who have been involved in the pursuit, as well as their supervisor.

a. Units from the agency relinquishing the pursuit will terminate their active involvement when:

1. They are required to do so by their agency's policy; or

2. Sufficient units from the assuming agency join the pursuit; or

3. They are requested to do so by the agency assuming the pursuit.

b. It is recognized that allied agency personnel may be assigned to a pursuit-related activity that does not involve becoming directly involved in the pursuit itself. Examples may be the controlling of an intersection while a pursuit passes through or the blocking of freeway on-ramps or exits. These are limited assignments generally undertaken for the protection of innocent persons and are not intended to authorize personnel to become further involved in pursuit-related activities. Once such a limited assignment has been performed, the involvement of the personnel performing that assignment is terminated unless there is an emergency situation requiring further action.

C. Responsibilities of Initiating Agency After Relinquishing Pursuit

1. The officer initiating the pursuit should, if practical, proceed to the termination point at a reduced and legal speed so as to provide information which may be required for the arrest.

2. The agency having or witnessing the most serious crime should take or retain custody of the violator and coordinate all prosecution.

3. Once transfer of pursuit activities or supervision has occurred, the previous agency should not re-enter a pursuit unless a request to do so has been made by the agency then-in-charge, or an emergency condition so dictates.

D. Joining Pursuits by Allied Agencies

1. The mere notification by another agency of a pursuit in-progress shall not be construed as a request to assist in the pursuit.

2. Units of allied agencies should not join a pursuit unless specifically requested by the agency whose officers are in pursuit and they have been assigned to become involved by their own

supervisor. However, this does not necessarily mean that supervision of the pursuit itself has been shifted. There should be a separately communicated request and acceptance to transfer supervision of the pursuit itself.

3. Requests for assistance should be reviewed and approved by a supervising officer from the agency from whom assistance is sought, if available. The decision to assist will be made in accordance with that agency's own pursuit policy.

E. Supervisory Responsibilities

1. When it is likely that a pursuit will cross jurisdictional boundaries, the supervisor-in-charge of the pursuit should ensure that notification is made to the appropriate allied agency.

2. A supervisor from the agency who is in charge of the pursuit when it terminates should proceed to the termination point, if at all practical, to provide supervision and on-the-scene coordination with allied agency personnel who may be present.

3. A supervisor or officer from the agency in whose jurisdiction the pursuit <u>originates</u> should proceed to the termination point, if at all practical.

4. The supervisor from the agency in charge of the pursuit when it terminates should determine each agency's responsibility for transporting, booking, and prosecution of the suspect in accordance with this memorandum of understanding. The supervisor should attempt to obtain relevant information from appropriate personnel from allied agencies.

F. Communications During a Pursuit

1. Communications personnel from the agency initiating a pursuit should notify allied agencies of any pursuit which appears likely to enter other jurisdictions and <u>should specify if assistance is or is not requested by the pursuing units and/or supervisor.</u>

2. Radio Channels

a. At the beginning of a multi-jurisdictional pursuit, the initiating agency's communications personnel should notify the San Bernardino County Sheriff's Department (SBSD) communications center of the pursuit and request

that they assume communications responsibility for the pursuit once it leaves the initiating agency's jurisdiction.

b. Once SBSD communications personnel have assumed radio responsibility for the pursuit, they should maintain such responsibility until the end of the pursuit, regardless of whether the pursued vehicle re-enters the initiating agency's jurisdiction or another jurisdiction.

c. Whenever a pursuit becomes a multi-jurisdictional pursuit, the officers involved in the pursuit should switch to one of the county-wide pursuit channels listed in the below table:

| Area of Coverage | Old Talk Group | New Talk Group |
|---|---|---|
| Victor Valley | 1-ATAC-1 | 1CHASE |
| Barstow | 2-ATAC-1 | 2CHASE |
| Lucerne Valley (mid-desert) | 3-ATAC-1 | 3CHASE |
| Morongo Basin | 4-ATAC-1 | 4CHASE |
| Colorado River | 5-ATAC-1 | 5CHASE |
| West Valley (Fontana west) | 6-ATAC-1 | 6CHASE |
| East Valley (Rialto east) | 7-ATAC-1 | 7CHASE |
| Colton | 8-ATAC-1 | 8CHASE |
| Mountains | 8-ATAC-1 | 8CHASE |

ATAC-2 (1-8) have been designated as secondary pursuit talk groups and will be used for multiple pursuits occurring simultaneously.

d. Should additional mutual aid frequencies be required, the SBSD's Valley Control Center Supervisor or the San Bernardino County 800 Project Coordinator may designate an alternative pursuit frequency.

e. It is recognized that, in most areas of the County, the California Highway Patrol (CHP) will not have the ability to switch to the frequencies set forth in this subsection. Therefore, communications will necessarily have to take place and be coordinated by the communications centers who are involved in pursuit activities. Supervisors and officers involved in pursuit activities should recognize that this may create a delay in communications.

f. If SBSD communications personnel are unable to assume dispatch responsibilities for the pursuit, the initiating agency's dispatch personnel should maintain control of the pursuit until its conclusion.

g. Should a pursuit leave the Valley broadcast area and enter the "High Desert" (i.e. Victorville, Apple Valley, etc.), SBSD valley Communications should coordinate radio responsibilities with SBSD High Desert Communications personnel. The opposite will occur when a pursuit leaves the "High Desert" and enters the "Valley" area.

h. In the event of radio failures, radios should be switched to "CLEMARS DIRECT." This will ensure inter-agency and car-to-car communications.

i. Officers involved in multi-jurisdictional pursuits should attempt to use "clear text" in their radio transmissions, as opposed to agency-specific codes or jargon, to avoid miscommunications between officers, supervisors, and communications personnel from different agencies.

G. Use of Law Enforcement Aircraft

1. When available, a helicopter or fixed wing airplane should be used to minimize the hazards inherent in pursuits. The aircraft should assist pursuing ground units by advising of the pursued vehicle's direction of travel, potential traffic hazards, possible cut-off routes, and/or other logistical information. It is recognized that some agencies have policies governing the use of aircraft in pursuits, and it is anticipated that such aircraft will act in accordance with its own governing policy.

2. Sole coordination and/or supervision of the pursuit should not be relinquished to aircraft personnel unless the primary pursuit unit, or a supervisor, directs that this action be taken. In these instances, the decision to do so should be made with section IIIG3 of this policy in mind.

3. Aircraft assisting in a pursuit cannot be designated as the "primary pursuit vehicle" because it is not defined as a "vehicle" under the California Vehicle Code. Therefore, the exemptions outlined under CVC 17004.7(c) (4) may not apply if the aircraft were designated as the "primary unit."

H. Pursuit Termination Tactics

1. It is recognized that agencies may have different definitions for tactics that may be used to terminate a pursuit. It is also recognized that not all agency policies will authorize all such tactics.

2. Use of Pursuit Termination Tactics in Multi-jurisdictional Pursuits

a. When officers from the agency-in-charge of the pursuit intend to employ pursuit termination tactics as defined by that agency's policies, in a multi-jurisdictional pursuit, they should inform the other then-involved agencies of their intentions to do so. When communicating such an intent, it is best to indicate what tactic will be used, as well as when, where, how and who will use the tactic.

I. Duties and Responsibilities at the Conclusion of a Pursuit

1. When the pursued suspect vehicle stops, or is stopped, officers should attempt to utilize accepted "high risk vehicle stop" procedures in taking the suspect into custody. When officers from different agencies are involved in the arrest, they should make every effort to communicate their intentions to each other during the stop in order to avoid placing themselves in unsafe positions.

2. At the conclusion of the pursuit, the supervisor-in-charge should proceed to its termination point to provide guidance and supervision consistent with that agency's policies.

3. Officers involved in a pursuit that terminates in another jurisdiction should remain at the scene until released by the on-scene supervisor from the agency in charge of the pursuit when it terminates.

J. Post-Pursuit Procedures

1. At the conclusion of a multi-jurisdictional pursuit, the supervisor-in-charge of the pursuit at the time of termination should attempt to organize an assessment of the pursuit, in cooperation with the supervisor(s)-in-charge of the pursuit from the other involved agencies. This assessment should include an evaluation of the following factors:

a. Adherence to the *San Bernardino County Memorandum of Understanding for Inter-Agency Vehicle Pursuits;*
b. Employment of sound tactics;
c. Identification of training needs; and
d. Modifications and/or changes to the *Memorandum of Understanding for Inter-Agency Vehicle Pursuits.*

2. Multi-jurisdictional pursuit assessments should only address the need for amendments or changes to the "memorandum of understanding for inter-agency vehicle pursuits" and should not serve as a basis to critique the judgments and/or actions of personnel from another agency or the policy(ies) of another agency.

3. To avoid jeopardizing prosecution of pursuit-related crimes, there should be an agreement between supervisors from the involved agencies on which agency shall handle media advisals and/or inquiries and the nature and extent of the information to be released.

K. **Freeway Pursuits**

1. Whenever a pursuit enters onto one of the freeways located within the County, and it appears that the suspect is likely to remain on the freeway for an extended period of time, the agency then-in-charge of the pursuit may request the assistance of the California Highway Patrol (CHP) in assuming control of the pursuit. When CHP units assume control of the pursuit, the local agency then-in-charge of the pursuit shall relinquish control to the CHP.

## IV. Deviation from Departmental Policy

In those instances where a conflict arises between a department's pursuit policy and the memorandum of understanding for vehicle pursuits, the department's policy will take precedence.

## V. Review of the County-wide Memorandum of Understanding

The standing committee on the inter-agency pursuit MOU of the *San Bernardino County Law Enforcement Administrators' Association* shall periodically review the MOU and make recommendations concerning updating or changes as necessary to association members. This memorandum of understanding shall be reviewed at least once annually.

Signed and placed into effect on October 9, 1997 by the following San Bernardino County Law Enforcement Agency Representatives:

Marshall Keith Bushey
San Bernardino County Marshall's Department

Chief Lee Dean
San Bernardino Police

Chief Roland Dell
California Highway Patrol

Chief Guy Eisenbrey
Montclair Police Department

Chief Dee Hawes
Barstow Police Department

Chief Jim Kuntz
Adelanto Police Department

Chief Bernie Lunsford
Colton Police Department

Acting Chief Thomas Mathison
Chino Police Department

Chief Lewis Nelson
Redlands Police Department

Sheriff Gary Penrod
San Bernardino County Sheriff's Department

Chief Lloyd Scharf
Ontario Police Department

Chief Samuel Scott
Fontana Police Department

Signed and placed into effect on October 9, 1997 by the following
San Bernardino County Law Enforcement Agency Representatives (cont):

Chief Lowell Stark
Rialto Police Department

District Attorney Dennis Stout
San Bernardino County District
Attorney's Office

Chief Martin Thouvenell

Upland Police Department

Chief Probation Officer
Ray Wingerd
San Bernardino County
Probation Department

Attachment



# Statutes and Legal Requirements.pdf

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

## Statutes and Legal Requirements

Items listed in this section include sections from the California Penal Code (CPC), Welfare and Institutions Code (WI) and Government Code (GC).

### *Definitions*

**CPC 422.55** - Provides general definition of hate crimes in California.

**CPC 422.56**- Provides definitions of terms included in hate crimes statutes.

**GC 12926**- Disability-related definitions applicable to some hate crime statutes.

## Felonies

### *Hate Crimes*

**CPC 422.7** - Commission of a crime for the purpose of interfering with another's exercise of civil rights.

### *Related Crimes*

**CPC 190.2(a)(16)** - Homicide penalties related to certain hate crime related acts.

**CPC 190.03(a)** - Homicide penalties related to certain hate crime related acts.

**CPC 288(b)(2)** - Sexual assault of dependent person by caretaker

**CPC 368(b)** - Dependent adult abuse generally - may apply as disability-related hate crime.

CPC 594.3 - Vandalism of places of worship.

**CPC 11412** - Causing or attempting to cause other to refrain from exercising religion by threat.

**CPC 11413** - Arson or destructive device at place of worship.

## Misdemeanors

### *Hate Crimes*

**CPC 422.6** - Use of force, threats, or destruction of property to interfere with another's exercise of civil rights.

**CPC 422.77** - Violation of civil order (Bane Act) protecting the exercise of civil rights

### *Related Crimes*

**CPC 302** - Disorderly conduct during an assemblage of people gathered for religious worship at a tax-exempt place of worship.

**CPC 538(c)** - Unauthorized insertion of advertisements in newspapers and redistribution to the public.

**CPC 640.2** - Placing handbill, notice of advertisement on a consumer product or product packaged without authorization.

**CPC 11411** - Terrorism of owner or occupant of real property. Placement or display of sign, symbol, or other physical impression without authorization, engagement in pattern of conduct, or burning or desecration of religious symbols.



CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001425

## Enhancements

**CPC 190.2(a)(16)** - Special circumstances imposing the Death Penalty or Life Without Possibility of Parole, if the victim was intentionally killed because of sexual orientation, gender, or disability.

**CPC 190.3** - Special circumstances imposing LWOP if the victim was intentionally killed because of sexual orientation, gender, or disability.

**CPC 422.75** - Penalty for felony committed because of victim's race, color, religion, nationality, country or origin, ancestry, disability, or sexual orientation shall be enhanced one, two, or three years in prison, if the person acts alone; and two, three, or four years if the person commits the act with another.

**CPC 1170.8** - Enhancement for robbery or assault at a place of worship.

**CPC 1170.85(b)** - Felony assault or battery enhancement due to age or disability.

## Reporting

**CPC 13023**- Requirement for law enforcement agencies to report hate crime data to DOJ.

**WI 15630 –** Elder and Dependent Adult Abuse Mandated Reporting (may apply in disability-related hate crimes).

## Training and Policy Requirements

**CPC 422.87** - Hate crimes policy adoption and update requirements (AB 1985, Effective January 1, 2019).

**CPC 13519.6** - Defines hate crime training requirements for peace officers.

**CPC 13519.41** - Training requirements on sexual orientation and gender identity-related hate crimes for peace officers and dispatchers (AB 2504, Effective January 1, 2019).

## Miscellaneous Provisions

**CPC 422.78** - Responsibility for prosecution of stay away order violations.

**CPC 422.86** - Public policy regarding hate crimes.

**CPC 422.89** - Legislative intent regarding violations of civil rights and hate crimes

**CPC 422.92** - Hate crimes victims brochure requirement for law enforcement agencies.

**CPC 422.93** - Protection of victims and witnesses from being reported to immigration authorities.

**GC 6254** - Victim confidentiality.



CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001426

# Vehicle Pursuits

## 314.1 PURPOSE AND SCOPE

This policy provides guidelines for vehicle pursuits in order to protect the safety of involved officers, the public, and fleeing suspects.

### 314.1.1 DEFINITIONS

**Blocking** - A low-speed tactic where one or more authorized police department emergency vehicles intentionally restrict the movement of a suspect vehicle, with the goal of containment or preventing a pursuit. Blocking is not boxing in or a roadblock.

**Boxing-in** - A tactic designed to stop a suspect's moving vehicle by surrounding it with law enforcement vehicles and then slowing all vehicles to a stop.

**Pursuit Intervention** - An attempt to stop the suspect's ability to continue to flee in a vehicle through tactical application of technology, tire deflation devices, blocking or vehicle intercept, boxing-in, the PIT (known as Pursuit Intervention Technique or Precision Immobilization Technique), ramming, or roadblock procedures.

**Pursuit Intervention Technique (PIT)** - A low-speed tactic intentionally applied to cause the suspect vehicle to spin out and terminate the pursuit.

**Ramming** - The deliberate act of impacting a suspect's vehicle with another vehicle to functionally damage or otherwise force the suspect's vehicle to stop.

**Roadblocks** - A tactic designed to stop a suspect's vehicle by intentionally placing an emergency vehicle or other immovable object in the path of the suspect's vehicle.

**Tire deflation device** - A device that extends across the roadway designed to puncture the tires of the pursued vehicle, sometimes referred to as spike strips.

**Terminate** - To discontinue a pursuit or stop chasing fleeing vehicles.

**Trail** - Following the path of the pursuit at a safe speed while obeying all traffic laws and without activating emergency equipment. If the pursuit is at a slow rate of speed, the trailing vehicle will maintain sufficient distance from the pursuit vehicles so as to clearly indicate an absence of participation in the pursuit

**Vehicle Pursuit** - An event involving one or more law enforcement officers attempting to apprehend a suspect, who is attempting to avoid arrest while operating a motor vehicle by using high-speed driving or other evasive tactics, such as driving off a highway, turning suddenly, or driving in a legal manner but willfully failing to yield to an officer's signal to stop.

## 314.2 OFFICER RESPONSIBILITIES

Vehicle pursuits shall only be conducted using authorized police department emergency vehicles that are equipped with and displaying emergency lighting and sirens as required by Vehicle Code

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001513

§ 21055. Officers are responsible for continuously driving with due regard and caution for the safety of all persons and property (Vehicle Code § 21056).

### 314.2.1 WHEN TO INITIATE A PURSUIT

Officers are authorized to initiate a pursuit when the officer reasonably believes that a suspect, who has been given appropriate signal to stop by a law enforcement officer, is attempting to evade arrest or detention by fleeing in a vehicle.

Factors that should be considered in deciding whether to initiate a pursuit include:

(a) The seriousness of the known or reasonably suspected crime and its relationship to community safety.

(b) The importance of protecting the public and balancing the known or reasonably suspected offense and the apparent need for immediate capture against the risks to officers, innocent motorists, and others.

(c) The safety of the public in the area of the pursuit, including the type of area, time of day, the amount of vehicular and pedestrian traffic (e.g., school zones), and the speed of the pursuit relative to these factors.

(d) The pursuing officers familiarity with the area of the pursuit, the quality of radio communications between the pursuing units and the dispatcher, and the driving capabilities of the pursuing officers under the conditions of the pursuit.

(e) Whether weather, traffic, and road conditions unreasonably increase the danger of the pursuit when weighed against the risk of the suspect's escape.

(f) Whether the identity of the suspect has been verified and whether there is comparatively minimal risk in allowing the suspect to be apprehended at a later time.

(g) The performance capabilities of the vehicles used in the pursuit in relation to the speeds and other conditions of the pursuit.

(h) Emergency lighting and siren limitations on unmarked police department vehicles that may reduce visibility of the vehicle, such as visor or dash-mounted lights, concealable or temporary emergency lighting equipment, and concealed or obstructed siren positioning.

(i) Suspect and officer vehicle speeds.

(j) Other persons in or on the pursued vehicle (e.g., passengers, co-offenders, hostages).

(k) Availability of other resources such as air support or vehicle locator or deactivation technology.

### 314.2.2 WHEN TO TERMINATE A PURSUIT

Pursuits should be terminated whenever the totality of objective circumstances known or which reasonably ought to be known to the officer or supervisor during the pursuit indicates that the present risks of continuing the pursuit reasonably appear to outweigh the risks resulting from the suspect's escape.

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department

The factors listed in this policy on when to initiate a pursuit will apply equally to the decision to terminate a pursuit. Officers and supervisors must objectively and continuously weigh the seriousness of the offense against the potential danger to innocent motorists, themselves, and the public when electing to continue a pursuit.

In addition to the factors that govern when to initiate a pursuit, other factors should be considered in deciding whether to terminate a pursuit, including:

(a) The distance between the pursuing vehicle and the fleeing vehicle is so great that further pursuit would be futile or require the pursuit to continue for an unreasonable time and/or distance.

(b) The pursued vehicle's location is no longer definitely known.

(c) The pursuing vehicle sustains damage or a mechanical failure that renders it unsafe to drive.

(d) The pursuing vehicle's emergency lighting equipment or siren becomes partially or completely inoperable.

(e) Hazards to uninvolved bystanders or motorists.

(f) The danger that the continued pursuit poses to the public, the officers, or the suspect, balanced against the risk of allowing the suspect to remain at large.

(g) The identity of the suspect is known and it does not reasonably appear that the need for immediate capture outweighs the risks associated with continuing the pursuit.

(h) Extended pursuits of violators for misdemeanors not involving violence, risk of serious harm, or weapons (independent of the pursuit) are generally discouraged.

### 314.2.3 SPEED LIMITS

The speed of a pursuit is a factor that should be evaluated on a continuing basis by the officer and supervisor. Evaluation of vehicle speeds should take into consideration public safety, officer safety, and the safety of the occupants of the fleeing vehicle.

Should high vehicle speeds be reached during a pursuit, officers and supervisors should also consider these factors when determining the reasonableness of the speed of the pursuit:

(a) Pursuit speeds have become unreasonably unsafe for the surrounding conditions.

(b) Pursuit speeds have exceeded the driving ability of the officer.

(c) Pursuit speeds are beyond the capabilities of the pursuit vehicle thus making its operation unsafe.

## 314.3 PURSUIT UNITS

When involved in a pursuit, unmarked police department emergency vehicles should be replaced by marked emergency vehicles whenever practicable.

Vehicle pursuits should be limited to three vehicles (two units and a supervisor); however, the number of units involved may vary with the circumstances.

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001515

An officer or supervisor may request additional units to join a pursuit if, after assessing the factors outlined above, it reasonably appears that the number of officers involved may be insufficient to safely arrest the suspects. All other officers should stay out of the pursuit, but should remain alert to its progress and location. Any officer who drops out of a pursuit may then, if necessary, proceed to the termination point at legal speeds, following the appropriate rules of the road.

### 314.3.1 MOTORCYCLE OFFICERS

When involved in a pursuit, police department motorcycles should be replaced by marked four-wheel emergency vehicles as soon as practicable.

### 314.3.2 UNMARKED POLICE VEHICLES

Unmarked police vehicles, with emergency equipment, are generally prohibited from initiating or joining in any pursuit. Officers in such vehicles, however, may become involved in emergency activities involving known or suspected felony crimes. Those officers should terminate their involvement in any pursuit immediately upon arrival of a sufficient number of marked police emergency vehicles or any helicopter. The exemptions provided by Vehicle Code § 21055 do not apply to officers using vehicles without emergency equipment. Any unmarked police vehicles without emergency equipment shall not be involved in any pursuits.

### 314.3.3 PRIMARY UNIT RESPONSIBILITIES

The initial pursuing unit will be designated as the primary pursuit unit and will be responsible for the conduct of the pursuit unless the officer is unable to remain reasonably close to the suspect's vehicle. The primary responsibility of the officer initiating the pursuit is the apprehension of the suspects without unreasonable danger to any person.

The primary unit should notify the dispatcher commencing with a request for priority radio traffic, that a vehicle pursuit has been initiated, and as soon as practicable provide information including but not limited to:

(a) The location, direction of travel, and estimated speed of the suspect's vehicle.

(b) The description of the suspect's vehicle including license plate number, if known.

(c) The reason for the pursuit.

(d) Known or suspected weapons. Threat of force, violence, injuries, hostages, or other unusual hazards.

(e) The suspected number of occupants and identity or description.

(f) The weather, road, and traffic conditions.

(g) The need for any additional resources or equipment.

(h) The identity of other law enforcement agencies involved in the pursuit.

Until relieved by a supervisor or secondary unit, the officer in the primary unit is responsible for the broadcasting of the progress of the pursuit. Unless circumstances reasonably indicate otherwise, the primary pursuing officer should, as soon as practicable, relinquish the responsibility of broadcasting the progress of the pursuit to a secondary unit or air support joining the pursuit

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001516

to minimize distractions and allow the primary pursuing officer to concentrate foremost on safe pursuit tactics.

### 314.3.4 SECONDARY UNIT RESPONSIBILITIES

The second officer in the pursuit will be designated as the secondary unit and is responsible for:

(a) Immediately notifying the dispatcher of entry into the pursuit.

(b) Remaining a safe distance behind the primary unit unless directed to assume the role of primary pursuit vehicle or if the primary pursuit vehicle is unable to continue the pursuit.

(c) Broadcasting the progress, updating known or critical information, and providing changes in the pursuit, unless the situation indicates otherwise.

(d) Identifying the need for additional resources or equipment as appropriate.

(e) Serving as backup to the primary pursuing officer once the suspect has been stopped.

### 314.3.5 PURSUIT DRIVING

The decision to use specific driving tactics requires the same assessment of the factors the officer considered when determining whether to initiate and/or terminate a pursuit. The following are tactics for units involved in the pursuit:

(a) Officers, considering their driving skills and vehicle performance capabilities, will space themselves from other involved vehicles such that they are able to see and avoid hazards or react safely to maneuvers by the fleeing vehicle.

(b) Because intersections can present increased risks, the following tactics should be considered:

1. Available units not directly involved in the pursuit may proceed safely to controlled intersections ahead of the pursuit in an effort to warn cross traffic.

2. Pursuing units should exercise due regard and caution when proceeding through controlled intersections.

(c) As a general rule, officers should not pursue a vehicle driving left of center (wrong way) against traffic. In the event that the pursued vehicle does so, the following tactics should be considered:

1. Requesting assistance from available air support.

2. Maintain visual contact with the pursued vehicle by paralleling it on the correct side of the roadway.

3. Request other units to observe exits available to the suspects.

(d) Notify the California Highway Patrol (CHP) and/or other law enforcement agency if it appears that the pursuit may enter its jurisdiction.

(e) Officers involved in a pursuit should not attempt to pass other units unless the situation indicates otherwise or they are requested to do so by the primary unit and with a clear understanding of the maneuver process between the involved units.

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department



CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001517

### 314.3.6 PURSUIT TRAILING

In the event the initiating unit from this agency either relinquishes control of the pursuit to another unit or jurisdiction, that initiating unit may, with permission of a supervisor, trail the pursuit to the termination point in order to provide necessary information and assistance for the arrest of the suspects.

The term trail means to follow the path of the pursuit at a safe speed while obeying all traffic laws and without activating emergency equipment. If the pursuit is at a slow rate of speed, the trailing unit will maintain sufficient distance from the pursuit units so as to clearly indicate an absence of participation in the pursuit.

### 314.3.7 AIR SUPPORT ASSISTANCE

When available, air support assistance should be requested. Once the air unit has established visual contact with the pursued vehicle, the unit should assume control over the pursuit. The primary and secondary ground units, or involved supervisor, will maintain operational control but should consider whether the participation of air support warrants the continued close proximity and/or involvement of ground units in the pursuit.

The air unit should coordinate the activities of resources on the ground, report progress of the pursuit and provide officers and supervisors with details of upcoming traffic congestion, road hazards, or other pertinent information to evaluate whether to continue the pursuit. If ground units are not within visual contact of the pursued vehicle and the air support unit determines that it is unsafe to continue the pursuit, the air support unit should recommend terminating the pursuit.

### 314.3.8 UNITS NOT INVOLVED IN THE PURSUIT

There should be no paralleling of the pursuit route. Officers are authorized to use emergency equipment at intersections along the pursuit path to clear intersections of vehicular and pedestrian traffic to protect the public. Officers should remain in their assigned area and should not become involved with the pursuit unless directed otherwise by a supervisor.

The primary and secondary units should be the only units operating under emergency conditions (red light and siren) unless other units are assigned to the pursuit.

### 314.3.9 OPTIONAL PURSUIT MODES

The following modes are intended to enhance safety to the public and officers involved in a vehicle pursuit by encouraging a fleeing suspect to operate his/her vehicle in a safe manner and/or self-terminate the pursuit. Exigent circumstances may preclude the use of these tactics.

(a) Tracking Mode- When an air unit is participating in a vehicle pursuit, a supervisor can authorize a transition to tracking mode. While in tracking mode, the air unit will continue to broadcast the pursuit and may gain altitude and divert or discontinue the use of the spot light.

(1) Ground units should disengage from direct pursuit of the suspect and attempt to remain out of sight of the suspect, but maintain close proximity to the suspect's vehicle if safe to do so. Ground units can continue code three operation pursuant to CVC 21055/21056. If the use

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001518

of tracking mode does not appear to change the suspect's driving behavior, the supervisor may choose to have ground units reengage in the pursuit, transition to surveillance mode or terminate the pursuit.

(b) Surveillance Mode- When an air unit is participating in a vehicle pursuit, a supervisor can authorize the transition to surveillance mode. While in surveillance mode ground units will shut down code three operation and discontinue involvement in the pursuit.

(1) The air unit will continue broadcasting the suspect's location as usual; updating speed, location, traffic conditions etc. The air unit may gain altitude and divert or discontinue use of the spotlight. The air unit will continue until the suspect vehicle stops or some exigency occurs. At that point a supervisor can order ground units to apprehend the suspect(s), initiate a perimeter or reengage in the pursuit.

## 314.4 SUPERVISORY CONTROL AND RESPONSIBILITIES

Available supervisory and management control will be exercised over all vehicle pursuits involving officers from this department.

The field supervisor of the officer initiating the pursuit, or if unavailable, the nearest field supervisor will be responsible for:

(a) Immediately notifying involved unit and the dispatcher of supervisory presence and ascertaining all reasonably available information to continuously assess the situation and risk factors associated with the pursuit.

(b) Engaging in the pursuit, when appropriate, to provide on-scene supervision.

(c) Exercising management and control of the pursuit even if not engaged in it.

(d) Ensuring that no more than the required number of units are involved in the pursuit under the guidelines set forth in this policy.

(e) Directing that the pursuit be terminated if, in the supervisor's judgment, it is unreasonable to continue the pursuit under the guidelines of this policy.

(f) Ensuring that assistance from air support, canines, or additional resources is requested, if available and appropriate.

(g) Ensuring that the proper radio channel is being used.

(h) Ensuring that the Watch Commander is notified of the pursuit as soon as practicable.

(i) Ensuring the notification and/or coordination of outside agencies if the pursuit either leaves or is likely to leave the jurisdiction of this department.

(j) Controlling and managing Fontana Police Department units when a pursuit enters another jurisdiction.

### 314.4.1 WATCH COMMANDER RESPONSIBILITIES

Upon becoming aware that a pursuit has been initiated, the Watch Commander should monitor and continually assess the situation and ensure the pursuit is conducted within the guidelines and

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001519

requirements of this policy. Once notified, the Watch Commander has the final responsibility for the coordination, control, and termination of a vehicle pursuit and shall be in overall command.

The Watch Commander shall review all pertinent reports..

## 314.5 DISPATCH CENTER

If the pursuit is confined within the City limits, radio communications will be conducted on the primary channel unless instructed otherwise by a supervisor or dispatcher. If the pursuit leaves the jurisdiction of this department or such is imminent, involved units may, whenever necessary, switch radio communications to a tactical or emergency channel.

### 314.5.1 DISPATCHER RESPONSIBILITIES

Upon notification or becoming aware that a pursuit has been initiated, the dispatcher is responsible for:

(a) Clearing the radio channel of non-emergency traffic.

(b) Coordinating pursuit communications of the involved units and personnel.

(c) Broadcasting pursuit updates as well as other pertinent information as necessary.

(d) Ensuring that a field supervisor is notified of the pursuit.

(e) Notifying and coordinating with other involved or affected agencies as practicable.

(f) Notify the Watch Commander as soon as practicable.

(g) Documenting pursuit activities.

### 314.5.2 LOSS OF PURSUED VEHICLE

When the pursued vehicle is lost, the primary unit should broadcast pertinent information to assist other units in locating suspects. The primary unit or supervisor will be responsible for coordinating any further search for either the pursued vehicle or suspects fleeing on foot.

## 314.6 INTER-JURISDICTIONAL CONSIDERATIONS

When a pursuit enters another agency's jurisdiction, the primary officer or supervisor, taking into consideration distance traveled, unfamiliarity with the area and other pertinent facts, should determine whether to request the other agency to assume the pursuit. Unless entry into another jurisdiction is expected to be brief, it is generally recommended that the primary officer or supervisor ensure that notification is provided to each outside jurisdiction into which the pursuit is reasonably expected to enter, regardless of whether such jurisdiction is expected to assist.

### 314.6.1 ASSUMPTION OF PURSUIT BY ANOTHER AGENCY

Officers will relinquish control of the pursuit when another agency has assumed the pursuit, unless the continued assistance of the Fontana Police Department is requested by the agency assuming the pursuit. Upon relinquishing control of the pursuit, the involved officers may proceed, with supervisory approval, to the termination point of the pursuit to assist in the investigation. The supervisor should coordinate such assistance with the assuming agency and obtain any information that is necessary for any reports. Notification of a pursuit in progress should not be

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001520

construed as a request to join the pursuit. Requests to or from another agency to assume a pursuit should be specific.

### 314.6.2 PURSUITS EXTENDING INTO THIS JURISDICTION

The agency that initiates a pursuit is responsible for conducting the pursuit. Units from this department should not join a pursuit unless specifically requested to do so by the pursuing agency and with approval from a supervisor. The exception to this is when a single unit from the initiating agency is in pursuit. Under this circumstance, a supervisor may authorize units from this department to join the pursuit until sufficient units from the initiating agency join the pursuit or until additional information is provided allowing withdrawal of the pursuit.

When a request is made for this department to assist or take over a pursuit that has entered the jurisdiction of Fontana Police Department, the supervisor should consider:

(a) The public's safety within this jurisdiction.

(b) The safety of the pursuing officers.

(c) Whether the circumstances are serious enough to continue the pursuit.

(d) Whether there is adequate staffing to continue the pursuit.

(e) The ability to maintain the pursuit.

As soon as practicable, a supervisor or the Watch Commander should review a request for assistance from another agency. The Watch Commander or supervisor, after considering the above factors, may decline to assist in, or assume the other agency's pursuit.

Assistance to a pursuing allied agency by officers of this department will terminate at the City limits provided that the pursuing officers have sufficient assistance from other sources. Ongoing participation from this department may continue only until sufficient assistance is present.

In the event that a pursuit from another agency terminates within this jurisdiction, officers should provide appropriate assistance to officers from the allied agency including but not limited to scene control, coordination and completion of supplemental reports, and any other reasonable assistance requested or needed.

## 314.7 WHEN PURSUIT INTERVENTION IS AUTHORIZED

Whenever practicable, an officer shall seek approval from a supervisor before employing any intervention to stop the pursued vehicle. In deciding whether to use intervention tactics, officers/ supervisors should balance the risks of allowing the pursuit to continue with the potential hazards to the public arising from the use of each tactic, the officers, and persons in or on the pursued vehicle to determine which, if any, intervention tactic may be reasonable.

### 314.7.1 USE OF FIREARMS

An officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others.

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001521

Officers should not shoot at any part of a vehicle in an attempt to disable the vehicle (see the Use of Force Policy).

### 314.7.2 INTERVENTION STANDARDS

Any intervention tactic, depending upon the conditions and circumstances under which it is used, may present dangers to the officers, the public, or anyone in or on the vehicle being pursued. Certain applications of intervention tactics may be construed to be a use of force, including deadly force, and subject to the policies guiding such use. Officers should consider these facts and requirements prior to deciding how, when, where, and if an intervention tactic should be employed.

(a) Blocking should only be used after giving consideration to the following:

1. The technique should only be used by officers who have received training in the technique.
2. Supervisory approval should be obtained before using this technique.
3. The need to immediately stop the suspect vehicle or prevent it from leaving reasonably appears to outweigh the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.
4. It reasonably appears the technique will contain or prevent the pursuit.

(b) The PIT should only be used after giving consideration to the following:

1. The technique should only be used by officers who have received training in the technique, including speed restrictions.
2. Supervisory approval should be obtained before using the technique.
3. The need to immediately stop the suspect vehicle reasonably appears to outweigh the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.
4. It reasonably appears the technique will terminate or prevent the pursuit.

(c) Ramming a fleeing vehicle should only be done after giving consideration to the following:

1. Supervisory approval should be obtained before using the technique.
2. The need to immediately stop the suspect vehicle reasonably appears to substantially outweigh the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.
3. It reasonably appears the technique will terminate or prevent the pursuit.
4. Ramming may be used only under circumstances when deadly force would be authorized.
5. Ramming may be used when all other reasonable alternatives have been exhausted or reasonably appear ineffective.

(d) Before attempting to box a suspect vehicle during a pursuit the following should be considered:

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department



CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001522

1. The technique should only be used by officers who have received training in the technique.
2. Supervisory approval should be obtained before using the technique.
3. The need to immediately stop the suspect vehicle reasonably appears to outweigh the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.
4. It reasonably appears the technique will terminate or prevent the pursuit.

(e) Tire deflation devices should only be used after considering the following:

1. Tire deflation devices should only be used by officers who have received training in their use.
2. Supervisory approval should be obtained before using tire deflation devices.
3. The need to immediately stop the suspect vehicle reasonably appears to outweigh the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.
4. It reasonably appears the use will terminate or prevent the pursuit.
5. Tire deflation devices should not be used when the pursued vehicle is a motorcycle, a vehicle transporting hazardous materials, or a school bus transporting children, except in extraordinary circumstances.
6. Due to the increased risk to officers deploying tire deflation devices, such deployment should be communicated to all involved personnel.

(f) Roadblocks should only be used after considering the following:

1. Roadblocks should only be used by officers who have received training in their use.
2. Supervisory approval should be obtained before using the technique.
3. The need to immediately stop the suspect vehicle reasonably appears to substantially outweigh the risks of injury or death to occupants of the suspect vehicle, officers, or other members of the public.
4. It reasonably appears the technique will terminate or prevent the pursuit. Roadblocks may be used only under circumstances when deadly force would be authorized.
5. Roadblocks may be used when all other reasonable alternatives have been exhausted or reasonably appear ineffective.

### 314.7.3 CAPTURE OF SUSPECTS

Proper self-discipline and sound professional judgment are the keys to a successful conclusion of a pursuit and apprehension of evading suspects. Officers shall use only that amount of force, which reasonably appears necessary under the circumstances, to accomplish a legitimate law enforcement purpose.

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001523

Unless relieved by a supervisor, the primary pursuing officer should coordinate efforts to apprehend the suspects following the pursuit. Officers should consider safety of the public and the involved officers when formulating plans for setting up perimeters or for containing and capturing the suspects.

## 314.8 REPORTING REQUIREMENTS

All appropriate reports should be completed to comply with applicable laws, policies, and procedures.

(a) The primary officer should complete appropriate crime/arrest reports.

(b) The Allied Agency Vehicle Pursuit Report (form CHP 187A) shall be filed with the CHP no later than 30 days following the pursuit (Vehicle Code § 14602.1). The primary officer should complete as much of the required information on the form as is known and forward the report to the Watch Commander for review and distribution.

(c) Any use of force by a member of this department shall be documented (See the Use of Force Policy)

(d) Injuries, medical treatment, damaged property should be documented inthe crime/ arrest report.

### 314.8.1 REGULAR AND PERIODIC PURSUIT TRAINING

The Training Sergeant shall make available to all officers initial and supplementary Police Officer Standard Training (POST) training on pursuits required by Penal Code § 13519.8, and no less than annual training addressing:

(a) This policy.

(b) The importance of vehicle safety and protecting the public.

(c) The need to balance the known offense and the need for immediate capture against the risks to officers and others (Vehicle Code § 17004.7(d)).

### 314.8.2 POLICY REVIEW

Officers of this department shall certify in writing that they have received, read, and understand this policy initially, upon any amendments, and whenever training on this policy is provided. The POST attestation form, or an equivalent form, may be used to document the compliance and should be retained in the member's training file.

## 314.9 APPLICATION OF VEHICLE PURSUIT POLICY

This policy is expressly written and adopted pursuant to the provisions of Vehicle Code § 17004.7, with additional input from the POST Vehicle Pursuit Guidelines.

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department



CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001524

# Officer Response to Calls

## 316.1 PURPOSE AND SCOPE

This policy provides for the safe and appropriate response to emergency and non-emergency situations whether dispatched or self-initiated.

## 316.2 RESPONSE TO CALLS

Officers dispatched "Code-3" shall consider the call an emergency response and proceed immediately. Officers responding Code-3 shall continuously operate emergency lighting equipment, including at minimum a steady forward facing red light, and shall sound the siren as reasonably necessary pursuant to Vehicle Code § 21055.

Responding with emergency light(s) and siren does not relieve the officer of the duty to continue to drive with due regard for the safety of all persons. The use of any other warning equipment without a red light and siren does not provide any exemption from the Vehicle Code. (VC 21056)

Officers should only respond Code-3 when so dispatched or when circumstances reasonably indicate an emergency response is required. Officers not authorized to respond Code-3 shall observe all traffic laws and proceed without the use of emergency lights and siren.

### 316.2.1 EMERGENCY RESPONSE - GUIDELINES

The following is a list of common calls that will be considered authorized for emergency response unless directed otherwise: 1. Assist an endangered officer 2. Injury or unknown injury traffic accidents 3. In progress calls where bodily harm has been committed or is likely to occur 4. Any type of call where a human life is seriously threatened and an urgent response to the scene by a police officer is imperative

### 316.2.2 NUMBER OF UNITS ASSIGNED

Normally, only one unit should respond to an emergency call Code-3 unless the Watch Commander or the field supervisor authorizes an additional unit(s).

## 316.3 REQUESTING EMERGENCY ASSISTANCE

Requests for emergency assistance should be limited to those situations where the involved personnel reasonably believe that there is an immediate threat to the safety of officers, or assistance is needed to prevent imminent serious harm to a citizen. In any event, where a situation has stabilized and emergency response is not required, the requesting officer shall immediately notify the Dispatch Center.

If circumstances permit, the requesting officer should give the following information:

- The unit number
- The location
- The reason for the request and type of emergency
- The number of units required

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001553

### 316.4 INITIATING CODE 3 RESPONSE

If an officer resonably believes that a Code-3 response to any call is appropriate, the officer shall notify the Dispatch Center as soon as it is practicable to do so. Generally, only one unit should respond Code-3 to any situation. Should another officer believe a Code-3 response is appropriate, the Dispatch Center shall be notified and the Watch Commander or field supervisor will make a determination as to whether one or more officers driving Code-3 is appropriate.

### 316.5 RESPONSIBILITIES OF RESPONDING OFFICERS

Officers shall exercise sound judgment and care with due regard for life and property when responding to an emergency call. Officers shall reduce speed at intersections where they do not have the right away to such a degree that they have complete control of the vehicle.

The decision to continue a Code-3 response is at the discretion of the officer. If, in the officer's judgment, the roadway conditions or traffic congestion does not permit such a response without unreasonable risk, the officer may elect to respond to the call without the use of red lights and siren at the legal speed limit. In such an event, the officer should immediately notify the Dispatch Center. An officer shall also discontinue the Code-3 response when directed by a supervisor.

Upon receiving authorization or determining a Code-3 response is appropriate, an officer shall immediately give the location from which he/she is responding.

### 316.6 COMMUNICATIONS RESPONSIBILITIES

A dispatcher shall assign a Code-3 response when an officer requests emergency assistance or available information reasonably indicates that the public is threatened with serious injury or death and immediate police response is needed. In all other circumstances, the dispatcher shall obtain authorization from the Watch Commander or a field supervisor prior to assigning units Code-3 . The dispatcher shall:

(a) Attempt to assign the closest available unit to the location requiring assistance

(b) Immediately notify the Watch Commander

(c) Confirm the location from which the unit is responding

(d) Notify and coordinate allied emergency services (e.g., fire and ambulance)

(e) Continue to obtain and broadcast information as necessary concerning the response and monitor the situation until it is stabilized or terminated

(f) Control all radio communications during the emergency and coordinate assistance under the direction of the Watch Commander or field supervisor

### 316.7 SUPERVISORY RESPONSIBILITIES

Upon being notified that a Code-3 response has been initiated, the Watch Commander or the field supervisor shall verify the following:

(a) The proper response has been initiated

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001554

Fontana PD Policy Manual



(b) No more than those units reasonably necessary under the circumstances are involved in the response

(c) Affected outside jurisdictions are being notified as practical

The field supervisor shall monitor the response until it has been stabilized or terminated and assert control by directing units into or out of the response if necessary. If, in the supervisor's judgment, the circumstances require additional units to be assigned a Code-3 response, the supervisor may do so.

It is the supervisor's responsibility to terminate a Code-3 response that, in his/her judgment is inappropriate due to the circumstances.

When making the decision to authorize a Code-3 response, the Watch Commander or the field supervisor should consider the following:

- The type of call
- The necessity of a timely response
- Traffic and roadway conditions
- The location of the responding units

**316.8 FAILURE OF EMERGENCY EQUIPMENT**

If the emergency equipment on the vehicle should fail to operate, the officer must terminate the Code-3 response and respond accordingly. In all cases, the officer shall notify the Watch Commander, field supervisor, or the Dispatch Center of the equipment failure so that another unit may be assigned to the emergency response.

Copyright Lexipol, LLC 2024/01/02, All Rights Reserved.
Published with permission by Fontana Police Department


CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001555

# Traffic Collision Reporting

## 502.1 PURPOSE AND SCOPE

The Fontana Police Department prepares traffic collision reports in compliance with the California Highway Patrol Collision Investigation Manual (CIM) and as a public service makes traffic collision reports available to the community with some exceptions.

## 502.2 RESPONSIBILITY

The Traffic Sergeant will be responsible for distribution of the Collision Investigation Manual. The Traffic Sergeant will receive all changes in the state manual and ensure conformity with this policy. The traffic sergeant may delegate responsibility for distribution of and updating the collision investigation manual.

## 502.3 TRAFFIC COLLISION REPORTING

All traffic collision reports taken by members of this department shall be forwarded to the Traffic Bureau for approval and data entry into the Records Management System.

## 502.4 REPORTING SITUATIONS

### 502.4.1 TRAFFIC COLLISIONS INVOLVING CITY VEHICLES

Traffic collision investigation reports (CHP 555) shall be taken when a City-owned vehicle is involved in a traffic collision upon a roadway or highway wherein any damage or injury results.

Whenever a traffic collision occurs involving only minor property damage and City owned property a traffic investigation report (CHP 555) is not required. whenever there is damage to a City vehicle, an Administrative Memorandum and SCAR report shall be completed by a supervisor and forwarded to the appropriate Division Commander. Photographs of the collision scene and vehicle damage shall be taken at the scene to document all property damage, injuries and the collision scene.

The responding supervisor shall be responsible for completing all necessary documentation along with a Fontana Police Department Employee Involved Traffic Collision Routing Checklist (FPD 336). These forms will then be forwarded as indicated on the routing checklist.

### 502.4.2 TRAFFIC COLLISIONS WITH POLICE DEPARTMENT EMPLOYEES

When an employee of this department, either on-duty or off-duty, is involved in a traffic collision within the jurisdiction of the Fontana Police Department resulting in a serious injury, fatality, or any injury that might cause a liabilty concern for the City a supervisor shall notify the on-call MAIT investigators and a MAIT supervisor to respond to the scene. The supervisor shall then notify the on-duty watch commander or on-call staff lieutenant, if outside normal business hours, who will approve an AOD request to contact the San Bernardino County Sheriff's Department (SBSO) Major Accident Investigation Team (M.A.I.T.) in handling the collision investigation.

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department



CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001511

The term serious injury is defined as any injury that may result in a fatality.

#### 502.4.3 TRAFFIC COLLISIONS WITH OTHER CITY EMPLOYEES OR OFFICIALS

When any City employee or City official, either on-duty or off-duty, is involved in a traffic collision within the jurisdiction of the Fontana Police Department resulting in a serious injury, fatality, or any injury that might cause a liability concern for the City a supervisor shall notify the on-call MAIT investigators and a MAIT supervisor to respond to the scene. The MAIT supervisor shall then notify the on-duty watch commander or on-call staff lieutenant, if outside normal business hours, to determine the need, if any, to request the assistance of the San Bernardino County Sheriff's Department (SBSO) Major Accident Investigation Team (M.A.I.T.).

The term serious injury is defined as any injury that may result in a fatality.

#### 502.4.4 TRAFFIC COLLISIONS ON PRIVATE PROPERTY

In compliance with the Collision Investigation Manual, traffic collision reports shall not be taken for traffic collisions occurring on private property, unless there is a death or injury to any person involved, a hit and run violation, or Vehicle Code violation. A collision report may be taken at the discretion of any supervisor.

#### 502.4.5 TRAFFIC COLLISIONS ON ROADWAYS OR HIGHWAYS

Traffic collision reports shall be taken when they occur on a roadway or highway within the jurisdiction of this department under any of the following circumstances:

(a) When there is a death or injury to any persons involved in the collision

(b) When a report is requested by any involved driver

### 502.5 NOTIFICATION OF TRAFFIC BUREAU SUPERVISION

In the event of a serious injury or death related traffic collision, the Watch Commander shall notify the Traffic Sergeant or M.A.I.T. Supervisor to relate the circumstances of the traffic collision and seek assistance from the Major Accident Investigation Team as appropriate. In the absence of a Traffic Sergeant, the Watch Commander or any supervisor may assign an accident investigator or motor officer to investigate the traffic collision.

Copyright Lexipol, LLC 2023/07/19, All Rights Reserved.
Published with permission by Fontana Police Department



CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER COF 001512

# CVC 17004.7

Provides immunity to a public entity from civil liability for personal damages, death, or property damage resulting from a collision with a vehicle driven by an actual or suspected law violator pursued by a peace officer if the agency adopts a written policy with the following specified standards:

- Supervisory control of the pursuit, if available.
- Procedures for designating the primary pursuit vehicle and for determining the total number of involved vehicles in the pursuit.
- Procedures for coordinating operations with other jurisdictions.
- Guidelines for determining when the interest of public safety and effective law enforcement justify a pursuit and when the pursuit should not be initiated, or when it should be terminated.

# PATROL DRIVING

## DEFENSIVE DRIVING AND LEGAL ASPECTS

- 21052 CVC
- Governs the operation of motor vehicles by public officers and employees
- Law enforcement officers are subject to all the rules of the road prescribed for any citizen, operating a motor vehicle EXCEPT, when operating an emergency vehicle in accordance with state laws.

CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER 

# EXEMPTION

- 21055 CVC - Exempts an officer from vehicle code violations when responding to emergency calls, involved in a pursuit and engaged in rescue operations
- Driver must have a red lamp displayed to the front and sound a siren as necessary
- 21056 CVC - Does not relieve an officer from driving with due regard

21057 CVC – Every police officer is expressly prohibited from using a siren or driving at an illegal speed when serving as an escort of any vehicle, except when it is furnished for the preservation of life or when expediting movements of supplies and personnel during a national or state of emergency.

# AUTHORIZED EMERGENCY VEHICLE

- 21806 CVC – Upon approach of emergency vehicle sounding a siren and using at least one lighted red lamp, visible to the front, motorist shall yield the right-of-way and drive immediately to the right-hand edge of the roadway and stop
- 21807 CVC – Does not relieve officer from driving with due regard
- Due Regard is so important it is in the Vehicle Code twice!!