Eugene P. Ramirez (State Bar No. 134865)
*eugene.ramirez@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
*kayleigh.andersen@manningkass.com*
Eugene Hanrahan (State Bar No. 185826)
*Eugene.Hanrahan@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, CITY OF FONTANA; EDWARD BAUTISTA; JESUS GARCIA; DANIEL PRECIE; BRIAN ZOZAYA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

DIANA BIAS; TATANISHA PITTS; DOMINIC ADAMS Sr., and BRITTANY MASON,

Plaintiffs,

v.

CITY OF FONTANA; EDWARD BAUTISTA; JESUS GARCIA; DANIEL PRECIE; BRIAN ZOZAYA; and DOES 1-10, inclusive,

Defendants.

Case No. 5:25−cv−00207−JGB−ACCV
District Judge, Jesus G. Bernal
Magistrate Judge, Angela C. C. Viramontes

**DEFENDANTS' AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF [AMENDED] MOTION FOR SUMMARY JUDGMENT**

*Filed concurrently with Notice of Motion and Motion; Separate Statement of Uncontroverted Facts; Notice of Lodging; Index of Exhibits; Declaration of Kayleigh A. Andersen; Declaration of Custodian of Records; and (Proposed) Order*

Date: 10/19/2026
Time: 9 a.m.
Crtrm.: 1 (2nd Floor)

///

///

MANNING | KASS

Table of Contents

I. INTRODUCTION....6
II. STATEMENT OF FACTS....6
A. The Short Pursuit....6
B. The Collision....7
C. Pertinent Policy And Training Information....9
D. The Operative Complaint....9
III. LEGAL STANDARD....10
IV. ARGUMENT....11
A. Plaintiffs Have No Claims Against Bautista....11
B. Plaintiffs' Complaint Must Be Dismissed Because Defendants Did Not Cause Plaintiffs' Harms....11
C. The Fourth Amendment Claim Fails Because There Was No Seizure Or Use Of Force....12
D. The Fourth Amendment Claim Fails Because All Factors Weigh In Favor Officer Reasonability....14
E. Plaintiffs' Deprivation of Right to a Familial Relationship Fails as a Matter of Law....15
F. Officers Are Entitled To Qualified Immunity....17
G. Defendants Are Entitled To Judgment On The Remainder Of Plaintiffs' State Law Claims Which Are Derivative And Baseless....18
1. *Battery Fails*....19
2. *Negligence Fails*....19
3. *Bane Act Fails*....20
H. None of Plaintiffs' Monell Claims Can Be Maintained....21
1. *Unconstitutional Policy*....21
2. *Failure to Train*....22
3. *Ratification*....23
I. The City Is Immunized From Any And All State Law Claims Per California's Vehicle Code....24
J. Punitive Damages Are Unwarranted....25
V. CONCLUSION....25

**Cases**

Alvarez v. City of Santa Ana,
No. SA CV 24-516-DMG (KSX), 2025 WL 2860324 (C.D. Cal. Sept. 30, 2025) ............ 23
*Anderson v. Liberty Lobby Inc.*,
477 U.S. 242, 248 (1986). ............ 10
*Brendlin v. California*
551 U.S. 249 (2007) ............ 13
*Brower v. Cnty. of Inyo*
489 U.S. 593 (1989) ............ 12, 13, 14
*Brown v. Ransweiler*
171 Cal.App.4th 516 (2009) ............ 19, 20
*California v. Hodari D.*
499 U.S. 621 (1991) ............ 13
*Campbell v. White*
916 F.2d 421 (7th Cir. 1990) ............ 14
*Carter v. City of Carlsbad*
799 F. Supp. 2d 1147 (S.D. Cal. 2011) ............ 18
*Celotex Corp. v. Catreett*,
477 U.S. 317, 323 (1986) ............ 10
*City of Canton v. Harris*
489 U.S. 378 (1989) ............ 22
*City of Los Angeles v. Heller*
475 U.S. 799 ............ 21
*Cnty. of Sacramento v. Lewis*
523 U.S. 833 (1998) ............ 13, 14, 18
*Connick v. Thompson*
563 U.S. 51 (2011) ............ 22
*Cunningham v. Gates*
229 F.3d 1271 (9th Cir. 2000) ............ 13
*Dang v. Cross*
422 F.3d 800 (9th Cir. 2005) ............ 25
*District of Columbia v. Wesby*
583 U.S. 48 (2018) ............ 17
*Est. of Chavez v. Santa Ana Police Dep't*
804 F. Supp. 3d 1056 (C.D. Cal. 2025) ............ 15, 18
*Ewolski v. City of Brunswick*
287 F.3d 492 (6th Cir. 2002) ............ 13
*Gaetz v. City of Riverside*
722 F. Supp. 3d 1054 (C.D. Cal. 2024) ............ 23
*Galen v. County of Los Angeles*
477 F.3d 652 (9th Cir. 2007) ............ 16
*Gonzalez v. City of Anaheim*
747 F.3d 789 (9th Cir. 2014) ............ 17
*Graham v. Connor*
490 U.S. 386 (1989) ............ 14, 19
*Hansen v. Black*,
885 F.2d 642, 644 (9th Cir. 1989) ............ 11
*Harlow v. Fitzgerald*
457 U.S. 800 (1982) ............ 17
*Harper v. City of Los Angeles*
533 F.3d 1010 (9th Cir. 2008) ............ 12
*Hayes v. County of San Diego*
57 Cal. 4th 622 (2013) ............ 18, 19, 20
*Hereford v. City of Hemet*

791 F. Supp. 3d 1126 (C.D. Cal. 2025) .......... 11
*Hyde v. City of Willcox*
23 F.4th 863 (9th Cir. 2022) .......... 22
*Jackson v. County of Bremerton*
268 F.3d 646 (9th Cir. 2001) .......... 17
*Jones v. Williams*
297 F.3d 930 (9th Cir. 2002) .......... 11
*Karam v. City of Burbank*
352 F.3d 1188 (9th Cir.2003) .......... 17
*Lopez v. City of Los Angeles*
196 Cal.App.4th 675 (2011) .......... 20
*Lytle v. Carl*
382 F.3d 978 (9th Cir. 2004) .......... 23
*Martinez v. California*
444 U.S. 277 (1980) .......... 12
*Martinez v. County of Los Angeles*
47 Cal. App. 4th 334 (1996) .......... 18
*Matsushita Elec. v. Zenith Radio,*
475 U.S. 574, 576 (1986) .......... 11
*Montes v. United States*
37 F.3d 1347 (9th Cir. 1994) .......... 24
*Munoz v. City of Union City*
120 Cal. App. 4th, 1077 .......... 20
*Nelson v. Cnty. of Sacramento*
926 F. Supp. 2d 1159 (E.D. Cal. 2013) .......... 22
*Ochoa v. City of Mesa*
26 F.4th 1050 (9th Cir. 2022) .......... 15
*Oviatt v. Pearce*
954 F.2d 1470 (9th Cir. 1992) .......... 21
*Oyenik v. Corizon Health, Inc.*
696 F. App 792, 794 (9th Cir. 2017) .......... 22
*Park v. City & Cnty. of Honolulu*
952 F.3d 1136 (9th Cir. 2020) .......... 24
*Porter v. Osborn*
546 F.3d 1131 (9th Cir. 2008) .......... 15
*Puente v. City of Phoenix*
123 F.4th 1035 (9th Cir. 2024) .......... 15, 16
*Quintanilla v. City of Downey*
84 F.3d 353 (9th Cir. 1996) .......... 21
*Ramirez v. City of Gardena*
5 Cal.5th 995 (2018) .......... 24
*Reese v. Cty. of Sacramento*
888 F.3d 1030 (9th Cir. 2018) .......... 20, 21
*Riley v. Alameda County Sheriff's Office*
43 Cal.App.5th 492 (2019) .......... 24
*S.B. v. County of San Diego*
864 F.3d 1010 (9th Cir. 2017) .......... 17
*Sabbe v. Washington Cnty. Bd. of Commissioners*
84 F.4th 807 (9th Cir. 2023) .......... 12, 18
*Scott v. Harris*
550 U.S. 372 (2007) .......... 14, 15, 17
*Seidner v. de Vries*
39 F.4th 591 (9th Cir. 2022) .......... 18
*Shoyoye v. Cnty. of L.A.*
203 Cal.App.4th 947 (2012) .......... 20

*Smith v. Wade*
461 U.S. 30 (1983)....25
*Smolen v. Deloitte, Haskins & Sells,*
921 F.2d 959, 963 (9th Cir. 1990)....11
*Uhlrig v. Harder*
64 F.3d 567 (10th Cir. 1995)....15
*Ward v. City of San Jose*
967 F.2d 280 (9th Cir. 1991)....25
*Williamson v. City of Nat'l City*
23 F.4th 1146 (9th Cir. 2022)....15
*Zelig v. County of Los Angeles*
27 Ca1.4th 1112 (2007)....19

**Statutes**

Cal. Civ. Code § 52.1....20
Cal. Gov. Code § 820.2....19
Cal. Gov. Code § 820.25....19
Cal. Gov. Code § 820.6....19
Cal. Gov. Code § 821.8....19
Cal. Gov. Code §820.8....19
Cal. Penal Code §835a....18, 20
Cal. Veh. Code § 17004.7....24
Cal. Veh. Code § 22108....7
Cal. Veh. Code § 27315....7

**Rules**

Federal Rule of Civil Procedure (FRCP) Rule 56(a)....10

## I. INTRODUCTION

A tragic car accident lies at the heart of this case. After speeding away from one pair of officers attempting to make a traffic stop, the driver of a suspect car switched lanes and collided with another pair of officers. Though the suspect driver survived, **all** of his passengers died from the collision; with them, **two** officers were grievously wounded suffering irreparable harm. Decedents' family members (the Plaintiffs) bring this civil suit against the City, Officers, and their estates.

What has been set before the court as an "excessive force" claim, with liability laid at the City and Officers' feet, is in fact a case where a criminally reckless driver endangered (and extinguished) the lives of all of his passengers and severely wounded police officers. This case is an opportunistic nonstarter from grieving families looking to place the blame on their fellow victims (the officers at the scene) rather than focusing it rightly on the perpetrator. There is no constitutional violation to speak of; there is no force, let alone excessive force; without that, there is no accompanying state law claims—negligence, battery, or Bane Act. As shown from the transcripts, crash data, and testimonies, decedents' driver caused an accident that took three lives and altered two others forever. Nothing more actually occurred, or can be maintained.

Defendants City of Fontana ("City"), Edward Bautistia, Jesus Garcia, Daniel Precie, and Brian Zozaya ("Officers") (altogether "Defendants") request the Court grant summary judgment in their favor.

## II. STATEMENT OF FACTS

### A. The Short Pursuit

On February 3, 2024, officer Brian Zozaya ("Zozaya") and Daniel Precie ("Precie") were conducting routine patrol at or around the area of Catawba and Valley in Fontana, CA. (UF 1) Around 10:44 p.m., Zozaya caught sight of a 2022 Nissan license plate 8ZZG454 ("vehicle"). (UF 2) It was later determined that minor Giovanni Bonilla ("Bonilla") was operating the vehicle. (UF 3) Zozaya noted that one of the rear passengers was hanging out of the rear window in a way that made it



MANNING | KASS

apparent he was not wearing a seatbelt. (UF 4) Officers witnessed this window hanging as violative of VC § 27315. (UF 5) Officers approached closer and saw the vehicle make an "unsafe turn from" the current lane to the second lane in front of another driver without using a turn signal. (UF 6) Officers witnessed this lane change as violative of VC22108. (UF 7) At this time, the road was wet due to rain, thereby rendering the two violations to be a greater safety threat. (UF 8)

Officers then attempted to conduct a traffic stop on the vehicle at a solid red light in the eastbound lanes of Catawba (UF 9). Officers activated all of the following: their emergency lights with forward facing solid red lights, flashing white and blue lights, and sirens. (UF 10) In response, the vehicle accelerated away, going westbound on Valley street from Catawba street. (UF 11) Zozaya initiated a vehicle pursuit, taking position as the primary officer. (UF 12) At all relevant times, Valley Road had a speed limit of 45 miles per hour. (UF 13)

The vehicle drove eastbound on Valley (from Catawba) going over 60 miles per hour. (UF 14) The vehicle did not show any signs that its driver was going to stop in response to officers' emergency lights or signals of pursuit. (UF 15) Zozaya broadcasted to dispatch that he was in pursuit. (UF 16) The vehicle drove eastbound on Valley in the number 1 lane, through Citrus, approaching Oleander at over 80 miles per hour. (UF 17) Officers determined the vehicle's high speeds on the wet roads, and passage of other motorists, posed a major threat of injury to the public. (UF 18)

**B. <u>The Collision</u>**

Officer Jesus Garcia ("Garcia") and Edward Bautista ("Bautista") were positioned in their respective patrol vehicles within a parking lot on the southernly side of Valley between Cypress and Juniper. (UF 19) Garcia and Baustista heard the broadcasts from Zozaya indicating that a pursuit was happening. (UF 20) Garcia and Bautista responded as supporting/backing units. (UF 21) Meanwhile, the pursuit eastbound continued through Cypress in speeds well over 80 miles per hour. (UF 22) At no point in time did the vehicle or the passengers comply with officers' attempts





MANNING | KASS

to get them to pull over or otherwise stop their flight. (UF 23)

Baustista exited the parking lot turning left onto the westbound lane of Valley towards Cypress. (UF 24) Behind him, Garcia exited the parking lot with a left turn out onto Valley. (UF 25) Garcia moved his patrol vehicle into about the northerly end of the middle dividing lane. (UF 26) Garcia did not intend to position his car physically in the way of the vehicle decedents were in. (UF 27) Garcia did not perform any maneuvers with his patrol unit in an effort to terminate the pursuit. (UF 28)

Almost immediately after Garcia moved into or about the middle dividing lane, decedents' vehicle collided with Garcia. (UF 29) From this collision, three of the passengers eventually died, with only Bonilla, Garcia, and Garcia's partner alive but seriously injured. (UF 30) At over 100 miles per hour, decedents' vehicle decelerated approximately sharply over ten (10) miles per hour to between 80 and 90 mph just prior to hitting Garcia. (UF 31) Detective analysis of the vehicle's CDR proffered that about "…[1.5 seconds prior to the collision] that [the vehicle] rotated counter clockwise. (UF 32) Garcia's recollection is that he completed his left turn before seeing headlights coming at him. (UF 33) Garcia's vehicle made it over the southern double yellow line of the center median before the collision. (UF 34) Decedents' vehicle, which was in the eastbound lane closest to median, veered leftward into about the middle-diver lane. (UF 35)

After impact, decedents' vehicle continued northeast where it collided with other parked and unoccupied vehicles. (UF 36) Officers arrived to assist, investigating injuries and casualties but not moving anyone inside the cars due to the risk of potential spine injuries. (UF 37)

Bonilla and decedent Pitts were transported to Arrowhead Regional Medical Center (ARMC) and Loma Linda University Medical Center (LLUMC) while decedent Rias and Adams were pronounced deceased at the scene. (UF 38) Pitts was pronounced dead the next day. (UF 39) Following this incident, Bonilla was convicted of violation VC22356(B) exceeding 70 miles per hour. (UF 40)





MANNING | KASS

**C. Pertinent Policy And Training Information**

Officers' POST and training profiles with FPD include course training for use of force, vehicle pursuits, collisions, response to calls, and rendering medical aid. (UF 41) FPD policy contains provisions which sets forth all of the following with respect to vehicle use and pursuits: (1) the circumstances in which to initiate pursuits; (2) numeric limits on number of pursuit vehicles; (3) communication procedures for pursuits; (4) the role of supervisors to manage and control pursuits; (5) circumstances in which to use laid out driving tactics; (6) authorized intervention tactics (including blocking, ramming, boxing, and roadblocks) and when to employ them; (7) factors necessary to choose speeds encompassing public, officer, and suspect safety; (8) air support role when available; (9) factors to consider to decide pursuit termination or discontinuance; (10) post-vehicle-pursuit apprehension procedures; (11) determination of effective coordination, management, and control of interjurisdictional pursuits; (12) post-pursuit reporting and analysis. (UF 42) FPD also has its policy, including portions specifically related to pursuits, signed as received and acknowledged by officers. (UF 43) FPD also has a pursuit-specific yearly training refresher (UF 44).

**D. The Operative Complaint**

Plaintiffs defer to the following records as showcasing the facts they know and the facts upon which their claims are based: "Defendants' Disclosures and Discovery Responses; County of San Bernardino investigatory records; California Highway Patrol investigatory records; statements of Defendant Officers." (UF 45) Plaintiffs allege that Officers "used deadly force in their improper tactics and by vehicle intervention techniques." (UF 46)

To support their first claim, Plaintiffs specifically claim that Officers "escalated the situation when they unreasonably used their patrol vehicles to forcibly strike the vehicle occupied by but not driven by Decedents." (UF 47) To support their second claim, Plaintiffs specifically claim that Officers "intentionally used force…against





MK MANNING | KASS

Decedents, causing their deaths" and failed to give verbal warnings. (UF 48)

To support their third claim for *Monell* policy liability, Plaintiffs allege that the City has policies including using excessive force on unarmed, non-risk suspects, failing to train or discipline Officers, and maintaining a policy of inaction. (UF 49) To support their fourth claim for *Monell* failure to train liability, Plaintiffs allege the City failed to train Officers on how to handle use of force in particular against persons in a vehicle, unreasonable stop of a vehicle, and tactical communication and position. (UF 50) To support their fifth claim for *Monell* ratification, Plaintiffs allege a final policymaker determined that acts of the Officers were within policy and that a policymaker has a history of ratifying unconstitutional use of force. (UF 51)

Plaintiffs sixth, seventh, and eighth claims stem from the same allegations and injury underlying the first and second causes of action. (UF 52)

## III. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure (FRCP) Rule 56(a) permits a party to move for summary judgment on each claim, or a part of each claim. Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). If the nonmoving party fails to show a genuine issue of material fact, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catreett*, 477 U.S. 317, 323 (1986). Rule 56(c) mandates judgment against a party who fails to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 323. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and…it should be interpreted in a way that allows it to accomplish this purpose. *Id.* at 323-324.

In opposing a motion for summary judgment, it is insufficient to merely show that there is some "metaphysical doubt as to material facts." *Matsushita Elec. v. Zenith*

*Radio*, 475 U.S. 574, 576 (1986). The plaintiff must show the existence of a genuine issue and "produce at least some 'significant probative evidence tending to support the complaint.'" *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). The responding party cannot merely rest upon the allegations and the pleadings. *Hansen v. Black*, 885 F.2d 642, 644 (9th Cir. 1989).

## IV. ARGUMENT

### A. Plaintiffs Have No Claims Against Bautista

Plaintiffs cannot maintain any of their claims against Bautista. To sue a defendant personally under section 1983, plaintiffs must set forth a "personal showing" of participation in the alleged deprivation of rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). On this point, the incontrovertible evidence is clear. Bautista did not have material participation in the pursuit and was not in the vehicle with which decedents' car collided. (UF 19-24) Bautista responded to the pursuit and successfully entered the westbound lane after which Plaintiffs passed him and crashed into Garcia before Bautista could give chase. (UF 19-21, 24) There was no force from Bautista nor circumstances for him to "intervene" on. The lack of any allegations regarding Bautista's behavior favors granting summary judgment to as to him. *See Hereford v. City of Hemet*, 791 F. Supp. 3d 1126, 1150 (C.D. Cal. 2025) (that infirmity, standing alone, weighs in favor of granting [defendant's summary judgment] Motion.) Importantly, without evidence, Plaintiffs cannot maintain a 1983 claim against him. For these same reasons, plaintiffs cannot maintain the derivative state law claims. Accordingly, Bautista is entitled to summary judgment on all of plaintiffs' claims at the outset. (UF 19-24, 45-52)

### B. Plaintiffs' Complaint Must Be Dismissed Because Defendants Did Not Cause Plaintiffs' Harms

It is undisputable that the cause of not only Plaintiffs' injuries but named officers' injuries was the reckless and dangerous actions of a third party. (UF 3, 26-30, 35-36, 40) Plaintiffs have no claim because their claim is dependent on Officers

causing their injuries which Officers did not. Ninth Circuit courts promulgated and affirmed that causation must exist to assign 42 U.S.C. § 1983 ("§ 1983") liability. *Sabbe v. Washington Cnty. Bd. of Commissioners*, 84 F.4th 807, 816 (9th Cir. 2023) ("Here, we need not parse whether circumstances justified warrantless entry into the [plaintiffs'] field or whether the field qualifies as the curtilage of [plaintiff's] home, because even if the entry violated the Fourth Amendment, that violation was not the proximate cause of [plaintiff's] death"); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) (noting that a § 1983 plaintiff must demonstrate "the defendant's conduct was the actionable cause of the claimed injury," a showing that requires establishing "both causation-in-fact and proximate causation").

Far from causing the needless deaths and injuries in this case, officers were fellow victims. The evidence reveals two officers who lawfully attempted to initiate a traffic stop on decedents' vehicle and two more who were in the process of responding, one of whom had not fully joined the pursuit. Liability does not attach for want of causation even in cases where suspects can but "negligently or intentionally" drive into roadblocks. *See Martinez v. California*, 444 U.S. 277, 285 (1980); *see also Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989). In this case, where no such roadblocks existed, contact was not caused by Officers and were accidental at best, there can be no legal finding of causation. Without causation, there can be no § 1983 claim, as set forth under either the Fourth or Fourteenth Amendment. Because the state law claims are based on the same injury as alleged for the § 1983 claims, they also fail; as do any requests for punitive damages. *See argument below IV.G, J.*

### C. <u>The Fourth Amendment Claim Fails Because There Was No Seizure Or Use Of Force</u>

Plaintiffs' excessive force claim fails at the outset. There is no government intrusion in this case—not one recognized under the Fourth Amendment. Seizure is dependent not on the fact that Plaintiffs were harmed or even that police initiated a pursuit. That a police officer came to have physical contact with decedents is not

determinative on its own. On this point, courts have been clear. *California v. Hodari D.*, 499 U.S. 621, 629. (1991). (Even an officer's pursuit of a subject while he flees does not automatically trigger a seizure for fourth amendment purposes.); see also *Brendlin v. California*, 551 U.S. 249, 254 (2007) and *Ewolski v. City of Brunswick*, 287 F.3d 492, 506 (6th Cir. 2002) (when subject decides to flee, does not obey, and not successfully restrained, there is no seizure.)

There are two officer engagements mentioned by Plaintiffs. First, there is the police pursuit enacted by Zozaya and Precie. Neither Zozaya nor Precie ever made contact with any of decedents. (UF 1-29) Therefore, in order to constitute a seizure without any physical force, officers had to exert their authority and decedents had to **actually** submit. From the attempted traffic stop up to the collision, no one in the vehicle surrendered or submitted to Zozaya or Precie. (UF 10-17, 22-29) Lacking said submission, there was "at most an attempted seizure so far as the Fourth Amendment is concerned." *Hodari D.*, 499 U.S. at 626, n. 2.

Seizure is equally lacking with respect to Garcia. There is no causation and the contact between the vehicle and Garcia's patrol unit is categorically not a seizure. In *Brower v. County of Inyo*, the court stated that a seizure "does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby)." *Brower*, 489 U.S. at 596–597. Here, this crash was caused by decedents' vehicle, not Garcia's. (UF 22-35) However, even assuming both the high-speed fleeing suspect and Garcia were somehow both 'causally' connected to the crash, it remains **legally not** a seizure because, "accidentally stopp[ing] a suspect by crashing into him" is not a seizure under the Fourth Amendment. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843–45 (1998).

Not only is it indisputable that Garcia was not attempting to make contact with decedents, the contact that was made does not give rise to a Fourth Amendment violation. *Cunningham v. Gates*, 229 F.3d 1271, 1291 (9th Cir. 2000) (UF 25-36) This is **doubly** so for accidental or unintended contact. *See Scott v. Harris*, 550 U.S. 372,

378 (2007). *Brower*, 489 U.S. at 596–97 ([A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.); *see also Cnty of Sacramento v. Lewis*, 523 U.S. at 844, citing *Campbell v. White*, 916 F.2d 421, 423 (7th Cir. 1990) (no seizure where officer accidentally struck and killed a motorcycle passenger during a high-speed pursuit)

There is simply no force upon which to create a Fourth Amendment claim in this case. Plaintiffs' claim based thereon fails.

**D. <u>The Fourth Amendment Claim Fails Because All Factors Weigh In Favor Officer Reasonability</u>**

Per *Graham v. Connor*, an excessive force claim is properly analyzed under the Fourth Amendment's objective reasonableness standard. The non-exhaustive list of factors to be considered in evaluating whether the force used to effect a particular seizure is reasonable: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). The test is an objective one, viewed from the vantage of a reasonable officer at the scene, and is highly deferential to the police officer's need to protect himself or others. *Id.* at 396, 97.

Here, the lack of force cripples and stops dead a *Graham* analysis. However, assuming the pursuit's show of force to be a seizure and decedents' collision with Garcia to constitute the same, the factors laid out in *Graham* favor a finding of reasonableness on the part of officers. Decedents' were in violation of several traffic codes and posed a large threat to the public, themselves, and officers. Traveling over 100 miles per hour, switching lanes, and not obeying traffic signals poses an



MK MANNING | KASS

extremely huge risk to everyone in decedents' vicinities. *See also Scott*, 550 U.S. at 385–86. Finally, decedents were in active flight, fleeing Officers' attempts to apprehend them.

Thus, all three factors articulated by *Graham* favor the need for force to effectuate a seizure to terminate the threat decedents and their driver posed. (UF 1-36) The additional factors of notice with sirens and lights, giving chase, and the ongoing signaling with said emergency lights and sirens provides even **further** weight to the reasonability of Officers' attempts at seizure. *Est. of Chavez v. Santa Ana Police Dep't*, 804 F. Supp. 3d 1056, 1077 (C.D. Cal. 2025) The measures in this case amount to initiation of a pursuit and attempts to eventually join said pursuit. These measures are categorically non-drastic and are reasonable in the face of decedents' continued defiance. *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1154 (9th Cir. 2022) (suspect's choice to not cooperate and comply when given the chance does not render her forcible removal unreasonable)

**E. <u>Plaintiffs' Deprivation of Right to a Familial Relationship Fails as a Matter of Law</u>**

Plaintiffs' liberty interest in their parent-child relationship is set forth under the Fourteenth Amendment Due Process Clause. (UF 45-46, 48) The Due Process Clause protects against "deliberately wrongful government decisions rather than merely negligent government conduct." *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995). The governing standard is whether the behavior "shocks the conscience." *Puente v. City of Phoenix*, 123 F.4th 1035, 1050 (9th Cir. 2024) To so determine, courts use one of two tests: the deliberate indifference test or the purpose to harm test. *Porter v. Osborn*, 546 F.3d 1131, 1136 37 (9th Cir. 2008) Deliberate indifference applies if officers had time to deliberate. *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022). Purpose of harm applies where situations escalated requiring snap judgments but acted with "a purpose to harm [the plaintiff] for reasons unrelated to legitimate law enforcement objectives." *Id.*, at 1056.

Plaintiffs' claim fails under either test. There is not even an iota of evidence that any of the officers intended to harm decedents in this case. Precie and Zozaya put on their police signals and gave decedents and their driver the entirety of the pursuit to pull over. (UF 1-29) Garcia and Bautista were attempting to respond to the pursuit by coming out into the turning or westward lanes to eventually join in making chase. (UF 19-35) Without any factual evidence, Plaintiffs resort to falsehoods, alleging that "Garcia used his patrol vehicle to strike decedents' vehicle." (UF 46-47) This allegation is devoid of any support. Indeed, just as Bautista before him entered the westward lane to join the chase (not using his vehicle to obstruct decedents), Garcia's actions support his tesitmony about his intention to enter the westward lanes as well. (UF 24-35) Plaintiffs' referenced evidence in support, chiefly the MAIT investigatory records, disprove any notion that Garcia's vehicle either rammed, T-boned, PIT-ed, or performed any other such maneuver against Plaintiffs. (UF 26-35; see also Ex. I) Instead, all evidence shows that Garcia was slow or stopped in or at the middle divider looking northwest when decedents, moving east at breakneck speed, decelerated as they maneuvered or lost control coming out of the east lane into the divider themselves nad colliding with Garcia. (UF 26-40) Garcia was not in their direct path in any of the east lanes. (UF 26-35, Ex. I) Plaintiffs non-eye-witness contentions to the contrary are not controlling and do not create genuine issues of fact. *See Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007).

There is similarly no evidence that Officers acted with deliberate indifference to the risk of harm to decedents. As set forth earlier, there is no evidence that any of the officers performed any maneuvers against decedents' vehicle. (UF 25-30) There is no activity performed by any officer here to put decedents' more at risk than they or their driver put them-a risk that police were attempting to cease or mitigate. Decedents running into officers in their continued attempts to evade officers does not render officers' joinder of the pursuit and activation of lights and sirens somehow unreasonable. *Puente*, 123 F.4th at 1055–56; *see also Gonzalez v. City of Anaheim*,





MANNING | KASS

747 F.3d 789, 798 (9th Cir. 2014), *citing Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir.2003) ("speculation [of] improper motive does not [create] evidence sufficient to survive summary judgment")

**F. <u>Officers Are Entitled To Qualified Immunity</u>**

This Court need not reach the issue of qualified immunity because there is not constitutional violation in this case. However, qualified immunity also applies. Qualified immunity protects officers from suit if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of the conduct was clearly established at the time. *Jackson v. County of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001)

The law needs to be sufficiently clear such that every reasonable official would understand that what he is doing is unlawful, i.e. existing law must have placed the constitutionality of the officers' conduct beyond debate. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Qualified immunity, though it does not require a case exactly on point, requires particularized case precedent to showcase "clear notice" to officers regarding their violative nature of their actions. *S.B. v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017).

Although there are a smattering collision-based issues in precedent, these cases do not need to reach qualified immunity since the collision is often not seen as a fourth amendment violation or conscience-shocking under the fourteenth amendment. *See IV. B-E*. However, collision-involved precedent provides a bright line indication that Officers' pursuit in this case, and beyond, would be immunized. The Supreme Court already established not only that officers must and should initiate, and need not cease, pursuits of fleeing vehicular suspects, taking measures to get them off of the road. *Scott*, 550 U.S. at 385. Similarly, it has been held reasonable that "police officer's attempts to terminate a dangerous high-speed car chase that threatens the lives of





MANNING | KASS

innocent bystanders does not violate the Fourth Amendment, even when it places a fleeing motorist at risk of serious injury or death." *Id.* at 386. Prior, the Supreme Court held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not [create] liability under the Fourteenth Amendment" at all. *Lewis*, 523 U.S. at 854.

Since then, both the Supreme Court and Ninth Circuit have awarded qualified immunity for far more than the facts here (officers initiating and joining a pursuit where decedent's crashed into them). In cases involving pursuits wherein the involved officers **intended** to strike, ram, hit, or use "PIT" maneuvers to immobilize fleeing suspects were deemed reasonable and immune. *See Sabbe*, 84 F.4th at 829; *see also Seidner v. de Vries*, 39 F.4th 591, 603 (9th Cir. 2022) (reversing denial of qualified immunity for officer erecting roadblock into which a cyclist collided); *see also Chavez*, 804 F. Supp. 3d at 1077. It therefore follows that that **un**intentional or plaintiff-caused contact in this case would be immunized as well, should the Court even find it necessary to reach the question of qualified immunity.

**G. <u>Defendants Are Entitled To Judgment On The Remainder Of Plaintiffs' State Law Claims Which Are Derivative And Baseless</u>**

Plaintiffs' state law claims for battery and negligence are based on the alleged excessive force and therefore measured under the reasonableness standard of the Fourth Amendment. *Carter v. City of Carlsbad*, 799 F. Supp. 2d 1147, 1164 (S.D. Cal. 2011); *see Hayes v. County of San Diego*, 57 Cal. 4th 622, 637-39 (2013); *Martinez v. County of Los Angeles*, 47 Cal. App. 4th 334, 349-50 (1996). Further, a police officer in California may use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance. Cal. Penal Code §835a. Officers are immune for their pre-seizure tactical decisions because "[e]xcept as otherwise provided by statute" California bars liability for "injury resulting from ... the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2; see Cal. Gov. Code §§ 820.25, 820.6, 820.8, 821.8;



MANNING | KASS

*Zelig v. County of Los Angeles*, 27 Ca1.4th 1112, 1118-1130 (2007). (See also UF 45)

1. <u>*Battery Fails*</u>

An officer is not similarly situated to the ordinary battery defendant and need not be treated the same, rather, he is entitled to use even greater force than might be in the same circumstances required for self-defense. *Brown v. Ransweiler*, 171 Cal.App.4th 516, 526-28 (2009). Where an Officer's actions are objectively reasonable, a California courts are deferential to the officer's need to protect himself and others. *Brown*, 171 Cal. App. 4th at 527. Like the Fourth Amendment analysis, the calculation of the amount of force requires a trier of fact to recognize that officers are often forced to make split-second judgments, in tense circumstances, concerning the amount of force required. *Id.* at 528. Here, because there is no use of force in this case, the derivative battery claim fails. (UF 52) Moreover, because, interpretating the crash as a "use of force," it was an objectively reasonable attempt to join the pursuit per *Graham* and far from conscience shocking.

2. <u>*Negligence Fails*</u>

As with their battery claim, Plaintiffs' negligence claim fails for want of unreasonable or conscience-shocking force against them. *See Hayes*, 57 Cal. 4th at 637-39. Similarly, the City cannot be vicarious liable for negligence based on these same acts. Although Plaintiffs also make mention of failures stemming from improper tactics or reasoning, Plaintiffs are foreclosed from individual recovery on these negligence theories two-fold. First, if Plaintiffs contend Officers' pre-crash and pursuit tactics were negligent, the harm they are seeking recovery for is still the passing of decedents. In this way, the harm is indivisible from the injury and harm alleged in the first and second claims and fails with both. *Id.*

Plaintiffs' negligence claim also fails as discretionary and compliant per all applicable statutes. An officer "who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested," and the "officer [shall not] be deemed an aggressor or lose





MK MANNING | KASS

his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance." Cal. Penal Code § 835(a). So long as an officer's conduct falls within the range of conduct that is reasonable, there is no requirement that he choose the most reasonable action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, to avoid liability for negligence. *Hayes*, 57 Cal. 4th at 632.

Officers have a degree of discretion as to how they choose to address a particular situation. This standard "reflects deference to the split second decisions of an officer and recognizes that, unlike private citizens, officers may use deadly force." *Lopez v. City of Los Angeles*, 196 Cal.App.4th 675, 685 (2011) "What constitutes as 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure. *Brown*, 171 Cal.App.4th at 528; see also Pen. Code, § 835a, subd. (a)(4). Further, "liability of the employer only attaches if and when it is adjudged that the employee was negligent," and, although "public entities always act through individuals, that does not convert a claim for direct negligence into one based on vicarious liability." *Munoz v. City of Union City*, 120 Cal. App. 4th, 1077, 1112-13.

3. *Bane Act Fails*

California's Bane Act allows a claim for violation of a plaintiff's state or federal civil rights when the violation is achieved through "threats, intimidation, or coercion." Cal. Civ. Code § 52.1. Plaintiff must show coercion independent from the coercion inherent in the violation of the constitutional right. *Shoyoye v. Cnty. of L.A.*, 203 Cal.App.4th 947, 959-60 (2012). Plaintiffs must prove the officer had a specific intent to violate decedent's right to be free from unreasonable seizures. *See Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018). "The Bane Act imposes an additional requirement beyond a finding of a constitutional violation." *Reese*, 888 F.3d at 1043. A plaintiff must show that an officer had a "specific intent to violate the



MANNING | KASS

arrestee's right to freedom from unreasonable seizure." *Id*.

Here, there is no evidence to establish that Defendants interfered with Plaintiffs' legal rights by the use of threats, intimidation, or coercion. Specifically, Plaintiffs have failed to prove coercion that is independent from that of which is inherent in the Fourth Amendment claim. As such, Plaintiffs cannot meet their burden and this claim must be dismissed.

**H. <u>None of Plaintiffs' Monell Claims Can Be Maintained</u>**

To do this, plaintiffs have to satisfy one of the following: (1) a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a long-standing practice or custom which constitutes the standard operating procedure of the local governmental entity; (2) the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself this constituted an act of official governmental policy; and (3) an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. Under any theory, a plaintiff must prove (1) deprivation of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

Plaintiffs suffered no constitutional harm. *See IV.A-F* Lacking a constitutional violation, Plaintiffs cannot bring a Monell claim. *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996); *see also City of Los Angeles v. Heller*, 475 U.S. at 799. Moreover, even if a constitutional violation had occurred, Plaintiffs can set forth no evidence of approval for the unconstitutional behavior, a failure to train officers, or an unconstitutional pattern and practice that would give rise to liability under *Monell*.

1. *<u>Unconstitutional Policy</u>*

For their *Monell* claim based on unconstitutional policy, Plaintiffs cannot point to a policy or practice in place which amounted to deliberate indifference to any of



MANNING | KASS

the plaintiffs' constitutional right. *City of Canton v. Harris*, 489 U.S. 378, 389-391 (1989). Nor can Plaintiffs establish that such a policy or custom was the moving force behind Officers' alleged constitutional violation. *Id.* Plaintiffs only allege that vague policies authorizing various forms of wrongful conduct or they were otherwise deficient. (UF 45, 49) Plaintiffs' "practices" and "customs" amount to little more than spurious and speculative conclusions with no support beyond the assertions themselves. Indeed, there is no specific custom, policy, or practice identified by plaintiffs as demonstrative of their spurious accusations. Rather, the undisputed facts show that policies on use of force, pursuits, aid, de-escalation, and various other relevant police practices exist and that all Officers received training thereon. (UF 41-46) The incident in this case, even if violative [which it cannot and will not as a matter of fact or law be] would not, in isolation, be capable of establishing the existence of a policy teaching, upholding, or maintaining unconstitutional behavior. *See Oyenik v. Corizon Health, Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) (noting that "one or two incidents are insufficient to establish a custom or policy")

2. <u>*Failure to Train*</u>

There is no evidence showcasing the officers lacked training. (UF 45, 50) For *Monell* liability, an alleged failure to train must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "An inadequate training policy itself cannot be inferred from a single incident." *Hyde v. City of Willcox*, 23 F.4th 863, 874 75 (9th Cir. 2022). This is a stringent standard. *Connick*, 563 U.S. at 61. Indeed, a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Nelson v. Cnty. of Sacramento*, 926 F. Supp. 2d 1159, 1169 (E.D. Cal. 2013)

There are no pieces of evidence that Plaintiffs can use to demonstrate such a pattern. The Officers received training on use of force, de-escalation, vehicle pursuits, responding to calls, and collisions. (UF 42-44) There are no gaps Plaintiffs can point



MANNING | KASS

to, let alone ones that would amount to deliberate indifference.

3. <u>*Ratification*</u>

A municipality may be held liable for a constitutional violation "if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). Plaintiffs must show that an authorized policymaker "approved a subordinate's decision and the basis for it." Alvarez v. City of Santa Ana, No. SA CV 24-516-DMG (KSX), 2025 WL 2860324, at *12 (C.D. Cal. Sept. 30, 2025) In other words, the policymaker must have "knowledge of the constitutional violation and actually approve of it." *Id.* A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Id.* Here, Plaintiffs allege ratification through various theories of failure to discipline and the potential future "in-policy" finding of Officers' actions to not be violative of policy. (UF 45, 51)

Plaintiffs must (but cannot) demonstrate that a policymaker "knew of and specifically made a deliberate choice to approve" a constitutional violation. *Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1065–66 (C.D. Cal. 2024). There must be "factual allegations about actions that policymakers took in connection with their 'approval' of the misconduct that would support an inference that they actually ratified the alleged misconduct." *Id.* This case lacks a use of force and causation, let alone a violation. Moreover, there is no evidence that a policy maker has approved of misconduct. There was no praise, no formal or informal plan, and no any mention of official decisions on Officers' conduct beyond the specter Plaintiffs' 'foresee' may occur in the future. Additionally, insofar as Plaintiffs hinge their claim internal investigations turning up no constitutional violation, this would not amount to ratification for *Monell* purposes.

As based on a "failure" to discipline Officers as a ratification by failing to act, Plaintiffs need to show "deliberate indifference to the violation of [their] federally protected rights" by pointing "to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive





MK MANNING | KASS

notice." *Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141–42 (9th Cir. 2020). Plaintiffs have failed entirely to submit any evidence of this sort.

**I. The City Is Immunized From Any And All State Law Claims Per California's Vehicle Code**

A public agency employing peace officers which adopts a written policy on vehicular pursuits complying with subdivision (c) of California ("Cal") Vehicle Code Section 17004.7 ("Cal. Veh. Code § 17004.7") is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle. Cal.Veh.Code § 17004.7(b); *see also Montes v. United States*, 37 F.3d 1347, 1349 (9th Cir. 1994).

Cal. Veh. § 17004.7 affords this general immunity to public agencies that adopt and implement appropriate vehicle pursuit policies. *Riley v. Alameda County Sheriff's Office*, 43 Cal.App.5th 492, 499 (2019) [internal quotations omitted]; *Ramirez v. City of Gardena*, 5 Cal.5th 995, 999 (2018). Specifically, subdivision (b)(1) of section 17004.7 provides that "A public agency employing peace officers that adopts and promulgates a written policy on, and provides regular and periodic training on an annual basis for, vehicular pursuits complying with subdivisions (c) and (d) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued in a motor vehicle by a peace officer employed by the public entity." Cal. Veh. Code § 17004.7(b)(1).

Here, the City adopted, promulgated, and provided annual trainings a vehicle pursuit policy. (UF 42-44) The City's policy complies with the requirements laid out in the referenced subdivisions (c) and (d). (*Id.*) Moreover, in accordance with subdivision (2) of the Cal. Vehicle Code, the City's pursuit policy required (and



MK MANNING | KASS

received) written signatures from the Officers. (*Id*.) Cal. Veh. Code § 17004.7(b)(2)

In compliance with this state statute, the City is further immunized from any liability for Plaintiffs' state law claims.

**J. <u>Punitive Damages Are Unwarranted</u>**

To obtain punitive damages the plaintiff must prove that the defendant's actions were malicious, oppressive, or in reckless disregard of the defendant's rights. *Dang v. Cross*, 422 F.3d 800, 810 (9th Cir. 2005); Ninth Circuit Model Jury Instructions 5.5 (2018). The United State Supreme Court determined that punitive damages are available in a § 1983 action only when a defendant's conduct is motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 51 (1983). Where there is no evidence that a § 1983 defendant has acted with evil intent, there is no legal right to punitive damages. *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991).

Here, there is no evidence that any officer acted with evil intent. Instead, the undisputed evidence shows that officers reasonably and lawfully gave chase to fleeing decedents who were driving in such a way that endangered the public, officers, and themselves. Then, Garcia and Bautista attempted to respond and, while attempting, decedents' vehicle collided with Garcia's patrol unit. These are not circumstances that showcase a constitutional violation or wrongful conduct, let alone evil or malicious intent towards decedents.

**V. <u>CONCLUSION</u>**

The crash that followed decedents vehicle's hundred mile per hour spin into the middle divider of Valley Road was a tragedy from which all parties sustained longstanding and irreparable injuries. However, in response to this tragedy, Plaintiffs have brought a baseless and meritless lawsuit seeking to place liability for the acts of a third party upon Officers and the City who stand similarly though not equally situated as victims of the crash. There are no facts that can support the existence of a constitutional violation or any other wrongful conduct upon on the part of Defendants.



MK MANNING | KASS

Therefore, this Court should and must dismiss Plaintiffs' complaint in its entirety.

DATED: September 15, 2026 **MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP**

By: *\/s/ Kayleigh A. Andersen*
Eugene P. Ramirez
Kayleigh A. Andersen
Eugene P. Hanrahan
Attorneys for Defendants, CITY OF FONTANA; EDWARD BAUTISTA; JESUS GARCIA; DANIEL PRECIE; BRIAN ZOZAYA

## COMPLIANCE STATEMENT REGARDING LOCAL RULE 11-6.2

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,995 words, which complies with Local Rule 11-6.1.

DATED: September 7, 2026 **MANNING & KASS ELLROD, RAMIREZ, TRESTER LLP**

By: */s/ Kayleigh A. Andersen*
Kayleigh A. Andersen



MANNING | KASS