**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**SHOJAI LAW FIRM**
Neema Shojai, Esq. (SBN 321833)
neema@shojaifirm.com
8880 Rio San Diego, Suite 800
San Diego, California 92108
Telephone: (619) 777-0383
Facsimile: (619) 775-1383

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DIANA RIAS; TA-TANESHA GALBURTH; DOMINIC ADAMS Sr.; and BRITTANY MASON,

Plaintiffs,

vs.

CITY OF FONTANA; EDWARD BAUTISTA; JESUS GARCIA; DANIEL PRECIE; BRIAN ZOZAYA; and DOES 1-10, inclusive,

Defendants.

Case No. 5:25-cv-00207-JGB-`ACCV

[*Honorable Jesus G. Bernal*]
Magistrate Judge Angela C. C. Viramontes

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

[Plaintiffs' Opposition to Defendants' Motion for Summary Judgment; Memorandum of Points and Authorities in support thereof; Separate Statement of Genuine Disputes and Additional Material Facts; Objections to Defendants' Separate Statement; Decl. of Marcel F. Sincich and attached exhibits; Decl. of Roger Clark; Decl. of Felix Lee; *filed concurrently herewith*]

Hearing: October 19, 2026
Time: 09:00 a.m.
Crtrm: Courtroom 1
Trial Date: December 1, 2026

# TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. STATEMENT OF RELEVANT FACTS .......... 2

A. Zozaya's Reckless Pursuit .......... 2

B. Garcia's Excessive Deadly Force Vehicle Collision .......... 4

III. LEGAL STANDARD UNDER RULE 56 .......... 7

IV. PLAINTIFFS' FEDERAL CLAIMS SURVIVE .......... 8

A. Garcia Seized Passengers by Intentionally Causing The Collision .......... 8

B. Garcia's Collision Was Unreasonable Deadly Force .......... 10

C. Garcia Acted With Deliberate Indifference .......... 12

D. Plaintiffs' Federal Claims Against Zozaya Survive .......... 14

E. It Was Obvious and Clearly Established That Ramming the Nissan that is Not Posing a Deadly Threat, Is Excessive .......... 16

V. PLAINTIFFS' MUNICIPAL LIABILITY CLAIMS MUST SURVIVE .......... 19

VI. PLAINTIFFS' STATE LAW CLAIMS SURVIVE .......... 21

A. Battery, Negligence, and Bane Act Survive .......... 21

B. State Law Immunities Do Not Apply .......... 23

VII. PUNITIVE DAMAGES IS WARRANTED AGAINST GARCIA .......... 25

VIII. CONCLUSION .......... 25

# TABLE OF AUTHORITIES

Cases

*A.K.H. ex rel. Landeros v. City of Tustin*,
837 F.3d 1005 (9th Cir. 2016)....................11

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970)....................8

*Aguirre v. County of Riverside*,
29 F.4th 624 (9th Cir. 2022)....................16

*Alcala v. City of Corcoran*,
147 Cal. App. 4th 666 (2007)....................24

*Anderson v. Creighton*,
483 U.S. 635 (1987)....................7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................7

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)....................16

*Blankenhorn v. City of Orange*,
485 F.3d 463 n.12 (9th Cir. 2007)....................10, 15

*Brandon v. Holt*,
469 U.S. 464 (1985)....................20

*Browder v. City of Albuquerque*,
787 F.3d 1076 (10th Cir. 2015)....................13

*Brower v. County of Inyo*,
489 U.S. 593 (1989)....................8, 9, 18

*Brummett v. Cnty. of Sacramento*,
21 Cal. 3d 880 (1978)....................24

*Bryan v. MacPherson*,
630 F.3d 805 (9th Cir. 2010)....................10, 11

*Buckner v. Kilgore*,
36 F.3d 536 (6th Cir. 1994)....................18, 19

*Campos v. City of Merced*,
709 F. Supp. 2d 944 (E.D. Cal. 2010)....................25

*Cedar Creek Oil & Gas Co. v. Fid. Gas Co.*,
249 F.2d 277 (9th Cir. 1957)....................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................7

*Chew v. Gates*,
27 F.3d 1432 (9th Cir. 1994) .......... 11

*City of Canton, Ohio v. Harris*,
489 U.S. 378 (1989) .......... 21

*City of Springfield v. Kibbe*,
480 U.S. 257 (1987) .......... 17

*Connick v. Thompson*,
563 U.S. 51 (2011) .......... 21

*Corbera v. Taylor*,
No. 22:1-cv-01998-WBS-KJN, 2022 WL 17741089, at *5 (E.D. Cal. Dec. 16, 2022) .......... 13, 14

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) .......... 10, 15

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009) .......... 21, 22

*Craighead v. Lee*,
399 F.3d 954 (8th Cir. 2005) .......... 16

*Dean v. McKinney*,
976 F.3d 407 (4th Cir. 2020) .......... 13

*Drummond v. City of Anaheim*,
343 F.3d 1052 (9th Cir. 2003) .......... 11, 17

*Egan v. Mut. of Omaha Ins. Co.*,
24 Cal. 3d 809 (1979) .......... 25

*Est. of Soakai v. Abdelaziz*,
137 F.4th 969 (9th Cir. 2025) .......... 15, 16

*Flores v. City of San Diego*,
83 Cal. App. 5th 360 (2022) .......... 23

*Flores v. City of South Bend*,
997 F.3d 725 (7th Cir. 2021) .......... 13

*Garcia v. Island County*,
2022 WL 4017491, at *4 (W.D. Wash. Sept. 2, 2022) .......... 10

*Garmon v. City of Los Angeles*,
828 F.3d 837 (9th Cir. 2016) .......... 21

*Glenn v. Washington County*,
673 F.3d 864 (9th Cir. 2011) .......... 8, 11

*Hawkins v. City of Farmington*,
189 F.3d 695 (8th Cir. 1999) .......... 18, 19

*Hayes v. County of San Diego*,
736 F.3d 1223 (9th Cir. 2013) ........ 13

*Herrera v. Las Vegas Metro. Police Dept.*,
298 F. Supp. 2d 1043 (D. Nev. 2004) ........ 25

*Hervey v. Estes*,
65 F.3d 784 (9th Cir. 1995) ........ 20

*Hibbs v. Dep't of Hum. Res.*,
273 F.3d 844 (9th Cir. 2001) ........ 19, 22

*Hope v. Pelzer*,
536 U.S. 730 (2002) ........ 16

*Hughes v. Rodriguez*,
31 F.4th 1211 (9th Cir. 2022) ........ 22

*Isayeva v. Sacramento Sheriff's Dep't*,
872 F.3d 938 (9th Cir. 2017) ........ 11

*Johnson v. Bay Area Rapid Transit Dist.*,
724 F.3d 1159 (9th Cir. 2013) ........ 22

*Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*,
841 F.2d 872 (9th Cir. 1987) ........ 8

*Latits v. Phillips*,
878 F.3d 541 (6th Cir. 2017) ........ 19

*Long v. County of Los Angeles*,
442 F.3d 1178 (9th Cir. 2006) ........ 21

*Marroquin v. Unidentified LAPD Officer*,
2022 WL 18278405, at *3, Fn.3 (C.D. Cal. Dec. 15, 2022) ........ 10

*McGee v. City of Laguna Beach*,
56 Cal. App. 4th 537 (1997) ........ 24

*McGowan v. County of Kern*,
No. 1:15-cv-01365 KJM SKO, 2016 WL 159232, at *5 (E.D. Cal. Jan. 13, 2016) ........ 14

*Merritt v. City of Los Angeles*,
875 F.2d 765 (9th Cir. 1989) ........ 21

*Monell v. Department of Social Servs.*,
436 U.S. 658 (1978) ........ 19

*Munoz v. City of Union City*,
120 Cal.App.4th 1077 (2004) ........ 22

*Nelson v. City of Davis*,
685 F.3d 867 (9th Cir. 2012) ........ 8

*Nguyen v. City of Westminster*,
103 Cal. App. 4th 1161 (2002) .......... 24

*Nicholson v. City of Los Angeles*,
935 F.3d 685 (9th Cir. 2019) .......... 15

*Orn v. City of Tacoma*,
949 F.3d 1167 (9th Cir. 2020) .......... 16

*Pearson v. Callahan*,
555 U.S. 223 (2009) .......... 16

*Peck v. Montoya*,
51 F.4th 877 (9th Cir. 2022) .......... 14

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) .......... 21

*Plumhoff v. Rickard*,
572 U.S. 765 (2014) .......... 18

*Porter v. Osborn*,
546 F.3d 1131 (9th Cir. 2008) .......... 13

*Ramirez v. City of Gardena*,
14 Cal. App. 5th 811 (2017) .......... 23

*Ramirez v. City of Gardena*,
5 Cal. 5th 995 (2018) .......... 23

*Reese v. Cnty. of Sacramento*,
888 F.3d 1030 (9th Cir. 2018) .......... 22

*Reynaga Hernandez v. Skinner*,
969 F.3d 930 (9th Cir. 2020) .......... 14

*S.R. Nehad v. Browder*,
929 F.3d 1125 (9th Cir. 2019) .......... 8, 11

*Sabbe v. Washington County Board of Commissioners*,
84 F.4th 807 (9th Cir. 2023) .......... 18

*Sanderlin v. Panighetti*,
116 F.4th 905 (9th Cir. 2024) .......... 9

*Santos v. Gates*,
287 F.3d 846 (9th Cir. 2002) .......... 10

*Saucier v. Katz*,
533 U.S. 194 (2001) .......... 16

*Scott v. Harris*,
550 U.S. 372 (2007) .......... 8, 10, 18

*Seidner v. de Vries*,
39 F.4th 591 (9th Cir. 2022) ........ 17

*Sluman v. State*,
3 Wash. App. 2d 656 (2018) ........ 19

*Smith v. City of Hemet*,
394 F.3d 689 (9th Cir. 2005) ........ 10, 11, 17

*Spencer v. Pew*,
117 F.4th 1130 (9th Cir. 2024) ........ 15

*Stearney v. United States*,
392 F. Supp. 3d 1037 (D. Ariz. 2019) ........ 15

*Tabares v. City of Huntington Beach*,
988 F.3d 1119 (9th Cir. 2021) ........ 11, 22

*Tennessee v. Garner*,
471 U.S. 1 (1985) ........ 11

*Tennison v. City and Cnty. of San Francisco*,
570 F.3d 1078 (9th Cir. 2009) ........ 12

*Velazquez v. City of Long Beach*,
793 F.3d 1010 (9th Cir. 2015) ........ 10

*Venegas v. County of L.A.*,
153 Cal. App. 4th 1230 (2007) ........ 21

*Ventress v. Japan Airlines*,
747 F.3d 716 (9th Cir. 2014) ........ 20, 23

*Villalobos v. City of San Maria*,
85 Cal. App. 5th 383 (2022) ........ 22

*Villanueva v. California*,
986 F.3d 1158 (9th Cir. 2021) ........ 10, 12

*Villegas v. Cortesluna*,
595 U.S. 1 (2021) ........ 17

*Vos v. City of Newport Beach*,
892 F.3d 1024 (9th Cir. 2018) ........ 8

*Waggy v. Spokane Cty.*,
594 F.3d 707 (9th Cir. 2010) ........ 21

*Walker v. Davis*,
649 F.3d 502 (6th Cir. 2011) ........ 19

*Wilkins v. City of Oakland*,
350 F.3d 949 (9th Cir. 2003) ........ 7

*Wrotten v. USAA General Indemnity Company*,
535 F. Supp. 3d 880 (D. Alaska 2021).......................................19, 22

Statutes

42 U.S.C. § 1983.......................................11
Pen. Code §835a.......................................22
Penal Code §13519.8.......................................23
Federal Rules of Civil Procedure, Rule 56.......................................2, 7, 19, 22

Other Authorities

CACI No. 1305B.......................................22
Veh. Code §17004.7(b)(1).......................................24
Vehicle Code Section 21055.......................................24

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This civil rights and state tort action arises from the reckless initiation of a vehicle pursuit by Fontana Police Department Officer Brian Zozaya merely for 16-year-old Giovanni Bonilla's failure to yield when being pulled over for minor traffic infractions—unrestrained passenger and failure to signal when changing lanes. Zozaya knew the roads were wet, suspected the juvenile to be unrestrained and in an unsafe seated position for a high-speed pursuit, knew it was dark that night limiting visibility, knew a high-speed pursuit is inherently dangerous, and knew the need for apprehension for an infraction is extremely low. Nevertheless, Zozaya initiated the pursuit and failed to terminate it even after it quickly exceeded speeds over 80 mph on a 45-mph street. There were three passengers in Bonilla's white Nissan Sentra—Robert Rias, Dominic Adams Jr., and Omari Pitts—each no more than 15 years old.

Fontana Officer Jesus Garcia was staged east of the pursuit which continued eastbound on Valley. Garcia knew the pursuit was high-speed, knew where it started and progressively which streets it was quickly passing, and knew the pursuit was approaching Cypress, the nearest cross-street to his location. No one asked Garcia to respond and Garcia neither requested to respond nor announced he was responding despite knowing there was already a secondary vehicle, a sergeant, and air support en route. Still, Garcia stealthy approached the apron of the parking lot driveway, failed to fully stop, failed to properly clear the road, failed to activate his overhead lights and siren, failed to yield-the-right of way, and failed to signal his intention to turn. Garcia looked left from the apron, saw Nissan headlights in Lane 1, said, "Fuck, there they are," intentionally kept his headlights off to remain inconspicuous, intentionally took his foot off the brake, intentionally gunned it, depressing the accelerator 100%, and manipulated the steering wheel precisely to T-bone the Nissan with his SUV.

Garcia's violent pursuit interception and vehicle impact killed the three passenger boys and seriously injured Bonilla and his own partner.

Now Defendants' move for summary judgment in blatant disregard of Rule 56's requirement that there be no disputed issues of material fact and that the record must be viewed in the light most favorable to the nonmoving party. Here, video evidence and EDR data contradicts Defendants' position, supports Plaintiffs' claims, and shows **significant material disputes** including whether: Zozaya should not have initiated the pursuit; Zozaya should have terminated the pursuit; Zozaya had reasonable alternatives; Zozaya and his partner should have communicated more information over the radio; Garcia should have stayed in the parking lot; Garcia should have stopped at the apron, cleared the intersection, used a signal, used headlights, overheard lights and siren, and yield the right-of-way; Garcia intentionally drove the front of his SUV directly into the side of the Nissan; Garcia failed to drive with due regard; and Zozaya and Garcia should have been reprimanded if not terminated. It is undisputed that the Nissan was not an immediate threat of death or serious bodily injury; that deadly force was not authorized; Garcia violated several policies and Vehicle Codes; and three young boys died as a result of this horrific collision. For these reasons and as set forth below, Defendants' Motion should be denied.

## II. STATEMENT OF RELEVANT FACTS

### A. Zozaya's Reckless Pursuit

This fatal vehicle collision occurred on February 3, 2024, at approximately 10:44 p.m. (Plaintiffs' Undisputed Facts ("PUF") 1.) Despite some illumination, it was dark at the time and roads were wet from light rain, but traffic was light and with no pedestrians around. (PUF 2-3.) The subject vehicle was a white Nissan with 16-year-old Giovanni Bonilla (driver), 15-year-old Robert Rias (front passenger), 15-year-old Dominic Adams Jr. (right-rear passenger), and 14-year-old Omari Pitts (left-rear passenger). (PUF 4.) Zozaya had one year and two months experience as a police officer, while Precie had only 6 months and was still on probation. (PUF 5.) Zozaya, the driver, was responsible for radio transmissions. (PUF 6.) The Nissan was

eastbound on Valley passing Cherry with Zozaya's vehicle westbound on Valley at Cherry when the officers saw the Nissan passing, and Zozaya flashed his spotlight, then made a U-turn and speed forward to follow the Nissan. (PUF 7.) However, the officers' stories deviate from objective video evidence claiming no use of a spotlight and they were directly behind the Nissan at Catawba when first seeing it. (PUF 8.)

Bonilla drove safely and within the speed limit at the time. (PUF 9.) Because it was so dark, the only information Zozaya knew was that a teenage male passenger was unrestrained, so they decided to initiate a stop. (PUF 10-12.) Zozaya activated his emergency lights and sirens eastbound on Valley around Catawba for an unrestrained passenger and failure to signal a lane change—minor, non-arrestable, infractions. (PUF 13-14.) However, Bonilla fled and Zozaya immediately initiated the pursuit while the juvenile was still believed to be unrestrained. (PUF 15.)

Zozaya had several options pursuant to policy and the balancing test to enhance safety, minimize danger, and encourage self-termination. (PUF 16-25.) But Zozaya failed to balance pursuit risks with the risks of not immediately apprehending the suspect and wrongfully initiated a vehicle pursuit. (PUF 26.) As soon as the Nissan took off, Zozaya broadcasted the pursuit, which remained in Lane 1. (PUF 27-28.) Zozaya kept pace as the pursuit quickly increased to unsafe speeds over 80 mph, did not communicate with any officer or supervisor, and never asked for assistance. (PUF 29-30.) Despite training to call for air support, Zozaya failed to do so. (PUF 31.) Nevertheless, he knew that backup and air support were en route. (PUF 32.) Throughout the pursuit, no bystanders were endangered, but Zozaya failed to balance the risks to the passengers and should have terminated the pursuit. (PUF 33-34.) Zozaya never got the license plate and never put out the reason for the stop despite the importance of updating officers and dispatch. (PUF 35-36.) Still, Zozaya broadcasted the pursuit was on Valley passing Catawba; trying to get a plate; was "Eastbound Valley, passing Oleander"; was high-speed; traffic light; "Coming up to Cypress"; and "Eagle 1 launching." (PUF 37.) Only Zozaya's vehicle was in the

pursuit, lasting approximately 23 seconds for 0.65 miles. (PUF 38.)

**B. Garcia's Excessive Deadly Force Vehicle Collision**

Officers Garcia and Terwilliger's unit was at the northeast corner of a thrift store parking lot, at the southeast corner of Valley and Cypress, with Officer Baustista's unit. (PUF 39.) As the driver of the Interceptor SUV, Garcia knew from the radio that there was a highspeed pursuit initiated eastbound on Valley and Catawba of a white sedan, traffic was light, air support responding, and that it progressed towards his direction "passing Oleander," and "Coming up to Cypress." (PUF 40-41.) It was approximately 31 seconds from Zozaya's first broadcast, and approximately 8 seconds from Zozaya broadcasting "Coming up to Cypress," to broadcasting Garcia's collision with the Nissan. (PUF 42-43.) Cypress is approximately 3/4 mile from Catawba and 1/4 mile from Oleander. (PUF 44.) Garcia had no information that the Nissan was in any collision or ever harmed or threatened anyone, and no information about the occupants of the Nissan. (PUF 45-46.) Garcia assumed the pullover was for a minor traffic violation. (PUF 47.) According to policy, vehicle pursuits are limited to a primary, secondary, and supervisor vehicle unless more are requested. (PUF 48.) Bautista and the Sergeant were en route, and no officer requested Garcia to join, nor did Garcia request to join. (PUF 49-50.) Garcia knew one option was to just wait in the parking lot and remain in his assigned area unless directed by a supervisor, and another option was to "Parallel" the pursuit out of the way on side streets. (PUF 51-53.)

Nevertheless, within a few seconds of receiving the initial broadcast, Garcia intentionally responded without informing dispatch, supervisors, or Zozaya. (PUF 54.) Garcia drove north to the apron of the driveway intending to apprehend the Nissan by responding to the area it was going. (PUF 55.) First, Bautista drove north to the apron, stopped, cleared the intersection, yielded the right-of-way to a passing truck, then turned left onto westbound Valley when it was safe to do so. (PUF 56.) After Bautista was on westbound Valley, Garcia slowed to the apron but did not

come to a full stop. (PUF 57-58.) When Garcia was at the apron, the Nissan entered the Valley/Cypress intersection and Bautista activated his emergency lights. (PUF 59-60.) Garcia was still at the apron when the Nissan passed the east Cypress crosswalk in Lane 1. (PUF 61.) To clear an intersection, an officer must check if any cars are immediately preventing a turn. (PUF 62.) At the apron, seconds before the collision, Garcia looked down the straight flat road and responded to seeing Nissan headlights in Lane 1—"Fuck, there they are." (PUF 63-64.)

Garcia intentionally disengaged the brakes, intentionally engaged the accelerator, and intentionally depressed it 100% as he charged from the apron, 5.2 to 23.9 mph, and with an engine rpm from 812 to 4,788. (PUF 66.) Garcia did not make any effort to avoid the collision. (PUF 67.) Instead, Garcia initiated a left turn and then disengaged from it into a straight path of travel, quickly adjusting the steering wheel until he collided the front end of his SUV with the right passenger side of the Nissan. (PUF 68.) Garcia's SUV was oriented north and Bonilla's Nissan oriented east at the time of the impact in Lane 1 of eastbound Valley. (PUF 69-70.) Garcia's larger and heavier SUV collided so violently into the Nissan it collapsed the passenger compartment intruding into the vehicle and into the two boys sitting on the passenger side, then propelled the Nissan into two parked vehicles. (PUF 71.) Later, no officer attempted to render medical aid, assess, or even check the pulse of the three boys, who eventually died. (PUF 72.) Garcia's collision also caused Terwilliger serious injury, requiring medical leave before medical retirement. (PUF 73.)

Garcia drove recklessly, without due regard, in violation of basic officer training, policy, and the Rules of the Road. (PUF 74.) Garcia was in control of his SUV and required to follow the Vehicle Code unless responding with lights and sirens. (PUF 75-76.) Activating emergency lights makes the patrol vehicle more visible but Garcia failed to activate his lights and siren. (PUF 77-78.) Using a blinker communicates the driver's intent and direction of movement helping other drivers assess whether they need to slow down or move, but Gracia failed to signal—an

unsafe Vehicle Code violation. (PUF 79-81.) Garcia failed to come to a complete stop—also a Vehicle Code violation. (PUF 82.) Garcia failed to wear a seatbelt and failed to ensure Terwilliger was wearing a seatbelt—Vehicle Code and policy violation. (PUF 83-84.) The Code and policy require officers to drive with due regard for the safety of others, avoid collisions and not pose a danger to others. (PUF 85.) Due regard includes assessing weather conditions and having a larger safety cushion when roads are wet and at night when visibility is lower. (PUF 86-87.) Defensive driving, pursuant to policy and training, requires officers to maintain a safe space and to maintain a high visual horizon into the distance. (PUF 88.) Garcia admits that when an officer does not comply with safety and defensive driving rules, it could lead to a collision. (PUF 89.) Further, making an unsafe left turn into oncoming traffic would be a violation of the Vehicle Code. (PUF 90.) Officers must determine if it is safe to turn without causing a disruption in traffic or collision, being aware of their surroundings and looking out for dangers well ahead including for the actions of other drives on the road. (PUF 91-92.) It was Garcia's responsibility to manage the space between his SUV and the Nissan in consideration of the speed because it would be unsafe to turn without giving Bonilla sufficient warning. (PUF 93-95.)

Generally, if it is not safe to turn, the driver must yield the right-of-way. (PUF 96.) The Nissan had the right-of-way, but Garcia failed to yield, which is another violation of the Vehicle Code and policy. (PUF 97-98.) Officers are required to have their headlights on while in a moving vehicle at night to provide visibility of the road and other vehicles, and visibility of their vehicle to other drivers. (PUF 99-100.) The only time officers are permitted to drive at night without headlights is when there is a safety concern or when trying to be "more inconspicuous." (PUF 101.) There was no safety concern that would indicate a need to drive without headlights here. (PUF 102.) Garcia's headlights were off to "blackout" the SUV to make him less visible and more inconspicuous. (PUF 103.) It is dangerous to drive at night without headlights, and it could cause a collision because the vehicle would be difficult to

see. (PUF 104.) If Garcia's headlights were activated, it would give Bonilla a chance to brake at a greater distance. (PUF 105.) But Garcia failed to use headlights, making him difficult to see in conjunction with Bautista's blinding lights. (PUF 106-107.)

Intentionally using a police SUV to collide with the Nissan is use of deadly force and requires approval of a supervisor. (PUF 108.) These deadly maneuvers are so dangerous they should only be used when all other reasonable alternatives have been exhausted or reasonably appear ineffective before use. (PUF 109-110.) Deadly force is not authorized merely because a vehicle is fleeing but may only be used when necessary in defense of life. (PUF 111.) Garcia's use of deadly force was objectively unreasonable pursuant to training and policy because the Nissan was not an imminent threat of death or serious bodily injury, had not harmed or threatened to harm anyone, and was suspected of only minor traffic violations. (PUF 112.)

## III. LEGAL STANDARD UNDER RULE 56

Defendants failed to show there is no genuine issue of material fact. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court's function is not to weigh evidence, make credibility determinations, or determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if its proof or disproof is essential to an element of Plaintiffs' case. *Celotex*, 477 U.S. at 322-23. A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Even circumstantial evidence is sufficient to create a triable issue. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). Further, the reasonableness of an officer's belief "is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law.'" *Brosseau v. Haugen*, 543 U.S. 194, 206 (2004) (Stevens J., dissenting); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003). In ruling here, the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to Plaintiffs, which here is all supported by

video evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018); *see also Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

Disputed facts preclude Defendants' Motion. Though a jury could draw divergent conclusions from videos, (*see S.R. Nehad v. Browder*, 929 F.3d 1125, 1132-39 (9th Cir. 2019); *Glenn v. Washington County*, 673 F.3d 864, 878 (9th Cir. 2011)), here, the undisputed video evidence does not show Bonilla conduct an unsafe lane change or an unrestrained passenger hanging from a window; but it does show Garcia intentionally pulling from the apron directly into the Nissan killing three boys, sufficient for the Court to *sua sponte* enter judgment for Plaintiffs.

## IV. PLAINTIFFS' FEDERAL CLAIMS SURVIVE

### A. Garcia Seized Passengers by Intentionally Causing The Collision

Garcia intended to crash into the Nissan knowing he could kill or seriously injury the occupants. Garcia does not recall if he was intending to conduct a pursuit intervention technique. (DUF 27.) A jury could reasonably infer that he did, and the Court must conclude that Garcia acted intentionally on this dispositive motion. Garcia's "intention may be proved by circumstantial evidence." *Cedar Creek Oil & Gas Co. v. Fid. Gas Co.*, 249 F.2d 277, 283 (9th Cir. 1957). "A person acts 'intentionally' when the person acts with a conscious objective to engage in particular conduct." (Ninth Cir. Mod. Jury Inst. No. 9.22.) "The intentionality requirement is satisfied when the 'termination of freedom of movement occurs *through means intentionally applied*.'" *Nelson v. City of Davis*, 685 F.3d 867, 876 (9th Cir. 2012) (citing *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989)). "For an act to be unintentional, the governmental conduct must lack the element of volition." *Id.* The *Nelson* Court concluded that even if the outcome was not desired, the intentional conduct in connection with the apprehension was an intentional seizure under the Fourth Amendment. *Id*. at 877. Garcia's subjective intent is irrelevant; at issue is his

objectively-viewed manifested intent. *Sanderlin v. Panighetti*, 116 F.4th 905, 912 (9th Cir. 2024).

Viewing the facts in the light most favorable to Plaintiffs, the Court must find: Garcia knew the highspeed pursuit of a white sedan was eastbound on Valley at Catawba, moving progressively closer, passing Oleander, and coming up to Cypress. (PUF 41.) Garcia immediately responded in secret and drove north to the apron intending to apprehend the Nissan. (PUF 54-55.) Garcia slowed but intentionally did not come to a full stop at the apron and intentionally looked left and saw the Nissan. (PUF 57-58, 63-64.) Then, Garcia intentionally disengaged the brakes, intentionally engaged the accelerator, and intentionally depressed 100% as he charged from the apron directly at the Nissan making no effort to avoid collision. (PUF 66-67.) Instead, Garcia straightened his trajectory, intentionally crashing the front end of his SUV into the right passenger side of the Nissan. (PUF 68.) Additional evidence of Garcia's intentional collision is his intentional failure to use lights and sirens to illuminate himself (PUF 75-78), intentional failure to use a blinker to warn his maneuver (PUF 79-81), intentional failure to come to a stop (PUF 82), intentional failure to keeping a large safety cushion (PUF 86-87), and intentional failure to yield the right-of-way (PUF 88, 91-98). Most egregiously, Garcia intentionally kept his headlights off at night to make himself less visible and more inconspicuous knowing that the Nissan would be less likely to see him and avoid his intentional collision. (PUF 99-104.)

This collision, *intentionally* caused by Garcia, is a seizure of every occupant in the vehicle. It is "enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Brower*, 489 U.S. at 599. Here, Garcia used his SUV as an impact-weapon when he rammed into it. *Brower* also expressly contemplates that a vehicle may be positioned to affect an unreasonable deadly-force seizure, describing the unreasonableness alleged there as "consist[ing] precisely of setting up the roadblock in such manner as to be likely to kill him." *Id.* at 599. Garcia made a series of intentional decisions to place his SUV in

the lane occupied by the Nissan where any reasonable officer would know it would likely kill the passengers of a vehicle moving at high speeds.

Defendants are mistaken in their reliance on *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). *Lewis* explained that no seizure occurs where the officer "accidentally stopped the suspect by crashing into him." *Id.* The *Lewis* limitation is narrowly applied only to unintentional conduct, and the Ninth Circuit has drawn the line explicitly. "Conversely, if the officer had intentionally collided with the motorcycle to stop it, the injured passenger would also have been seized." *Villanueva v. California*, 986 F.3d 1158, 1167 (9th Cir. 2021). District courts have applied that sentence to precisely this fact pattern. *See Garcia v. Island County*, 2022 WL 4017491, at *4 (W.D. Wash. Sept. 2, 2022) ("*Villanueva* stands for the proposition that, in intentionally (as opposed to accidentally) stopping the vehicle, officers seized both the driver and the passenger"); *Marroquin v. Unidentified LAPD Officer*, 2022 WL 18278405, at *3, Fn.3 (C.D. Cal. Dec. 15, 2022). Garcia intentionally collided his SUV into the Nissan. Thus, there was a seizure.

**B. Garcia's Collision Was Unreasonable Deadly Force**

The analysis of Garcia's use of excessive force is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *See Graham v. Connor*, 490 U.S. 386, 395-97 (1989). The *Graham* test applies "the clear principle that the force used to make an arrest must be balanced against the need for force." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (*citing Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007)). It is a careful balance of "the nature of the harm and quality of the intrusion" on decedents' rights "against the countervailing governmental interests at stake." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010); *see also Scott*, 550 U.S. at 383-84; *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002). This inquiry begins by assessing the type and amount of force used. *See Bryan*, 630 F.3d at 824; *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)

(quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)). It is well-established that deadly force is "extreme," and should only be used in limited circumstances. *Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016). "The use of deadly force implicates the highest level of Fourth Amendment interests both because the suspect has a fundamental interest in his own life and because such force frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment." *Id.* (citations omitted). The nature and quality of the intrusion here cannot be understated; Garcia used deadly force—ramming his SUV into the Nissan.

Use of deadly force must be balanced against the purported need for it. *See Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017); *see also Glenn*, 673 F.3d at 871; *Bryan*, 630 F.3d at 823. The government interest factors include (1) the severity of crime, (2) the immediacy of the specific threat, (3) whether there is attempt to evade (*Graham*, 490 U.S. at 396), and (4) the availability of alternative methods (*Smith*, 394 F.3d at 701)). The Ninth Circuit has cautioned that summary judgment in excessive force cases should be granted sparingly. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003). Further, "summary judgment is not appropriate in §1983 deadly force cases that turn on the officer's credibility that is genuinely in doubt." *Nehad*, 929 F.3d at 1133. The most important *Graham* factor is whether it was necessary to prevent an immediate threat of death or serious physical injury. *Tennessee v. Garner*, 471 U.S. 1, 3 (1985); *Smith*, 394 F.3d at 702; *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1126 (9th Cir. 2021). Here, Garcia's deadly collision was simply unnecessary.

Viewing the facts and all reasonable inferences in the light most favorable to Plaintiffs, the Nissan did not pose an immediate threat of death or serious bodily injury to any person at the time of the collision. Intentionally using a police SUV to collide with the Nissan is use of deadly force and requires approval of a supervisor and exhaustion of all reasonable alternatives. (PUF 108-110.) Deadly force is not authorized merely because a vehicle is fleeing and may only be used when necessary

in defense of life. (PUF 111.) Garcia's use of deadly force was objectively unreasonable because the Nissan was not an imminent threat of death or serious bodily injury, had not harmed or threatened to harm anyone, and was suspected of only minor traffic violations. (PUF 33-34, 112.) Garcia had no information that the Nissan was in any collision, no information about the occupants, and had no information that they ever injured or threatened anybody. (PUF 45-46.) A moving vehicle can only pose a threat of serious physical harm "if someone is at risk of being struck by it." *Villanueva v. California*, 986 F.3d 1158, 1170 (9th Cir. 2021) (citation omitted). No one was about to be struck by the Nissan here.

This incident started with mere suspicion of minor, non-arrestable, traffic infractions. (PUF 13-14.) Still, it is disputed whether any juvenile was hanging out of the window and disputed that there was ever a failure to signal, as it is not on any video. (DUF 4-7.) A jury could find that officers saw a group of boys passing them at night and went for the stop without reasonable suspicion. Still, there were several alternatives, including: not initiating a pursuit (PUF 26); terminating the pursuit (PUF 33-34); using alternative pursuit methods (PUF 16); and using the license plate readers to apprehend later (PUF 24). Garcia could have waited in the parking lot, could have remained put awaiting supervisor direction, or "Parallel" the pursuit out of the way on side streets. (PUF 51-53.) These factors weigh heavily in favor of Plaintiffs. Thus, the Court should deny Defendants Motion.

### C. Garcia Acted With Deliberate Indifference

When the evidence is viewed in the most favorable light to Plaintiffs, the use of excessive force here shocks the conscious in violation of the Fourteenth Amendment. *See Tennison v. City and Cnty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009). The deliberate indifference standard applies when the officer has time to deliberate and would satisfy a due process violation that "shocks the conscience." *Id*. The Court indicated that the standard higher only applies in situations "that escalate so quickly that the officer must make a snap judgment."

*Porter v. Osborn*, 546 F.3d 1131, 1137-40 (9th Cir. 2008) (collecting cases). However, the "snap judgment" to use deadly force must be a reaction to an unforeseen escalation by the subject. *Hayes v. County of San Diego*, 736 F.3d 1223, 1230 (9th Cir. 2013). This is not the case here where Garcia knew the vehicle was coming in his direction for approximately 30 seconds, he had to drive up to the apron then assess where the Nissan was, then choose to slam the accelerator and aim his SUV in the direction of the Nissan. Garcia was not in the pursuit. Deliberation was practical. Garcia indeed deliberated and acted on his intent to harm. Nevertheless, Plaintiffs succeed under either standard. Garcia's conduct shocks the conscious when he deliberately violated several policies, training guidelines and Vehicle Codes to stealthily approach and ram his SUV into the side of a vehicle that was not endangering anyone, occupied by 4 kids, 3 of which died because of Garcia.

Garcia drove his SUV Interceptor with reckless disregard for the life and safety of these three boys. "[T]he deliberate indifference standard applies to substantive due process claims premised on a police officer's driving in a non-emergency, non-pursuit context." *Corbera v. Taylor*, No. 22:1-cv-01998-WBS-KJN, 2022 WL 17741089, at *5 (E.D. Cal. Dec. 16, 2022). Like in *Corbera*, Garcia was responding as backup to minor crimes, violated the Vehicle Code several times without lights or siren, and killed a passenger in an oncoming car. Similarly, Garcia was not involved in a high-speed pursuit – "it is not the underlying reason for the chase that matters, but rather the fact that the officer is engaging in a chase at all"; and "the instant case involves a police officer merely driving, not engaging in a car chase." *Id*. at *4.

*Corbera* relies on supporting circuit authority which is also persuasive: *Browder v. City of Albuquerque*, 787 F.3d 1076, 1080-82 (10th Cir. 2015) (Gorsuch, J.) (deliberate indifference applies where officer had adequate time to deliberate); *Flores v. City of South Bend*, 997 F.3d 725, 729-34 (7th Cir. 2021) (unjustifiably dangerous driving may establish liability when officer had time to appreciate the effects of their actions); *Dean v. McKinney*, 976 F.3d 407, 412-16 (4th Cir. 2020)

("ample time to consider" the officer's actions). *Corbera* has been followed in several other cases. *See also McGowan v. County of Kern*, No. 1:15-cv-01365 KJM SKO, 2016 WL 159232, at *5 (E.D. Cal. Jan. 13, 2016) (if officer "faced no true emergency and so had a practical opportunity to consider slowing [] and checking for other traffic," the substantive due process standard is "deliberate indifference").

Garcia drove with reckless disregard, in violation of basic officer training, policy, and the Rules of the Road. (PUF 74.) Garcia failed to use lights and sirens knowing they make him more visible. (PUF 75-78.) Garcia failed to signal prior to turning knowing it would fail to warn other drivers. (PUF 79-81.) Garcia failed to come to a complete stop. (PUF 82.) Garcia failed to wear a seatbelt and failed to ensure Terwilliger was wearing a seatbelt. (PUF 83-84.) Garcia failed to drive with due regard for the safety of others by avoiding collision. (PUF 85.) Garcia failed to maintain a larger space cushion given the weather and visibility. (PUF 86-87.) Garcia failed to clear the road for a safe turn. (PUF 91-92.) Garcia failed to give the Nissan warning in consideration of its speed. (PUF 93-95.) Garcia failed to yield the right-of-way. (PUF 96-98.) And Garcia failed to use headlights while driving at night in apprehension of a highspeed pursuit knowing it would make him less visible for the Nissan to avoid his collision. (PUF 99-105.) Garcia's large SUV collided so violently into the Nissan it collapsed the passenger compartment intruding into the vehicle, impacting and killing the boys and seriously injuring Terwilliger. (PUF 71-73.) Thus, Defendants' Motion should be denied.

### D. Plaintiffs' Federal Claims Against Zozaya Survive

Plaintiffs are not arguing that Zozaya seized decedents—Garcia did. However, Zozaya was an "integral participator" in the unlawful seizure. *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (quoting *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020)). Zozaya may be deemed an "integral participant" if he "set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Id.* at 891; *see Spencer*

*v. Pew*, 117 F.4th 1130, 1144-45 (9th Cir. 2024); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019); *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007). Zozaya was more than a mere spectator. Zozaya recklessly set in motion this entire incident with pullover without reasonable suspicion, initiation of a dangerous pursuit, recklessly continuing a dangerous pursuit at speeds greater than 80 mph, failing to communicate the reason for the pursuit, and failing to communicate with officers during the pursuit. Garcia's intentional collision would not have occurred but for Zozaya's pullover and dangerous pursuit. Zozaya is therefore a cause of the seizure and can be found liable as part of Garcia's excessive deadly force and for the denial of Plaintiffs' familial relationship with their sons.

Zozaya was a cause of the collision by activating his lights and sirens, initiating a pursuit, tailing the Nissan and matching its speed up to 100 mph, and Bonilla would not have been at the Valley and Cypress intersection and location of Garcia's ambush without the pursuit by Zozaya. *See*, *e.g.*, *Stearney v. United States*, 392 F. Supp. 3d 1037, 1053-54 (D. Ariz. 2019). "This is enough to find that, but for [Zozaya's] pursuit, [Garcia] would not have hit the [Nissan], and that the collision was a foreseeable and proximate consequence of the pursuit that caused [Bonilla] to flee." *Id*. at 1054. Further, a jury could find Zozaya liable for violation of Plaintiffs' substantive due process rights both for wrongfully initiating and conducting the chase for the purpose of harming the fleeing suspect and by failing to render aid after the crash. *Est. of Soakai v. Abdelaziz*, 137 F.4th 969, 977 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 1771 (2026). The Supreme Court made clear in 1998 "what common sense dictates: High-speed car chases create a clear, known risk of harm, not only to the fleeing driver and to the officers, but also to passengers and bystanders." *Id*. at 978 (*relying on County of Sacramento v. Lewis*, 523 U.S. 833 (1998)). There is never a legitimate purpose to initiate a high-speed pursuit for a mere infraction, at night, with wet roads, and believing a juvenile is unrestrained and seated unsafely in the vehicle. Zozoya is also not entitled to qualified immunity. *Est. of Soakai v. Abdelaziz*., 137

F.4th 969 (9th Cir. 2025). Therefore, Defendants' Motion should be denied in full.

**E. It Was Obvious and Clearly Established That Ramming the Nissan that is Not Posing a Deadly Threat, Is Excessive**

As discussed above, the Officers' conduct violated the constitution. Next in the qualified immunity analysis is determining whether that constitutional right was "clearly established" at the time of the incident. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The touchstone is whether "officers [had] fair notice of the illegality of their conduct." *Orn v. City of Tacoma*, 949 F.3d 1167, 1178 (9th Cir. 2020); *Brosseau*, 543 U.S. at 198. Although this ordinarily requires "cases relevant to the situation [officers] confronted," *Brosseau*, 543 U.S. at 200, it does "not require a case directly on point," *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (qualified immunity should be denied even "despite notable factual distinctions…, so long as the prior decisions gave reasonable warning that the conduct…violated constitutional rights").

First, disputed issues of material fact preclude granting qualified immunity on summary judgment. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Craighead v. Lee*, 399 F.3d 954, 963 (8th Cir. 2005) (listing cases where "a genuine issue of material fact precluded entry of summary judgment"). Second, this case falls among the obvious. Under Plaintiffs' facts, which must be assumed, the use of deadly force was obviously excessive: Garcia had no information that the Nissan was an immediate threat of death or serious bodily injury, Garcia did not warning the Nissan of his intent to collide by using emergency lights, headlights or signal, there were reasonable alternatives, and no supervisor approval was given, yet Garcia intentionally rammed the Nissan in a pursuit from minor traffic violations. No reasonable officer would believe ramming the Nissan was justified—only the plainly incompetent, as demonstrated here. Based on Plaintiff's facts and all reasonable inferences therefrom, Gracia is not entitled to qualified immunity. *See Aguirre v.*

*County of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022) ("no 'body of relevant case law' is necessary in an 'obvious case' like this one") (ci*ting Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021)). Third, training on use of force can also provide notice that force is unreasonable. *Drummond*, 343 F.3d at 1062. The national model policy is also useful framing: "Boxing in, heading off, ramming, or driving alongside the pursued vehicle...may be approved only when the use of deadly force would be authorized." *City of Springfield v. Kibbe*, 480 U.S. 257, 272 (1987) (O'Connor, J., dissenting) (quoting International Association of Chiefs of Police, A Manual of Model Police Traffic Services, Policies and Procedures, Procedure 1.20, p. 91 (1986)). Here, pursuant to the training, Garcia knew intentionally using his SUV to collide with the Nissan was an intervention technique that is a use of deadly force requiring supervisor approval. (PUF 108.) Further, ramming has a high standard because it is particularly deadly requiring that all reasonable alternatives be exhausted and only used where there is an imminent threat of death or serious bodily injury and necessary in defense of life—which the Nissan was not and there were alternatives. (PUF 110-112.)

Finally, even if this Court disagrees that the constitutional violation was "obvious," cases published prior to this incident clearly establish the constitutional right to be free from deadly force at the time of this incident. In *Seidner v. de Vries*, 39 F.4th 591 (9th Cir. 2022), the Court found that the use of an intervention technique to stop a fleeing person is a seizure, *id*. at 596, and that whether the force is deadly turns on whether it "creates a substantial risk of causing death or serious bodily injury," *id*. at 597-98 (*quoting Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005) (en banc)). *Seidner* classified that roadblock as merely intermediate force because the officer's vehicle was not moving and speeds were low. However, it is clearly established that an officer pulling his police car across lanes to end a high-speed pursuit where the suspect does not have time to avoid the officer's vehicle is deadly force. *Id*. at 597-98 (*citing Buckner v. Kilgore*, 36 F.3d 536, 538-40 (6th Cir.

1994), and *Hawkins v. City of Farmington*, 189 F.3d 695, 698-702 (8th Cir. 1999)). It was clearly established that this deadly maneuver was likely to kill the fleeing suspect. *See Brower*, 489 U.S. at 599 (1989).

The Supreme Court in *Scott v. Harris* clearly established that the use of the deadly force vehicle ramming technique may only be used if the suspect "posed an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase." *Scott v. Harris*, 550 U.S. 372, 384 (2007). Here there is absolutely no evidence that the Nissan was an imminent threat to anyone. Therefore, the use of deadly force was clearly established by *Scott*. Further, it was Garcia's vehicle that posed a serious risk of harm because he placed it in a position threatening the Nissan to be struck by it. *See Villanueva*, 986 F.3d at 1170. The Supreme Court in *Plumhoff* also clearly establishes that the use of deadly force "to terminate a dangerous high-speed car chase" is only permitted when "the lives of innocent bystanders" are threatened. *Plumhoff v. Rickard*, 572 U.S. 765, 776 (2014). Here, it is undisputed that no innocent bystander lives were threatened.

The Ninth Circuit in *Sabbe v. Washington County Board of Commissioners*, 84 F.4th 807 (9th Cir. 2023), is instructive. There the Court held that the greater the risk of harm the greater the government interest but be to justify deadly force. *Id*. at 821. Courts recognize "the obvious reality that [vehicle intervention techniques] can be highly dangerous" and deadly at high speeds. *Id*. There, the dissenting opinion even believes it was an obvious case for a slow-moving PIT maneuver, *id* at 827, far less deadly than Garcia's ramming maneuver. Balancing *Graham* factors, the Court found a jury could conclude that the decedent posed no immediate threat, *id*. at 823, had committed no serious crime, *id*. at 824, was neither fleeing nor resisting, *id*., that less intrusive alternatives were available, *id*. at 824-25, and that "[t]he officers' failure to warn or provide direction to Sabbe before using potentially deadly force weighs against them," *id*. at 825. Qualified immunity was granted solely on the second prong

in 2023, and solely because "[w]e had not recognized before today that the use of an armored vehicle to execute a low-speed PIT maneuver could constitute the use of deadly force." *Id*. at 826-27. That holding is instructive and clearly establishes since 2023 that Garcia's use of deadly force was excessive. *See also Walker v. Davis*, 649 F.3d 502, 503-04 (6th Cir. 2011) (ramming maneuver is deadly force in violation of clearly established law); *see Latits v. Phillips*, 878 F.3d 541 (6th Cir. 2017) (describing *Walker's* facts); *Hawkins v. City of Farmington*, 189 F.3d 695, 701-03 (8th Cir. 1999) (applying *Brower*, holding that whether the officer maneuvered his vehicle into the vehicle's path, and whether the resulting seizure was reasonable, were both jury questions); *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994) ("the right of a fleeing suspect to be free from unreasonable seizure by 'deadman roadblocks' was clearly established under the teachings of *Brower*."); *Sluman v. State*, 3 Wash. App. 2d 656 (2018).

This is an obvious case of excessive force under Plaintiffs' facts, nevertheless case law puts Officers on fair notice that their deadly force here was excessive. Thus, the Officers are not entitled to qualified immunity.

## V. <u>PLAINTIFFS' MUNICIPAL LIABILITY CLAIMS MUST SURVIVE</u>

Defendants' first argument related to Plaintiff's *Monell* claims is the contention that if there is no constitutional deprivation, there can be no *Monell* liability. (Mot. at 21:20-21.) In other words, because Plaintiffs have shown a constitutional violation here, Plaintiffs' *Monell* claims must survive. Further, merely stating, "Plaintiffs can set forth no evidence" is a failure of the moving party to establish that there are no disputed issues of material fact. Fed. R. Civ. Pro. 56. This blatant violation of the standard on Rule 56 warrants denial of Defendants Motion regarding *Monell* in full. *See Written v. USAA General Indemnity Company*, 535 F.Supp.3d 880, 885 n.46 (D. Alaska 2021) (failure to develop argument beyond a "single conclusory statement and two broad legal citations…is too underdeveloped to address"); *Hibbs v. Dep't of Hum. Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (declining to consider argument

contained in single sentence because it was "too underdeveloped to be capable of assessment"); *Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014). Furthermore, qualified immunity does not apply to municipal liability. *See Brandon v. Holt*, 469 U.S. 464, 473 (1985); *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995).

There is ample evidence of failure to adequately train; ratification; and an unconstitutional custom, practice or policy. Officers are required to know their training and policy which include tests and certifications to drive tactically and in emergency situations, where safe driving is supposed to be covered. (PUF 113-114.) Officers must follow the Rules of the Road just like any other driver unless there is a specific exception under the Code. (PUF 115.) However, Fontana officers do not know necessary components of training and policy and repeatedly violated training and policy due to their lack of adequate training and policies. (PUF 116-117.) Defendants ratified this incident including by failing to investigate and having no procedure to investigate the death of three juveniles from an officer collision. (PUF 118-119.) This incident was only investigated by a third party where there are no Fontana procedures to provide disciplinary action on an officer based on their results. (PUF 120.) The officers gave 10-minute statements, at most, over a month after the incident, which were not recorded, and reported with inaccuracies. (PUF 121.) Garcia did not author a report or conduct a walk-through of the incident with investigators. (PUF 122.) Garcia was also in another traffic collision in an intersection while driving a patrol vehicle that caused injury. (PUF 123.) Causes for discipline include violation of policy, or any violation of state or local law or regulation, unsatisfactory work performance, violation of ethical rules, concealing incompetent work, failure to disclose or misrepresenting material facts, falsification of records, unreasonable force, and failure to observe safety standards. (PUF 124.) Garcia met each cause for discipline never was and instead was allowed to medically retire. (PUF 125.)

Defendant City claims there is no evidence for *Monell* despite its officers and even PMK not knowing policy and training, repeatedly violating policy and training,

and the City failing to even investigate this horrific incident. These Officers were not disciplined and were not required to be retrained; this force and all conduct in this incident was tacitly approved and ratified by City through their silence approving of the deadly force killing of these three boys; no officer has ever been terminated for their use of deadly force. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-91 (1989); *Garmon v. City of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016); *Merritt v. City of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011). "It is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *see Waggy v. Spokane Cty.*, 594 F.3d 707, 713 (9th Cir. 2010) (noting that a policy can be one of action or inaction – through its omissions the municipality is responsible). The City is liable for its several unconstitutional practices and training deficiencies addressed herein. *See Long v. County of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006). A jury could find that the City ratified this excessive force, failed to adequately train its officers, and has an unconstitutional pattern and practice that threatens lives.

## VI. PLAINTIFFS' STATE LAW CLAIMS SURVIVE

### A. Battery, Negligence, and Bane Act Survive

"California law is clear that the doctrine of qualified governmental immunity is a federal doctrine that does not extend to state tort claims against government employees" and that "qualified immunity does not apply to state civil rights claims." *Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009) (cleaned up) (*citing Venegas v. County of L.A.*, 153 Cal. App. 4th 1230, 1243, 1226 (2007)). Moreover, under Plaintiffs' facts there is sufficient evidence for a jury to find that Garcia's use of deadly force was unreasonable. Defendants' arguments related to Plaintiffs' state law claims mirror those regarding Plaintiff's excessive force claim. Given that Plaintiffs' Fourth Amendment claim survives, Plaintiffs' state law claims must survive. The same facts and law would be considered for Plaintiffs' Fourth Amendment excessive

force claim as his state law claims. *See Villalobos v. City of San Maria*, 85 Cal.App.5th 383, 389 (2022) (evaluating both battery and negligence claims against police officers under the reasonableness standard articulated in *Hayes*); *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) ("The elements of a Bane Act claim are essentially identical to the elements of a §1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right."). "[A] reckless disregard for a person's constitutional rights is evidence of specific intent to deprive that person of those rights." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1045 (9th Cir. 2018). Yet negligence claims apply a more forgiving standard. *Hayes v. County of San Diego*, 57 Cal.4th 622, 629-30, 639 (2013); *see also Tabares*, 988 F.3d at 1125 (pre-force decisions can render behavior unreasonable).

Here, Zozaya and Garcia were negligent and reckless in initiating a pursuit, not terminating the pursuit, not employing alternatives, failing to adequately communicate, violating policy and the Vehicle Code as stated herein, and by using and integrally participating in the use of unreasonable deadly force. This conduct occurred while the Nissan occupants did not have the present ability, opportunity or apparent intent to immediately cause death or serious bodily injury to anyone. Pen. Code §835a. Considering the disputed issues of material facts and the undisputed facts and considering that qualified immunity does not apply to state law claims, Plaintiffs are entitled to a jury trial on all state law claims for the reasons discussed above. *See Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1121, fn.6 (2004); *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013); *see also Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009). Further, the Officers' negligent tactics, which can also be taken into consideration for Plaintiffs' Battery action (*see* CACI No. 1305B, "totality of the circumstances" includes the conduct of the defendant leading up to the use of deadly force), preclude summary judgment.

Defendants again fail to meet the standard under Rule 56. *See Written*, 535 F.Supp.3d at 885 n.46 (failure to develop argument); *Hibbs*, 273 F.3d at 873 n.34;

*Ventress*, 747 F.3d at 723 n.8. Thus, Defendants' Motion should be denied in full.

**B. State Law Immunities Do Not Apply**

Vehicle Code section 17001 "specifically imposes liability upon a 'public entity.'" *Thomas v. City of Richmond*, 9 Cal. 4th 1154, 1159 (1995). Vehicle Code Section 17004.7 provides an immunity to the public entity where the public entity liability is predicated on a police pursuit. *Id*. at 1162. Vehicle Code Section 17004.7 does not apply to federal claims or the individual officers, only the City under state law. Plaintiffs' claims against the City under state law are limited to vicarious liability, thus this immunity does not apply. This is not a suspect-caused accident resulting in suspect litigation for suspect injuries. *See Thomas*, 9 Cal. 4th at 1164-65. This is a non-pursuing officer intentionally caused collision injuring third-party passengers. Defendants provide no support or argument for the immunity applying to vicarious liability or that the immunity applies to individual officers as opposed to the City only. *See Ramirez v. City of Gardena*, 14 Cal. App. 5th 811, 817 (2017). For Section 17004.7 immunity to apply, at minimum (1) the policy must meet the statutory requirements; (2) there must be regular periodic training on an annual basis; and (3) the training must cover all the subjects and elements in the Code including compliance with Penal Code §13519.8. *Flores v. City of San Diego*, 83 Cal. App. 5th 360, 384-87 (2022). Defendants have not made a showing as to any of the requirements for the immunity. Defendants provided policy does not meet the statutory minimum, there is no evidence as to what the annual training reflected in the officers' training record covers, and the defense provided training does not meet the elements under the code and fails to meet the standard of Penal Code §13519.8. (See Def. Exh. S; Plaintiffs Response to DUF 41-44.) Defendants failed to "present undisputed facts demonstrating that its vehicle pursuit policy training was at least one hour in duration in the training year prior to the incident." *Flores v. City of San Diego*, 83 Cal. App. 5th 360, 392 (2022); *see also Ramirez v. City of Gardena*, 5 Cal. 5th 995, 998 (2018).

The statutory grant of immunity to public agencies who adopt written policies on vehicle pursuits is intended to encourage adoption of safe pursuit guidelines and reduce frequency of accidents. *McGee v. City of Laguna Beach*, 56 Cal. App. 4th 537, 543 (1997). Fontana policies have the opposite effect here. Fontana contends its policy and training is adequate even when their officers repeatedly violate the policy and training resulting in the death of three boys. Fontana policy does not provide sufficient criteria to control and channel pursuing officer's discretion. *See Alcala v. City of Corcoran*, 147 Cal. App. 4th 666, 678 (2007).

By the plain language of the statute contemplates immunity to the City where the suspect vehicle causes the collision, not an officer. Veh. Code §17004.7(b)(1). The immunity does not apply where Garcia intentionally caused the collision. *See Nguyen v. City of Westminster*, 103 Cal. App. 4th 1161, 1168 (2002). The triggering event for the immunity is the collision caused by the suspect's vehicle, not intentionally caused by an officer vehicle. Otherwise, that overbroad reading of the statute would provide municipalities absolute immunity to intentionally kill by collision any pursued person's passengers merely because they have a policy in place. That was not the legislative intent of the statute.

Even if officers are in immediate pursuit of a suspected violator of law, "the law does not permit the police to drive with impunity from the moment they activate their sirens and flashing lights." *Brummett v. Cnty. of Sacramento*, 21 Cal. 3d 880, 886 (1978). Vehicle Code Section 21055 set out a minimum standard of due care and Section 21056 provides that officers are not relieved "from the duty to drive with due regard for the safety of all persons using the highway." *Id*. Thus, Garcia's conduct is not subject to the immunity as he was not using lights and sirens, and Defendant City is not immune where Zozaya and/or Garcia were not acting with due care. *Id*. Operating a vehicle "in the line of duty" requires driving "in such a manner that would not impose upon others an unreasonable risk of harm." *Id*. State immunity does not apply here.

## VII. PUNITIVE DAMAGES IS WARRANTED AGAINST GARCIA

Whether Plaintiffs are entitled to punitive damages is a question for the jury to consider after the presentation of all the evidence at trial. *Herrera v. Las Vegas Metro. Police Dept*., 298 F. Supp. 2d 1043, 1055-56 (D. Nev. 2004) (the appropriateness of punitive damages must be determined after the presentation of all the evidence at trial); *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 821 (1979) ("Determinations related to assessment of punitive damages have traditionally been left to the discretion of the jury."). Because there are disputed issues of fact bearing on whether the use of deadly force violated the Fourth Amendment and state law, there is a question of fact whether the force was in reckless or callous indifference to the decedents' constitutional rights. Thus, the Court cannot find that Plaintiffs are not entitled to punitive damages as a matter of law. *See*, *e.g.*, *Campos v. City of Merced*, 709 F. Supp. 2d 944, 967 (E.D. Cal. 2010). For the same reasons the unarmed killing of three innocent boys for being passengers in a vehicle fleeing from minor traffic infractions was unreasonable, reckless, and shocks the conscience (*see*, *supra*, Sections IV), a reasonable jury could find that Garcia acted with malice, oppression, or reckless disregard.

## VIII. CONCLUSION

The Nissan was obviously not an immediate threat of death or serious bodily injury when Garcia intentionally caused the collision. Defendants' contentions are disputed and lack credibility. The videos and accident reconstruction speak volumes. Therefore, Plaintiffs respectfully request that this Court DENY Defendants' Motion for Summary Judgment in full and DENY qualified immunity.

Respectfully submitted,

DATED: September 21, 2026

**LAW OFFICES OF DALE K. GALIPO**
**SHOJAI LAW FIRM**

By: */s/ Marcel F. Sincich*
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
Neema Shojai, Esq. *Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 11-6.2**

The undersigned counsel of record for Plaintiffs certifies that this brief does not exceed 25 pages as set forth and in compliance with this Court's Standing Order regarding motions. (Doc. 9 at 4:18-19.)

Respectfully submitted,

DATED: September 21, 2026

**LAW OFFICES OF DALE K. GALIPO**
**SHOJAI LAW FIRM**

By: */s/ Marcel F. Sincich*
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
Neema Shojai, Esq.
*Attorneys for Plaintiffs*