**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**SHOJAI LAW FIRM**
Neema Shojai, Esq. (SBN 321833)
neema@shojaifirm.com
8880 Rio San Diego, Suite 800
San Diego, California 92108
Telephone: (619) 777-0383
Facsimile: (619) 775-1383

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DIANA RIAS; TA-TANESHA GALBURTH; DOMINIC ADAMS Sr.; and BRITTANY MASON,

Plaintiffs,

vs.

CITY OF FONTANA; EDWARD BAUTISTA; JESUS GARCIA; DANIEL PRECIE; BRIAN ZOZAYA; and DOES 1-10, inclusive,

Defendants.

Case No. 5:25-cv-00207-JGB-ACCV

[*Honorable Jesus G. Bernal*]
Magistrate Judge Angela C. C. Viramontes

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES AND ADDITIONAL MATERIAL FACTS**

[*Filed concurrently with* Plaintiff's Opposition to Defendants' Motion for Summary Judgment; Memorandum of Points and Authorities in support thereof; Plaintiff's Statement of Additional Facts; Declaration of Marcel F. Sincich and exhibits thereto; Declaration of Roger Clark; Declaration of Felix Lee]

Hearing: October 5, 2026
Time: 09:00 a.m.
Crtrm: 1

Trial Date: December 1, 2026

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

Pursuant to Local Rule 56-2 and this Court's Standing Order, Plaintiffs respectfully submit their Statement of Genuine Disputes and Additional Material Facts.

DATED: September 21, 2026

**LAW OFFICES OF DALE K. GALIPO**
**SHOJAI LAW FIRM**

By: */s/ Marcel F. Sincich*
Dale K. Galipo, Esq.
Marcel F. Sincich, Esq.
Neema Shojai, Esq.
*Attorneys for Plaintiffs*

## PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| **1.** | On February 3, 2024, officer Brian Zozaya ("Zozaya") and Daniel Precie ("Precie") were conducting routine patrol at or around the area of Catawba and Valley in Fontana, CA. | Ex. B at 1-2<br>Ex. R at 17:12-21:9<br>Ex. W at 12:3-13:18, 14:21-19:10 | **Undisputed**. |
| **2.** | Around 10:44 p.m., Zozaya caught sight of a 2022 Nissan license plate 8ZZG454 ("vehicle"). | Ex. B at 1 | **Undisputed**. |
| **3.** | It was later determined that minor Giovanni Bonilla ("Bonilla") was operating the vehicle. | Ex. I at COF 000011, COF 0001150-20<br>See Ex. J at [9:9-21, 11:13-12:3; 19:14-20:3]<br>Ex. L | **Undisputed**. |
| **4.** | Zozaya noted that one of the rear passengers was hanging out of the rear window in a way that made it apparent he was not wearing a seatbelt. | Ex. B at 1-2<br>Ex. W at 18:6-18 | **Disputed** that the rear passenger was ever hanging out of the rear window as described by officers. Officer Precie claims that the juvenile was hanging from the window for approximately 20 seconds (**Exh. 2, Precie Depo** at 21:2-9) starting from Valley and Catawba (**Exh. 2, Precie Depo** at 17:10-18, 17:24-18:8). There are several videos of that timeframe including the moment when |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | | the pullover was initiated indicated by Zozaya turning on his overheard emergency lights. None of the videos show a passenger hanging out of the window. (**Exh. 17, Valley/Cherry Video** at 00:00-00:33; **Exh. 18, Valley/Cherry Video** at 00:00-10:09; **Exh. 19, Valley Poplar Video** at 00:02-00:04; **Exh. 20, Valley/Catawba Video** at 00:01-00:06; **Exh. 21, Valley/Catawba Video** at 00:01-00:03; **Exh. 22, Valley/Citrus Video** at 00:51-00:55; **Exh. 23, Valley/Citrus Video** at 01:00-01:04; **Exh. 24, Valley/Citrus Video** at 00:11-00:16; **Exh. 25, Valley/Cypress Video** at 00:34-00:38.) No juvenile is seen on any video hanging out of the Nissan window including in the video depicting the moment Zozaya activated his emergency lights. (**Exh. 2, Precie Depo** at 69:14-19, 70:5-13, 71:4-6, 71:13-17, 73:2-4, 73:10-16, 74:20-22.) Further, Zozaya's story as to initiating the pullover lacks credibility. Zozaya was not eastbound on Valley in front of Catawba behind the Nissan when he first observed the Nissan and supposedly when the subject was handing out of the window. Instead, Zozaya was westbound on Valley at the Cherry stoplight when Zozaya saw the Nissan passing him, Zozaya attempted to flash his spotlight at the vehicle, then made a U-Turn to follow the Nissan. No passenger was hanging from the Nissan window at the time. (**Exh. 17, Valley/Cherry Video** at 00:00-00:25). |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| **5.** | Officers witnessed this window hanging as violative of VC27315. | Ex. B at 1-2 | **Disputed** that the rear passenger was ever hanging out of the rear window as described by officers. Officer Precie claims that the juvenile was hanging from the window for approximately 20 seconds (**Exh. 2, Precie Depo** at 21:2-9) starting from Valley and Catawba (**Exh. 2, Precie Depo** at 17:10-18, 17:24-18:8). There are several videos of that timeframe including the moment when the pullover was initiated indicated by Zozaya turning on his overheard emergency lights. None of the videos show a passenger hanging out of the window. (**Exh. 17, Valley/Cherry Video** at 00:00-00:33; **Exh. 18, Valley/Cherry Video** at 00:00-10:09; **Exh. 19, Valley Poplar Video** at 00:02-00:04; **Exh. 20, Valley/Catawba Video** at 00:01-00:06; **Exh. 21, Valley/Catawba Video** at 00:01-00:03; **Exh. 22, Valley/Citrus Video** at 00:51-00:55; **Exh. 23, Valley/Citrus Video** at 01:00-01:04; **Exh. 24, Valley/Citrus Video** at 00:11-00:16; **Exh. 25, Valley/Cypress Video** at 00:34-00:38.) No juvenile is seen on any video hanging out of the Nissan window including in the video depicting the moment Zozaya activated his emergency lights. (**Exh. 2, Precie Depo** at 69:14-19, 70:5-13, 71:4-6, 71:13-17, 73:2-4, 73:10-16, 74:20-22.) Further, Zozaya's story as to initiating the pullover lacks credibility. Zozaya was not eastbound on Valley in front of Catawba behind the Nissan when he first observed the Nissan and supposedly when the subject was handing out of the window. Instead, |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | | Zozaya was westbound on Valley at the Cherry stoplight when Zozaya saw the Nissan passing him, Zozaya attempted to flash his spotlight at the vehicle, then made a U-Turn to follow the Nissan. No passenger was hanging from the Nissan window at the time. (**Exh. 17, Valley/Cherry Video** at 00:00-00:25).<br><br>**Disputed** as to "officers". It is undisputed that Garcia did not witness any such event. Further, Defendants only cite Zozaya's post-incident report to establish what Zozaya supposedly saw, no other officer.<br><br>**Undisputed** that VC27315 would be a minor traffic violation. |
| **6.** | Officers approached closer and saw the vehicle make an "unsafe turn from" the current lane to the second lane in front of another driver without using a turn signal. | Ex. B at 1-2<br>Ex. W at 18:6-19:16 | **Disputed** that they approached closer. Zozaya testified that he was already two to three car lengths behind the Nissan when he first saw it. (**Exh. 1, Zozaya Depo** at 14:21-15:9.) No video shows Zozaya approaching closer. (**Exh. 17, Valley/Cherry Video** at 00:00-00:33; **Exh. 18, Valley/Cherry Video** at 00:00-10:09; **Exh. 19, Valley Poplar Video** at 00:02-00:04; **Exh. 20, Valley/Catawba Video** at 00:01-00:06; **Exh. 21, Valley/Catawba Video** at 00:01-00:03; **Exh. 22, Valley/Citrus Video** at 00:51-00:55; **Exh. 23, Valley/Citrus Video** at 01:00-01:04; **Exh. 24, Valley/Citrus Video** at 00:11-00:16; **Exh. 25, Valley/Cypress Video** at 00:34-00:38.)<br><br>**Disputed** that there was an unsafe turn as opposed to merely changing lanes without signaling. |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | | **Disputed** that there was any changing lanes. Zozaya also claims that the Nissan was in Lane 1 the majority of the pursuit and only left Lane 1 prior to the collision after passing Cypress. (**Exh. 1. Zozaya Depo** at 46:6-15.) There are several videos of the incident including from when Zozaya claims to have seen the lane change, and none show a lane change as described. (**Exh. 17, Valley/Cherry Video** at 00:00-00:33; **Exh. 18, Valley/Cherry Video** at 00:00-10:09; **Exh. 19, Valley Poplar Video** at 00:02-00:04; **Exh. 20, Valley/Catawba Video** at 00:01-00:06; **Exh. 21, Valley/Catawba Video** at 00:01-00:03; **Exh. 22, Valley/Citrus Video** at 00:51-00:55; **Exh. 23, Valley/Citrus Video** at 01:00-01:04; **Exh. 24, Valley/Citrus Video** at 00:11-00:16; **Exh. 25, Valley/Cypress Video** at 00:34-00:38.)<br><br>**Disputed** that the lane change was from "the current lane to the second lane." Zozaya testified that he "observed the sedan made a unsafe turning movement from the Number 2 lane not the 1 lane, and then back into the Number 2 lane." (**Exh. 1, Zozaya Depo** at 18:13-18.) Yet Zozaya also claims that the Nissan was in Lane 1 the majority of the pursuit and only left Lane 1 prior to the collision after passing Cypress. (**Exh. 1, Zozaya Depo** at 46:6-15.) |
| **7.** | Officers witnessed this lane change as violative of VC22108. | Ex. B at 1-2 | **Disputed** that there was any changing lanes. Zozaya also claims that the Nissan was in Lane 1 the majority of the pursuit and only left Lane 1 prior to the collision after passing Cypress. (**Exh. 1.** |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | | **Zozaya Depo** at 46:6-15.) There are several videos of the incident including from when Zozaya claims to have seen the lane change, and none show a lane change as described. (**Exh. 17, Valley/Cherry Video** at 00:00-00:33; **Exh. 18, Valley/Cherry Video** at 00:00-10:09; **Exh. 19, Valley Poplar Video** at 00:02-00:04; **Exh. 20, Valley/Catawba Video** at 00:01-00:06; **Exh. 21, Valley/Catawba Video** at 00:01-00:03; **Exh. 22, Valley/Citrus Video** at 00:51-00:55; **Exh. 23, Valley/Citrus Video** at 01:00-01:04; **Exh. 24, Valley/Citrus Video** at 00:11-00:16; **Exh. 25, Valley/Cypress Video** at 00:34-00:38.)<br><br>**Disputed** as to "officers". It is undisputed that Garcia did not witness any such event. Further, Defendants only cite Zozaya's post-incident report to establish what Zozaya supposedly saw, no other officer.<br><br>**Undisputed** that Bonilla's claimed failure to use a turn signal in violation of VC22108 would be a minor traffic violation that resulted in no harm to others. |
| **8.** | At this time, the road was wet due to rain, thereby rendering the two violations to be a greater safety threat. | Ex. B at 1-2<br>Ex. W at 25:15-27:16 | **Undisputed** that the road was wet due to light rain which created a greater safety threat weighing against initiating a vehicle pursuit.<br><br>**Disputed** that the wet roads made the minor traffic violations a greater safety threat. Zozaya testified as to the assessment needed to initiate a pursuit not an assessment of whether the supposed violations were a greater |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | | safety threat. Further, Zozaya testified that the Nissan was driven safely prior to initiating the traffic stop. (**Exh. 1, Zozaya Depo** at 43:13-20.) |
| **9.** | Officers then attempted to conduct a traffic stop on the vehicle at a solid red light in the eastbound lanes of Catawba. | Ex. B at 1-2<br>Ex. W at 12:6-13:18, 14:21-19:10 | **Disputed** that the traffic stop occurred at a solid red light. (**Exh. 20, Valley/Catawba Video** at 00:01-00:06)<br>**Disputed** as to "Officers." This supposed traffic stop was made by Zozaya and the only evidence cited was by Zozaya and no other officer to support the claim. |
| **10.** | Officers activated all of the following: their emergency lights with forward facing solid red lights, flashing white and blue lights, and sirens. | Ex. B at 1-2<br>Ex. W at 12:6-13:18 | **Undisputed** as to Zozaya only.<br>**Disputed** that Garcia activated emergency lights with forward facing solid red lights, flashing white and blue lights, and sirens. (**Exh. 25, Valley/Cypress Video** at 00:34-00:38) |
| **11.** | In response, the vehicle accelerated away, going westbound on Valley street from Catawba street. | Ex. B at 1-2<br>Ex. R at 24:23-26:1<br>Ex. W at 12:6-13:18 | **Disputed** as to the speculated state of mind of Bonilla stating, "in response."<br>**Disputed** that Bonilla accelerated westbound on Valley instead of east. (**Exh. 1, Zozaya Depo** at 12:7-15) |
| **12.** | Zozaya initiated a vehicle pursuit, taking position as the primary officer. | Ex. B at 1-2<br>Ex. R at 24:23-26:1<br>Ex. W at 12:6-13:18; 42:5-7 | **Undisputed** that Zozaya immediately initiated a vehicle pursuit without consideration of the factors required for initiation.<br>**Undisputed** that Zozaya's unit was the primary unit and only unit in pursuit. |
| **13.** | At all relevant times, Valley Road had a speed limit | Ex. I at COF 00040<br>See Ex. J at [9:9-21, | **Disputed** to the extent that Defendants fail to establish what Zozaya believed the speed limit to be. Zozaya did not report what the speed limit was (see |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | of 45 miles per hour. | 11:13-12:3; 19:14-20:3] | defense Exhibit B). Further, Zozaya believed the speed limit was 50 or 55 mph. (**Exh. 1, Zozaya Depo** at 29:24-30:1.) |
| **14.** | The vehicle drove eastbound on Valley (from Catawba) going over 60 miles per hour. | Ex. B at 1-2<br>Ex. R at 24:23-26:1<br>Ex. W at 12:6-13:18; 46:7-27:5 | **Undisputed** for the purpose of this Motion. |
| **15.** | The vehicle did not show any signs that its driver was going to stop in response to officers' emergency lights or signals of pursuit. | Ex. B at 1-2<br>Ex. W at 12:6-13:18; 26:7-27:5 | **Disputed**. The pursuit lasted only approximately 23 seconds (**Exh. 1, Zozaya Depo** at 53:2-8) and was interrupted by Garcia's intervention. (**Exh. 25, Valley/Cypress Video** at 00:34-00:38.) Further disputed as Defendants did not establish this proposed fact by evidence. |
| **16.** | Zozaya broadcasted to dispatch that he was in pursuit. | Ex. B at 1-2<br>Ex. G<br>Ex. W at 12:6-13:18 | **Disputed** that Zozaya only broadcasted to dispatch. Zozaya testified that as the primary vehicle, it was important for him to give *other officers and dispatch* pertinent information including the direction, location and speed of the pursuit. (**Exh. 1, Zozaya Depo** at 52:4-18.)<br>**Undisputed** that Zozaya broadcasted he was in pursuit. |
| **17.** | The vehicle drove eastbound on Valley, through Citrus, approaching Oleander at over 80 miles per hour. | Ex. B at 1-2<br>Ex. I at COF 000028<br>See Ex. J at [9:9-21, 11:13-12:3; 19:14-20:3] | **Undisputed** that Garcia knew through radio broadcasts that the Nissan drove eastbound on Valley, through Citrus and Oleander.<br>**Disputed** as phrased and unsupported as to the speed at that time. Defendants' proposed fact is merely copied from Zozaya's hearsay after-incident report |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | Ex. W at 12:3-13:18, 14:21-19:10 | and is not established by admissible evidence. |
| **18.** | Officers' determined the vehicle's high speeds on the wet roads, and passage of other motorists, posed a major threat of injury to the public. | Ex. B at 1-2 | **Disputed** as phrased and unsupported. Defendants' proposed fact is merely copied from Zozaya's hearsay after-incident report and is not established by admissible evidence.<br><br>**Disputed** as to "officers". It is undisputed that Garcia did not determine any such event. Further, Defendants only cite Zozaya's post-incident report to establish what Zozaya supposedly saw, no other officer. |
| **19.** | Officer Jesus Garcia ("Garcia") and Edward Bautista ("Bautista") were positioned in their respective patrol vehicles within a parking lot on the southernly side of Valley between Cypress and Juniper. | Ex. K at 42:25-43:19, 44:7-13 | **Undisputed** that Garcia and Bautista were in a thrift store parking lot which was at the southeast corner of Valley and Cypress. |
| **20.** | Garcia and Baustista heard the broadcasts from Zozaya indicating that a pursuit was happening. | Ex. K at 45:1-15 | **Undisputed** that Garcia knew there was a pursuit in progress initiated by Zozaya. |
| **21.** | Garcia and Bautista responded as | Ex. B at 1-2 Ex. K at 42:25-43:19, 44:7-45:15 | **Disputed** as to the intent of Bautista. This proposed fact is not established by Zozaya's hearsay Report or Garcia's testimony. |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | supporting/backing units. | | **Undisputed** that Garcia responded. |
| **22.** | Meanwhile, the pursuit eastbound continued through Cypress in speeds over 80 miles per hour. | Ex. B at 1-2<br>Ex. H<br>Ex. I at COF 000028, COF 000139-143<br>See Ex. J at [9:9-21, 11:13-12:3; 19:14-20:3]<br>Ex. W at 12:3-13:18, 14:21-19:10, 43:4-44:7 | **Undisputed** that the pursuit was eastbound on Valley, through Cypress, and Zozaya and Bonilla drove in excess of 80 mph which Garcia was still in the parking lot. |
| **23.** | At no point in time did vehicle or the passengers comply with officers' attempts to get them to pull over or otherwise stop their flight. | Ex. B at 1-2 | **Disputed**. The three minor passengers were not in control of the Nissan and there is no evidence that they did not attempt to comply. In fact, based on Defendants' disputed facts, the rear right passenger was once out of the window and complied with police presence by going back inside the vehicle. Defendant Zozaya's 2-page hearsay report does not describe in detail everything that did and did not happen nor does it establish whether Bonilla attempted to comply or not. The pursuit lasted only approximately 23 seconds (**Exh. 1, Zozaya Depo** at 53:2-8) and was interrupted by Garcia's intervention. (**Exh. 25, Valley/Cypress Video** at 00:34-00:38.) Further disputed as Defendants did not establish this proposed fact by evidence. |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| **24.** | Baustista exited the parking lot turning left onto the westbound lane of Valley towards Cypress. | Ex. B at 1-2 Ex. H at 00:30-00:50 Ex. K at 53:14-54:17 | **Undisputed** that Bautista properly stopped on the apron, properly waited for traffic to pass in order to safely make a turn, properly cleared the intersection of oncoming traffic, properly yielded the right of way, properly had his headlights on, then turned left safely into the westbound lane of Valley, unlike Garcia. |
| **25.** | Behind him, Garcia exited the parking lot with a left turn out onto Valley. | Ex. B at 1-2 Ex. H at 00:30-00:50 Ex. K at 49:8-22, 52:5-54:17, 98:13-23, 112:6-113:9 | **Disputed** as phrased. Garcia did not exit the parking lot immediately behind Bautista. (**Exh. 25, Valley/Cypress Video** at 00:34-00:38.) Garcia did not complete a left turn onto Valley. (**Lee Decl** ¶5, **Exhs. 30**, **31**, **32**, and **33**.) |
| **26.** | Garcia moved his patrol vehicle into about the northerly end of the middle dividing lane. | Ex. B at 1-2 Ex. H at 00:30-00:50 Ex. K at 49:8-22, 52:5-54:17, 98:13-23, 112:6-113:9 | **Disputed**. Garcia did not move his vehicle into the middle dividing lane at all and certainly not the northerly end of it. The area of impact was Lane 1 eastbound Valley where Bonilla had the right-of-way. (**Exh. 25, Valley/Cypress Video** at 00:34-00:38; **Lee Decl** ¶5, **Exhs. 30**, **31**, **32**, and **33**; **Exh. 9, Scene Photos** at 1-3.) Precie never saw the Nissan go into westbound traffic before the collision. (**Exh. 2, Precie Depo** at 37:17-19). Precie never saw the Nissan slide before the collision. (**Exh. 2, Precie Depo** at 38:9-11). Precie never saw the Nissan moving sideways towards Garcia's vehicle. (**Exh. 2, Precie Depo** at 38:12-15). The Nissan did not swerve, slide sideways, hydroplane or skid; it was going straight. (**Exh. 1, Zozaya Depo** at 48:16-49:4; **Exh. 4, Terwilliger Depo** at 23:4-5, 24:9-15) |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| **27.** | Garcia did not intend to position his car physically in the way of the vehicle decedents were in. | Ex. K at 37:17-39:5, 106:9-108:1 | **Disputed**. Defendants cannot establish a position on the matter from Garcia's testimony because of his lack of memory. (**Exh. 3, Garcia Depo** at 9:23-10:5; see also **Plaintiffs' Objections Section II**.) Garcia does not recall if he was intending to conduct a pursuit intervention technique. (*Id.* at 107:9-16.) Garcia does not recall if he was attempting to conduct a blocking, boxing, PIT, ramming, roadblock, or tire deflation technique. (*Id.* at 107:20-25.) Thus, he cannot contend otherwise.<br><br>**Disputed**. Under Plaintiffs' facts and all reasonable inferences therefrom and in light of the objective video and physical evidence, a jury can find that Garcia intentionally attempted rammed into the Nissan with his patrol SUV: Garcia testified that he intended "[t]o assist" the pursuit (*Id.* at 37:17-19), which he did by using excessive force to stop the pursuit. Garcia "was attempting to respond to the pursuit" (*Id.* at 38:5-9). Garcia knew the pursuit was going eastbound on Valley (*Id.* at 38:10-12). Garcia knew an option was to wait in the parking lot to see in which direction the pursuit went before leaving the parking lot (*Id.* at 38:20-23). Garcia knew the Nissan was approaching Cypress a high speeds being pursued by Zozaya, failed to come to a complete stop at the apron, failed to clear the intersection, failed to yield the right of way, failed to use his turn signal, failed to activate his headlights in a continuous event of trying to be inconspicuous, saw the |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | | Nissan's headlights approaching, intentionally took his foot off the brake, intentionally put his foot on the accelerator, intentionally depressed the accelerator to 100% - gunning it – and turning slightly to the left timed perfectly for the front of his SUV to violently collide into the right side of the Nissan, in a T-Bone/Ram-like maneuver, colliding with the Nissan in the Number 1 lane of Valley eastbound. (**PAMF** 54-68.) |
| **28.** | Garcia did not perform any maneuvers with his patrol unit in an effort to terminate the pursuit. | Ex. K at 106:9-108:1 | **Disputed**. Defendants cannot establish a position on the matter from Garcia's testimony because of his lack of memory. (**Exh. 3, Garcia Depo** at 9:23-10:5; see also **Plaintiffs' Objections Section II**.) Garcia does not recall if he was intending to conduct a pursuit intervention technique. (*Id.* at 107:9-16.) Garcia does not recall if he was attempting to conduct a blocking, boxing, PIT, ramming, roadblock, or tire deflation technique. (*Id.* at 107:20-25.) Thus, he cannot contend otherwise.<br><br>**Disputed**. Under Plaintiffs' facts and all reasonable inferences therefrom and in light of the objective video and physical evidence, a jury can find that Garcia intentionally attempted rammed into the Nissan with his patrol SUV: Garcia testified that he intended "[t]o assist" the pursuit (*Id.* at 37:17-19), which he did by using excessive force to stop the pursuit. Garcia "was attempting to respond to the pursuit" (*Id.* at 38:5-9). Garcia knew the pursuit was going eastbound on Valley (*Id.* at 38:10-12). |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | | Garcia knew an option was to wait in the parking lot to see in which direction the pursuit went before leaving the parking lot (*Id.* at 38:20-23). Garcia knew the Nissan was approaching Cypress a high speeds being pursued by Zozaya, failed to come to a complete stop at the apron, failed to clear the intersection, failed to yield the right of way, failed to use his turn signal, failed to activate his headlights in a continuous event of trying to be inconspicuous, saw the Nissan's headlights approaching, intentionally took his foot off the brake, intentionally put his foot on the accelerator, intentionally depressed the accelerator to 100% - gunning it – and turning slightly to the left timed perfectly for the front of his SUV to violently collide into the right side of the Nissan, in a T-Bone/Ram-like maneuver, colliding with the Nissan in the Number 1 lane of Valley eastbound. (**PAMF** 54-68.) |
| **29.** | Almost immediately after Garcia moved into or about the middle dividing lane, decedents' vehicle collided with Garcia. | Ex. B at 1-2<br>Ex. H at 00:30-00:50<br>Ex. K at 30:16-32:24, 52:5-54:17, 98:13-23, 112:6-113:9<br>Ex. I COF 000018-22<br>See Ex. J at 83:5-86:21, [9:9-21, | **Disputed**. Garcia did not move his vehicle into the middle dividing lane at all and certainly not the northerly end of it. The area of impact was Lane 1 eastbound Valley where Bonilla had the right-of-way. (**Exh. 25, Valley/Cypress Video** at 00:34-00:38; **Lee Decl** ¶5, **Exhs. 30**, **31**, **32**, and **33**; **Exh. 9, Scene Photos** at 1-3.) Precie never saw the Nissan go into westbound traffic before the collision. (**Exh. 2, Precie Depo** at 37:17-19). Precie never saw the Nissan slide before the collision. (**Exh. 2, Precie Depo** at 38:9-11). Precie never |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | 11:13-12:3; 19:14-20:3] | saw the Nissan moving sideways towards Garcia's vehicle. (**Exh. 2, Precie Depo** at 38:12-15). The Nissan did not swerve, slide sideways, hydroplane or skid; it was going straight. (**Exh. 1, Zozaya Depo** at 48:16-49:4; **Exh. 4, Terwilliger Depo** at 23:4-5, 24:9-15)<br><br>**Disputed** that the vehicle belonged to the three passenger decedents. It is undisputed that the Nissan was driven by and belongs to Bonilla and did not belong to decedents.<br><br>**Disputed** as phrased that the Nissan collided with Garcia. Garcia was not on foot and did not personally get impacted by the Nissan.<br><br>**Disputed** that the Nissan collided with Garcia's vehicle. Garcia used his SUV to collide into the Nissan. (**Exh. 25, Valley/Cypress Video** at 00:34-00:38; **Lee Decl** ¶¶7-8, **Exhs. 30**, **31**, **32**, and **33**.) (**PAMF** 54-68.)<br><br>**Disputed**. Defendants cannot establish a position on the matter from Garcia's testimony because of his lack of memory. (**Exh. 3, Garcia Depo** at 9:23-10:5; see also **Plaintiffs' Objections Section II**.) Garcia does not recall if he was intending to conduct a pursuit intervention technique. (*Id.* at 107:9-16.) Garcia does not recall if he was attempting to conduct a blocking, boxing, PIT, ramming, roadblock, or tire deflation technique. (*Id.* at 107:20-25.) Thus, he cannot contend otherwise. |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| **30.** | From this collision, three of the passengers eventually died, with only Bonilla, Garcia, and his partner alive but seriously injured. | Ex. B at 1-2<br>Ex. I COF 000016, 36, 59, 61<br>See Ex. J at [9:9-21, 11:13-12:3; 19:14-20:3]<br>Ex. T at 9-18 | **Undisputed**, that three teenage passengers of the Nissan died as a result of the collision caused by Garcia, and that Bonilla and Terwilliger were seriously injured.<br>**Disputed** as to the seriousness of Garcia's injury. Garcia was walking around immediately after the incident. Defendants do not establish whether Garcia was seriously injured. The hearsay investigation report merely states that he had back pain and concussion. (Def Exh. I at COF 16.) |
| **31.** | At over 100 miles per hour, decedents' vehicle decelerated approximately sharply over ten (10) miles per hour to between 80 and 90 mph just prior to hitting Garcia. | Ex. I COF 000139<br>See Ex. J at [9:9-21, 11:13-12:3; 19:14-20:3]<br>Ex. T at 9-18 | **Disputed** that the vehicle belonged to the three passenger decedents. It is undisputed that the Nissan was driven by and belongs to Bonilla and did not belong to decedents.<br>**Undisputed** to the extent that Bonilla attempted to avoid being struck by Garcia by slamming on the brakes once he was able to finally see the hidden and inconspicuously driven Garcia SUV which accelerated quickly from the apron directly into the side of Bonilla's vehicle. |
| **32.** | Detective analysis of the vehicle's CDR proffered that about "…[1.5 seconds prior to the collision] that [the vehicle] rotated counter clockwise. | Ex. I COF 000139<br>See Ex. J at [9:9-21, 11:13-12:3; 19:14-20:3]<br>Ex. T at 9-18 | **Disputed**. First the steering input recorded for the Nissan is inaccurate, impossible, and unreliable. (**Lee Decl** ¶4.) The recorded data would indicate that Bonilla had his steering wheel steadily at 250 degrees for at least 4 seconds within the 5 seconds prior to the impact which would mean the Nissan would be turning in circles prior to even entering the Valley and Cypress intersection. Any reliance on the |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | | recorded steering impute is an unreliable methodology and insufficient facts and data to render an opinion. Defendants cite the deposition of person most knowledgeable of the investigation, Wolff, yet no citation having anything to do with the collection, accuracy, analysis, or opinion of the crash data. Defendants rely entirely on Dr. Wobrock who merely copied from the inaccurate MAIT Report without any consideration of its reliability. Further, Dr. Wobrock provides no opinion as to whether the Nissan rotated counterclockwise 1.5 seconds prior to the collision. The MAIT report indicates only that at approximately 1.5 seconds prior to the collision; Bonilla activated the brakes and slowed from approximately 108.7 mph to 83.3 mph. (**Exh. 8, MAIT Report** at COF 139.) Precie never saw the Nissan go into westbound traffic before the collision. (**Exh. 2, Precie Depo** at 37:17-19). Precie never saw the Nissan slide before the collision. (**Exh. 2, Precie Depo** at 38:9-11). Precie never saw the Nissan moving sideways towards Garcia's vehicle. (**Exh. 2, Precie Depo** at 38:12-15). The Nissan did not swerve, slide sideways, hydroplane or skid; it was going straight. (**Exh. 1, Zozaya Depo** at 48:16-49:4; **Exh. 4, Terwilliger Depo** at 23:4-5, 24:9-15) |
| **33.** | Garcia's recollection is that he completed his left turn before | Ex. K at 33:15-34:19, 53:14-54:17 | **Disputed**. Defendants cannot establish a position on the matter from Garcia's testimony because of his lack of memory. (**Exh. 3, Garcia Depo** at 9:23- |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | seeing headlights coming at him. | | 10:5; see also **Plaintiffs' Objections Section II**.) All of Garcia's recollection and testimony are subject to credibility determination by the jury. Nevertheless, Garcia does not recall what lane he was in at the time of the collision. (**Exh. 3, Gacia Depo** at 31:5-8.) Garcia does not recall trying to turn at all immediately prior to the collision. (*Id*. at 31:13-15.) Garcia does not recall seeing the Nissan turning prior to the collision. (*Id*. at 33:12-14.) Garcia does not recall being in the Number 1 westbound lane because his "memory is a little foggy on that" but has tried to "piece[] together" what happened after the fact. (*Id*. at 34:9-14.) Based on objective evidence, Garcia could not have completed the turn, Garcia was not facing west at the time of the collision, was not in the center lane or westbound lanes because the point of impact was in the Number 1 eastbound lane (**Exh. 25, Valley/ Cypress Video** at 00:34-00:38; **Lee Decl** ¶5, **Exhs. 30**, **31**, **32**, and **33**.) Garcia saw the Nissan when he was at the apron of the driveway 1-2 seconds prior to the collision (**Exh. 3, Garcia Depo** at 32:2-4, 32:18-24; **Exh. 4, Terwilliger Depo** at 16:11-15, 21:16-25). Further, disputed that the Nissan was coming at him—Garcia intentionally drove into the Nissan (**PAMF** 54-107.) |
| **34.** | Garcia's vehicle made it over the southern double yellow line of the | Ex. H at Ex. I COF 000018-22 | **Disputed**. Defendants cannot establish a position on the matter from Garcia's testimony because of his lack of memory. (**Exh. 3, Garcia Depo** at 9:23- |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | center median before the collision. | See Ex. J at 83:5-86:21, [9:9-21, 11:13-12:3; 19:14-20:3] Ex. K at 30:16-32:24, 52:5-54:17, 98:13-23, 112:6-113:9 | 10:5; see also **Plaintiffs' Objections Section II**.) All of Garcia's recollection and testimony are subject to credibility determination by the jury. Nevertheless, Garcia does not recall what lane he was in at the time of the collision. (**Exh. 3, Gacia Depo** at 31:5-8.) Garcia does not recall trying to turn at all immediately prior to the collision. (*Id*. at 31:13-15.) Garcia does not recall seeing the Nissan turning prior to the collision. (*Id*. at 33:12-14.) Garcia does not recall being in the Number 1 westbound lane because his "memory is a little foggy on that" but has tried to "piece[] together" what happened after the fact. (*Id*. at 34:9-14.) Based on objective evidence, Garcia could not have completed the turn, Garcia was not facing west at the time of the collision, was not in the center lane or westbound lanes because the point of impact was in the Number 1 eastbound lane (**Exh. 25, Valley/ Cypress Video** at 00:34-00:38; **Lee Decl** ¶5, **Exhs. 30**, **31**, **32**, and **33**; **Exh. 9, Scene Photos** at 1-3.) Precie never saw the Nissan go into westbound traffic before the collision. (**Exh. 2, Precie Depo** at 37:17-19). Precie never saw the Nissan slide before the collision. (**Exh. 2, Precie Depo** at 38:9-11). Precie never saw the Nissan moving sideways towards Garcia's vehicle. (**Exh. 2, Precie Depo** at 38:12-15). The Nissan did not swerve, slide sideways, hydroplane or skid; it was going straight. (**Exh. 1, Zozaya Depo** at 48:16-49:4; |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | | **Exh. 4, Terwilliger Depo** at 23:4-5, 24:9-15) |
| **35.** | Decedents' vehicle, which was in the eastbound lane closest to median, veered leftward into about the middle-diver lane. | Ex. H at<br>Ex. I COF 000018-22<br>See Ex. J at 47:8-49:12, 83:5-86:21, [9:9-21, 11:13-12:3; 19:14-20:3]<br>Ex. K at 30:16-32:24, 52:5-54:17, 98:13-23, 112:6-113:9<br>Ex. R at 26:13-21, 36:7-38:15<br>Ex. T at 9-18 | **Disputed** that the vehicle belonged to the three passenger decedents. It is undisputed that the Nissan was driven by and belongs to Bonilla and did not belong to decedents.<br><br>**Disputed** that the Nissan veered into the middle lane. The Nissan was not in the painted median. Based on objective evidence, Garcia could not have completed the turn, Garcia was not facing west at the time of the collision, was not in the center lane because the point of impact was in the Number 1 eastbound lane (**Exh. 25, Valley/ Cypress Video** at 00:34-00:38; **Lee Decl** ¶5, **Exhs. 30**, **31**, **32**, and **33**; **Exh. 9, Scene Photos** at 1-3.) Precie never saw the Nissan go into westbound traffic before the collision. (**Exh. 2, Precie Depo** at 37:17-19). Precie never saw the Nissan slide before the collision. (**Exh. 2, Precie Depo** at 38:9-11). Precie never saw the Nissan moving sideways towards Garcia's vehicle. (**Exh. 2, Precie Depo** at 38:12-15). The Nissan did not swerve, slide sideways, hydroplane or skid; it was going straight. (**Exh. 1, Zozaya Depo** at 48:16-49:4; **Exh. 4, Terwilliger Depo** at 23:4-5, 24:9-15.) Garcia saw the Nissan when he was at the apron of the driveway 1-2 seconds prior to the collision (**Exh. 3, Garcia Depo** at 32:2-4, 32:18-24; **Exh. 4, Terwilliger Depo** at 16:11-15, 21:16- |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | | 25). Further, Garcia intentionally drove into the Nissan (**PAMF** 54-107.) |
| **36.** | After impact, decedents' vehicle continued northeast where it collided with other parked and unoccupied vehicles. | Ex. B at 1-2<br>Ex. I COF 000016-22, 36-39<br>See Ex. J at 71:5-75:16, [9:9-21, 11:13-12:3; 19:14-20:3]<br>Ex. T at 9-18 | **Disputed** that the vehicle belonged to the three passenger decedents. It is undisputed that the Nissan was driven by and belongs to Bonilla and did not belong to decedents.<br>**Disputed** as phrased. Garcia's SUV colliding with the Nissan propelled the Nissan northeast into an unoccupied parked car. (**Exhs. 30**, **31**, **32**, and **33**.) |
| **37.** | Officers arrived to assist, investigating injuries and casualties but not moving anyone inside the cars due to the risk of potential spine injuries. | Ex. I COF 000027<br>See Ex. J at [9:9-21, 11:13-12:3; 19:14-20:3]<br>Ex. Q | **Undisputed** that officers arrived to assist Garcia and Terwilliger.<br>**Disputed** as to "Officers" given that these citations only apply to Zozaya. Further, as seen throughout Zozaya's BWC video (Def Exh. Q at 00:00-03:48), no officers assisted decedents, no officer took decedents' vital signs, no officer attempted to talk to decedents, and no officer investigated decedents' injuries. Instead, at 00:18-00:20, after Zozaya failed to evaluate decedents, Zozaya instructed anther officer to go evaluate Garcia because the occupants of the Nissan were "unresponsive." No officer attempted to render medical aid to the kids, no officer attempted to check their pulse or assess the kids, and the only medical aid rendered was by the fire department and ambulance. (**Exh. 2, Precie Depo** at 55:5-23.) |
| **38.** | Bonilla and decedent Pitts were transported to Arrowhead | Ex. B at 1-2<br>Ex. I COF 000016, 26, 36, 59, 61 | **Undisputed**. |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | Regional Medical Center (ARMC) and Loma Linda University Medical Center (LLUMC) while decedent Rias and Adams were pronounced deceased at the scene. | See Ex. J at [9:9-21, 11:13-12:3; 19:14-20:3] | |
| **39.** | Pitts was pronounced dead the next day. | Ex. I COF 000071 See Ex. J at [9:9-21, 11:13-12:3; 19:14-20:3] | **Undisputed**. |
| **40.** | Following this incident, Bonilla was convicted of violation VC22356(B) exceeding 70 miles per hour. | Ex. L | **Disputed** as information unknown., improper character evidence, irrelevant, and unduly prejudicial, and lacks foundation. This proposed fact is not established by admissible evidence. |
| **41.** | Officers' POST and training profiles with FPD include course trainings for use of force, driving and pursuit policy, response to calls. | Ex. M at pp 1-4 Ex. N at pp 1-4 Ex. O at pp 1-4 Ex. P at pp 1-4 Ex. S at COF 000613-674, 714-1145, 1424-1426, 1511-1512 | **Disputed** to the extent that these records do not demonstrate the adequacy of the training, Defendants do not point out how long the course was, what type of course it was, whether it was a pass/fail or graded testing course, or whether the courses took place before or after the incident. Nevertheless, as demonstrated by the Officers' conduct, they received inadequate training; as demonstrated by the Officers' responses at deposition, they received inadequate training. For instance, it appears that in 2023, Zozaya spent merely 1 hour training on the |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | | pursuit policy and 4 hours training on the PIT maneuver, and again only 1 hour training on the pursuit policy in 2022. (Def Exh. M at COF 1858). Further, despite having an 8 hour course in Driver Awareness just 3 months prior to the incident (Def Exh. P at COF 1975), Garcia still violated basic officer training, drove without due regard, and used excessive force with his vehicle. There is evidence of inadequate training. (**PAMF** 74-107.) |
| **42.** | FPD policy contains provisions which sets forth all of the following with respect to vehicle use and pursuits: (1) the circumstances in which to initiate pursuits; (2) numeric limits on number of pursuit vehicles; (3) communication procedures for pursuits; (4) the role of supervisors to manage and control pursuits; (5) circumstances in which to use laid out driving tactics; (6) authorized intervention tactics | Ex. S at COF 000702-713, 995, 1346-1355 | **Disputed**. Fontana Vehicle Pursuits Policy does not meet the statutory requirements and Defendants have not made a showing that it does. For instance, amongst other items, Defendants policy has no information on determining driving tactics and circumstances which the tactics may be appropriate; has no information for determining procedures for apprehending an offender following a pursuit; and safe driving tactics information. The is no mention of a requirement to drive with due regard and no definition or means to determine what due regard includes in vehicle pursuits. Further, COF 995 is not part of the vehicle pursuit policy where the statutory requirement calls for the policy for safe conduct of motor vehicle pursuits to contain information to determine the role of air support. On its face it does not. Further, Defendants make no showing of proof that COF 1346-55 is policy but a Memorandum of Understanding with no showing that it is |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | (including blocking, ramming, boxing, and roadblocks) and when to employ them; (7) factors necessary to choose speeds encompassing public, officer, and suspect safety; (8) air support role when available; (9) factors to consider to decide pursuit termination or discontinuance; (10) post-vehicle-pursuit apprehension procedures; (11) determination of effective coordination, management, and control of interjurisdictional pursuits; (12) post-pursuit reporting and analysis. | | every read or trained upon and therefore cannot be incorporated into the requirement related to the policy. Further, there is no indication by Defendants as to what any annual training covers either from policy or training documents and no evidence that the PowerPoint provided is trained on any kind of regular basis. Finally, even where the policy mentions something as required under the code, it does not do so adequately. As a policy is does not provide the necessary information for any reasonable officer to make a safe and informed decision. The policy at times merely restates the sentence of what the statute requires but does not give a policy for the material including "the importance of protecting the public and balancing the known or reasonably suspected offense, and the apparent need for immediate capture against the risks to peace officers, innocent motorists, and others to protect the public." The statute requires the policy to "address" these issues not merely copy and paste it the issue into the policy. There is no policy for this balancing test. There is evidence of unconstitutional custom, policy, practice. (**PAMF** 113-125.) |
| **43.** | FPD also has its policy, including portions specifically related to pursuits, signed as received and acknowledged by officers. | Ex. S at COF 001568-1650<br>Ex. M at COF 001849, 1853, 1845, 1841 | **Disputed**, given that this proposed fact is unintelligible and Plaintiffs cannot respond appropriately. Undisputed that Defendant Officers were supposed to know their Department policy and training. See also Plaintiffs Dispute of Defendants Fact No. 42. |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | Ex. N at COF 001829, 1825, 1833<br>Ex. O at COF 00179, 1780, 1784, 1788, 1792, 1796, 1800, 1801, 1805, 1809, 1813<br>Ex. P at COF 001964, 1958 | |
| **44.** | FPD also provides annual pursuit-specific refresher training. | Ex. S at COF 001568-1650 | **Disputed** to the extent that there is no indication the record that Def Exh. S at 1568-1650 is an annual refresher training. Interestingly, 82 slides as an annual 1-hour refresher would indicate approximately 43 seconds per slide. Thus, less than 5 minutes per year officers are trained specifically on vehicle pursuits. Some of the slides also appear to have videos embedded with unknown lengths. Plaintiffs contend this is inadequate training which had a direct result on the Defendants lack of understanding and inability to follow basic officer training. This annual training also does not cover any use of force related pursuit intervention techniques. In other words, inadequate training. The annual pursuit-specific training fails to meet the minimum guidelines established by Penal Code §13519.8. This training does not cover the number of units permitted; does not cover the responsibilities of the involve |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | | | units; does not cover driving with due regard (only that it is important); does not cover driving helicopter assistance; does not cover communication; does not cover capture of suspects; supervisor responsibilities; does not cover blocking, ramming, boxing, and roadblock procedures; does not cover speed limits; does not cover interjurisdictional considerations; and does not cover reporting and post-pursuit analysis. Thus, Defendants policy and training is inadequate, unconstitutional, and insufficient to support immunity. |
| **45.** | Plaintiffs defer to the following records as showcasing the facts they know and the facts upon which their claims are based: "Defendants' Disclosures and Discovery Responses; County of San Bernardino investigatory records; California Highway Patrol investigatory records; statements of Defendant Officers." | Ex. C, No. 1, 6, 20<br>Ex. D, No. 1, 6, 20<br>Ex. E, No. 1, 6, 20<br>Ex. F, No. 1, 6, 20 | **Undisputed** that this was part of Plaintiffs' responses to Defendants' extreme overbroad and vague discovery requests. |
| **46.** | Plaintiffs allege that Officers "used deadly force in their improper | Ex. A, ¶ 34, 50-52<br>Ex. C, No. 1, 6 | **Undisputed** as a portion of Plaintiffs' allegations. |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | tactics and by vehicle intervention techniques." | Ex. D, No. 1, 6<br>Ex. E, No. 1, 6<br>Ex. F, No. 1, 6 | |
| **47.** | To support their first claim, Plaintiffs specifically claim that Officers "escalated the situation when they unreasonably used their patrol vehicles to forcibly strike the vehicle occupied by but not driven by Decedents." | Ex. A, ¶ 34, 50-52<br>Ex. C, No. 1<br>Ex. D, No. 1<br>Ex. E, No. 1<br>Ex. F, No. 1 | **Undisputed** as a portion of Plaintiffs' allegations.<br>**Disputed** that this is limited to Plaintiffs' first claim only. |
| **48.** | To support their second claim, Plaintiffs specifically claim that Officers "intentionally used force…against Decedents, causing their deaths" and failed to give verbal warnings. | Ex. A, ¶ 34, 62-64<br>Ex. C, No. 1<br>Ex. D, No. 1<br>Ex. E, No. 1<br>Ex. F, No. 1 | **Undisputed** as a portion of Plaintiffs' allegations.<br>**Disputed** that this is limited to Plaintiffs' second claim only. |
| **49.** | To support their third claim for *Monell* policy liability, Plaintiffs allege that the City has policies including using | Ex. A, ¶ 34, 76-81<br>Ex. C, No. 6, 20<br>Ex. D, No. 6, 20 | **Undisputed** as a portion of Plaintiffs' allegations. |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| | excessive force on unarmed, non-risk suspects, failing to train or discipline Officers, and maintaining a policy of inaction. | Ex. E, No. 6, 20<br>Ex. F, No. 6, 20 | |
| **50.** | To support their fourth claim for *Monell* failure to train liability, Plaintiffs allege the City failed to train Officers on how to handle use of force in particular against persons in a vehicle, unreasonable stop of a vehicle, and tactical communication and position. | Ex. A, ¶ 34, 90-91<br>Ex. C, No. 6, 20<br>Ex. D, No. 6, 20<br>Ex. E, No. 6, 20<br>Ex. F, No. 6, 20 | **Undisputed** as a portion of Plaintiffs' allegations. |
| **51.** | To support their fifth claim for *Monell* ratification, Plaintiffs allege a final policymaker determined that acts of the Officers were within policy and that a policymaker has a history of ratifying unconstitutional use of force. | Ex. A, ¶ 34, 99-101, 103<br>Ex. C, No. 6, 20<br>Ex. D, No. 6, 20<br>Ex. E, No. 6, 20<br>Ex. F, No. 6, 20 | **Undisputed** as a portion of Plaintiffs' allegations. |

| Ds' SUF No. | Defendants' Facts | Defendants' Supporting Evidence | Plaintiffs' Response |
|---|---|---|---|
| **52.** | Plaintiffs sixth, seventh, and eighth claims stem from the same allegations and injury underlying the first and second causes of action. | Ex. A, ¶ 34, 109-112, 120-123, 133-137<br>Ex. C, No. 1, 20<br>Ex. D, No. 1, 20<br>Ex. E, No. 1, 20<br>Ex. F, No. 1, 20 | **Undisputed** as claims having similar factual allegations all from the same incident.<br>**Disputed** as overbroad, incomplete and calling for legal conclusion. |

## PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| **Introduction to the Scene** | | |
| **1.** | This fatal vehicle collision occurred on February 3, 2024, at approximately 10:44 p.m. | **Exh. 1, Zozaya Depo** at 6:8-21<br>**Exh. 4, Terwilliger Depo** at 8:7-10, 8:20-22<br>**Exh. 3, Garcia Depo** at 11:1-18 |
| **2.** | Despite some illumination, it was still dark at the time and roads were wet from light rain. | **Exh. 1, Zozaya Depo** at 6:22-23, 27:9-10, 27:14-16<br>**Exh. 4, Terwilliger Depo** at 8:23-25, 9:1-14<br>**Exh. 3, Garcia Depo** at 27:9-13 |
| **3.** | Traffic was light during the entire incident and there were no pedestrians around. | **Exh. 1, Zozaya Depo** at 39:20-25<br>**Exh. 2, Precie Depo** at 28:17-18 |
| **4.** | The subject vehicle was a white Nissan driven by 16-year-old Giovanni Bonilla, with 15-year-old Robert Rias as front passenger, 15-year-old Dominic Adams Jr. as the right-rear passenger, and 14-year-old Omari Pitts as the left-rear passenger. | **Exh. 3, Garcia Depo** at 29:20-24<br>**Exh. 7, Martin Depo** at 40:6-10<br>**Exh. 8, MAIT Report** at COF 12, 16 |
| **5.** | Partner Officers Zozaya had one year and two months experience as a police officer at the time while Precie had only been an officer for 6 months and was still on probation. | **Exh. 1, Zozaya Depo** at 7:8-9, 13:25-14:2<br>**Exh. 2, Precie Depo** at 8:25-9:4 |
| **6.** | Zozaya was driving the Ford Explorer, Police Interceptor patrol vehicle and was responsible for radio transmissions. | **Exh. 1, Zozaya Depo** at 7:2-6, 7:16-22, 18:3-5, 19:16-18<br>**Exh. 2, Precie Depo** at 40:13-15 |
| **7.** | Surveillance video shows the Nissan eastbound on Valley passing Cherry and Zozaya's vehicle westbound on Valley at the Cherry stoplight, and when the officers see the Nissan passing, Zozaya flashed his spotlight then made a U-turn and speed forward to follow the Nissan. | **Exh. 1, Zozaya Depo** at 59:11-21, 60:6-19, 61:3-5, 61:13-20, 63:8-11<br>**Exh. 2, Precie Depo** at 40:21-25, 66:25-67:16, 68:5-9, 68:20-69:9<br>**Exh. 17, Valley/Cherry Video** at 00:00-00:33 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| **8.** | However, that is where the officers' stories already deviate from objective evidence as Zozaya claimed that he never used a spotlight when he saw the Nissan, and both claimed they first saw the Nissan eastbound on Valley approaching Catawba while they were directly behind the Nissan. | **Exh. 1, Zozaya Depo** at 14:21-15:9, 17:23-25<br>**Exh. 2, Precie Depo** at 17:10-18, 17:24-18:8 |
| | **Zozaya's Vehicle Pull-Over** | |
| **9.** | The Nissan was being driven safely and within the speed limit at the time. | **Exh. 1, Zozaya Depo** at 43:13-20<br>**Exh. 2, Precie Depo** at 20:18-23 |
| **10.** | Precie claimed to not know the color of the shirt the passenger was wearing and could not identify his race but knew right-rear passenger was a teenage male juvenile. | **Exh. 2, Precie Depo** at 19:2-3, 19:11-15, 19:19-24 |
| **11.** | Zozaya claimed he could not tell the age, race or gender, or which direction the passenger was looking, only that he was wearing dark clothing and possibly had a cell phone in his hand, as it was too dark to tell. | **Exh. 1, Zozaya Depo** at 15:18-20, 15:22-16:4, 16:13-15, 16:24-17:1 |
| **12.** | Prior to initiating the stop, Precie told Zozaya about the right-rear juvenile and expressed concern for his safety and had no other communication besides an agreement to make the traffic stop. | **Exh. 2, Precie Depo** at 24:10-23 |
| **13.** | Zozaya activated his emergency lights and sirens to initiate the traffic stop eastbound on Valley around Catawba reportedly for an unrestrained passenger and failure to signal when changing lanes—minor traffic violations. | **Exh. 1, Zozaya Depo** at 18:6-18, 19:2-10, 26:7-12<br>**Exh. 2, Precie Depo** at 23:1-4, 23:8-11<br>**Exh. 7, Martin Depo** at 18:20-19:5, 50:19-23 (no information the vehicle was stolen, no wants or warrants, no serious or violent crime, no information they had weapons) |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | | **Exh. 20, Valley/Catawba Video** at 00:01-00:06<br>**Exh. 21, Valley/Catawba Video** at 00:01-00:03 |
| **14.** | The Vehicle Code violations subject to the vehicle stop were mere infractions, non-arrestable offenses, minor offenses of not signaling and not wearing a seatbelt. | **Exh. 2, Precie Depo** at 29:4-17 |
| **15.** | However, Bonilla failed to yield and Zozaya immediately initiated the pursuit while the juvenile was still believed to be unrestrained. | **Exh. 1, Zozaya Depo** at 12:7-15, 27:1-5, 26:7-12<br>**Exh. 2, Precie Depo** at 21:2-9, 21:21-24, 25:1-4<br>**Exh. 7, Martin Depo** at 31:12-25<br>**Exh. 20, Valley/Catawba Video** at 00:01-00:06<br>**Exh. 21, Valley/Catawba Video** at 00:01-00:03<br>**Exh. 22, Valley/Citrus Video** at 00:51-00:55 |
| | **Zozaya had Options** | |
| **16.** | Zozaya could have initiated an alternative pursuit mode including either "Tracking Mode" or "Surveillance Mode" which encourages self-termination and safe driving. | **Exh. 7, Martin Depo** at 58:22-24<br>**Clark Decl** ¶10 |
| **17.** | According to policy, "Optional Pursuit Modes" including tracking and surveillance modes, "are intended to enhance safety to the public and officers involved in a vehicle pursuit, by encouraging a fleeing suspect to operate his or her vehicle in a safe manner, and/or terminate the pursuit." | **Exh. 1, Zozaya Depo** at 41:2-16 |
| **18.** | "Optional Pursuit Modes" minimize danger by causing the subject to slow | **Exh. 1, Zozaya Depo** at 32:3-8, 41:25-42:4 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | down or terminate the pursuit on their own. | |
| **19.** | "Tracking Mode" allows officers fall back but continue in pursuit with lights and sirens with airship support. | **Exh. 1, Zozaya Depo** at 38:8-15 |
| **20.** | The purpose of "Tracking Mode" is that it is a safer option when the subject is driving at unsafe speeds and it is dangerous to follow close. | **Exh. 1, Zozaya Depo** at 39:7-16 |
| **21.** | "Surveillance Mode" allows officers to fall back and terminate pursuit while an airship maintains visual observation on the subject vehicle, broadcasting the speed and direction. | **Exh. 1, Zozaya Depo** at 31:13-22 |
| **22.** | The purpose of "Surveillance Mode" is that when the officers fall back, the subject vehicle will slow down, and the officers will reengage the subject vehicle when safe after they stop with the assistance of air support. | **Exh. 1, Zozaya Depo** at 31:23-32:2, 32:9-19, 33:21-34:3 |
| **23.** | Zozaya does not know the policy for initiating Surveillance Mode. | **Exh. 1, Zozaya Depo** at 33:7-11 |
| **24.** | Fontana had automatic license plate readers stationed all around the City including on officer vehicles. | **Exh. 1, Zozaya Depo** at 21:12-17<br>**Exh. 2, Precie Depo** at 29:18-30:1<br>**Exh. 6, Macias Depo** at 37:13-15, 37:22-38:2 |
| **25.** | Dispatch also had the ability to access and manipulate (e.g., move and zoom) live feed cameras, including the intersection of Valley and Cypress. | **Exh. 1, Zozaya Depo** at 22:19-23:18 |
| | **Zozaya's Reckless Pursuit** | |
| **26.** | Zozaya failed to balance the risks of the pursuit with the risks of not apprehending the suspect immediately and should not have initiated a vehicle | **Exh. 1, Zozaya Depo** at 26:13:16 (trained to assess certain factors to determine whether or not to initiate a vehicle pursuit); 26:17-25 (knew the roads were wet, |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | pursuit under the totality of the circumstances. | assumed the passenger was unrestrained and in an unsafe seated position, and knew the pullover was for mere minor Vehicle Code infractions); 20:4-8 (Zozaya did not recognize any of the subjects and knew nothing about them); 28:5-8, 40:1-7 (Zozaya knew a passenger hanging out the window during a high-speed pursuit would be dangerous for the passengers).<br>**Exh. 7, Martin Depo** at 20:2-14, 49:6-14<br>**Clark Decl.** ¶¶7-9 (Vehicle pursuits should only occur when their risks are clearly outweighed by the risk of not apprehending the suspect) |
| **27.** | As soon as the Nissan took off, Zozaya broadcasted that he initiated a pursuit. | **Exh. 1, Zozaya Depo** at 12:7-15, 27:1-5 |
| **28.** | The Nissan stayed in Lane 1 during the pursuit. | **Exh. 1, Zozaya Depo** at 40:8-14 |
| **29.** | The pursuit increased to unsafe speeds over 80 mph with which Zozaya kept pace. | **Exh. 1, Zozaya Depo** at 11:10-11, 44:4-14<br>**Exh. 2, Precie Depo** at 25:20-23, 26:2-4<br>**Exh. 6, Macias Depo** at 36:17-20<br>**Exh. 7, Martin Depo** at 53:18-21, 54:25-55:15 |
| **30.** | Zozaya had no verbal communication with Precie, Bautista, Terwilliger, Garcia, or the Sergeant, never called for backup and never asked for assistance. | **Exh. 1, Zozaya Depo** at 42:8-11, 54:5-19 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| **31.** | Zozaya was trained to call for air support when initiating a vehicle pursuit but failed to do so. | **Exh. 1, Zozaya Depo** at 30:17-20, 30:21-22 |
| **32.** | Nevertheless, Zozaya knew that backup and air support were en route. | **Exh. 1, Zozaya Depo** at 30:23-31:2, 42:15-17<br>**Exh. 2, Precie Depo** at 31:8-12<br>**Exh. 4, Terwilliger Depo** at 28:14-16 |
| **33.** | Though not a dangerous pursuit to bystander vehicles with no collisions, and no vehicle having to slam on the brakes, swerve out of the way, or honk their horn. | **Exh. 1, Zozaya Depo** at 19:11-13, 19:17-25<br>**Exh. 2, Precie Depo** at 26:5-11; 28:25-29:3 (Precie does not recall the Nissan running any red lights); 43:7-12 (Precie's description of the pursuit was simply "very, very short" and nothing else); 43:14-21; 28:22-24 (Nissan did not run a stop sign) |
| **34.** | Zozaya failed to apply the continued balancing test and should have terminated the vehicle pursuit under the totality of the circumstances. | **Exh. 7, Martin Depo** at 53:18-21, 54:25-55:15, 56:12-20<br>**Clark Decl.** ¶¶7-9 |
| **35.** | Zozaya and Precie never got the license plate and never put out the reason for the stop. | **Exh. 1, Zozaya Depo** at 24:11-16<br>**Exh. 2, Precie Depo** at 31:5-7, 34:1-3 |
| **36.** | It was important for Zozaya as the primary vehicle to inform other officers and dispatch of pertinent information about the pursuit including the direction. | **Exh. 1, Zozaya Depo** at 42:5-7, 52:4-11 |
| **37.** | Thus, Zozaya broadcasted that the pursuit was on Valley, initiated passing Catawba, and was high speed, that he was trying to get a plate number; the starting mileage; that the pursuit was "Eastbound Valley, passing Oleander"; the pursuit was high speed; traffic is | **Exh. 1, Zozaya Depo** at 52:12-18, 53:9-11. 53:16-18<br>**Exh. 3, Garcia Depo** at 82:14-17, 83:9-20, 83:24-84:10, 84:20-85:1, 85:8-21, 85:25, 86:13-16, 86:20-24, 110:18-24 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | light; "Coming up to Cypress"; and "Eagle 1 launching." | **Exh. 16, Radio Traffic** at 00:00-00:33. |
| **38.** | Only Zozaya's vehicle was in the pursuit lasting approximately 23 seconds for 0.65 miles. | **Exh. 1, Zozaya Depo** at 53:2-8<br>**Exh. 2, Precie Depo** at 34:6-16<br>**Exh. 3, Garcia Depo** at 36:4-6<br>**Exh. 4, Terwilliger Depo** at 13:5-6 |
| | **Garcia Inconspicuously Staged** | |
| **39.** | Officers Garcia and Terwilliger were in a two-man vehicle parked at the northeast corner of a thrift store parking lot at the southeast corner of Valley and Cypress with Officer Baustista in a separate vehicle. | **Exh. 3, Garcia Depo** at 41:16-20, 42:25-43:7, 44:11-13<br>**Exh. 4, Terwilliger Depo** at 15:20-16:1, 18-21-24, 20:7-21 (Depo Exhibit 6 shows the location where Officer Garcia was parked marked with a circle); 16:8-9, 26:17-20 (Bautista faced north while Garcia faced south) |
| **40.** | Garcia was the driver of the Ford Explorer SUV patrol vehicle. | **Exh. 3, Garcia Depo** at 27:14-20<br>**Exh. 4, Terwilliger Depo** at 9:23-25 |
| **41.** | Garcia knew from the radio that there was a highspeed pursuit initiated eastbound in the area of Valley and Catawba of a white sedan, that Zozaya was trying to get a plate, traffic was light, that air support was responding, and that it was moving towards his direction "Eastbound Valley, passing Oleander," and "Coming up to Cypress." | **Exh. 3, Garcia Depo** at 36:21-24, 38:10-12, 45:1-13, 82:14-17, 83:9-20, 83:24-84:10, 84:20-85:1, 85:8-21, 85:25, 86:13-16, 86:20-87:8, 110:18-24<br>**Exh. 4, Terwilliger Depo** at 16:2-7, 20:22-21:1<br>**Exh. 16, Radio Traffic** at 00:00-00:33 |
| **42.** | It was approximately 31 seconds from Zozaya's first broadcast to broadcasting Garcia's collision with the Nissan. | **Exh. 3, Garcia Depo** at 83:9-13, 87:12-18<br>**Exh. 16, Radio Traffic** at 00:00-00:33 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| **43.** | It was approximately 8 seconds from Zozaya broadcasting "Coming up to Cypress" to broadcasting Garcia's collision with the Nissan. | **Exh. 3, Garcia Depo** at 86:13-16, 87:12-18<br>**Exh. 16, Radio Traffic** at 00:25-00:33 |
| **44.** | It is approximately three quarters of a mile from Catawba to Cypress and a quarter of a mile from Oleander to Cypress. | **Exh. 4, Terwilliger Depo** at 21:7-11, 27:15-17 |
| **45.** | Garcia had no information that the Nissan was in any collision and there were no other collisions during the pursuit. | **Exh. 1, Zozaya Depo** at 46:2-5<br>**Exh. 2, Precie Depo** at 28:19-21<br>**Exh. 3, Garcia Depo** at 25:24-26:3 |
| **46.** | Garcia had no information about the occupants of the Nissan and did not know what they were thinking and had no information that the occupants of the Nissan ever physically injured or verbally threatened anybody. | **Exh. 3, Garcia Depo** at 23:16-19, 23:24-24:12 |
| **47.** | Garcia did not know what initiated the pullover besides assuming it was some unknown minor traffic violation. | **Exh. 3, Garcia Depo** at 24:21-25:8 |
| **48.** | According to policy, vehicle pursuits are limited to two officer vehicles (a primary and secondary) and a supervisor unless more are requested. | **Exh. 1, Zozaya Depo** at 43:3-12<br>**Exh. 2, Precie Depo** at 32:3-9 |
| **49.** | Bautista and the Sergeant were en route. | **Exh. 2, Precie Depo** at 31:13-20<br>**Exh. 4, Terwilliger Depo** at 16:8-9 |
| **50.** | No officer requested backup for the pursuit, no officer requested Garcia to join the pursuit, and Garcia did not request to join. | **Exh. 4, Terwilliger Depo** at 28:20-21, 28:25-29:2<br>**Exh. 2, Precie Depo** at 33:7-9<br>**Exh. 3, Garcia Depo** at 26:4-6, 26:21-23 |
| **51.** | Garcia knew one option was to just wait in the parking lot. | **Exh. 3, Garcia Depo** at 38:20-23<br>**Exh. 7, Martin Depo** at 62:6-13 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| **52.** | Garcia, as a unit not involved in the pursuit, should have remained in his assigned area and should not have become involved unless directed by a supervisor pursuant to policy. | **Clark Decl** ¶11 |
| **53.** | Alternatively, pursuant to training in "Parallelling", Garcia could have followed on side streets in the event that the pursuit ends to be able to respond quickly. | **Exh. 1, Zozaya Depo** at 31:3-12 |
| **Garcia Intentionally Collides into the Nissan and Drives Without Due Regard** | | |
| **54.** | Nevertheless, within a few seconds of receiving the initial radio call Garcia decided to respond without informing dispatch, supervisors, or Zozaya. | **Exh. 2, Precie Depo** at 33:4-6 (Zozaya and Precie did not know that Garcia and Terwilliger were en route)<br>**Exh. 3, Garcia Depo** at 47:3-6<br>**Exh. 4, Terwilliger Depo** at 29:3-6, 29:8-18 |
| **55.** | Garcia made a U-turn then drove north to the pulled to the apron of the driveway intending to apprehend the subject vehicle by responding to the area it was going. | **Exh. 3, Garcia Depo** at 27:3-5, 37:10-19, 37:25-38:9, 49:8-11<br>**Exh. 4, Terwilliger Depo** at 13:7-13, 16:9-12 |
| **56.** | Bautista's vehicle was going north to the apron of the driveway, stopped, cleared the intersection, yielded the right-of-way to a passing truck, then turned left onto westbound Valley when it was safe to do so. | **Exh. 2, Precie Depo** at 61:8-13<br>**Exh. 3, Garcia Depo** at 87:19-22, 88:23-89:13, 89:17-20<br>**Exh. 7, Martin Depo** at 31:12-25<br>**Exh. 4, Terwilliger Depo** at 50:8-15, 50:25-51:5<br>**Exh. 25, Valley/Cypress Video** at 00:20-00:33 (22.44.01.411-22.45.13.918) |
| **57.** | After Bautista was already on westbound Valley, Garcia drove north to the apron of the driveway. | **Exh. 2, Precie Depo** at 61:19-25<br>**Exh. 3, Garcia Depo** at 89:21-90:3 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | | **Exh. 4, Terwilliger Depo** at 51:6-9<br>**Exh. 25, Valley/Cypress Video** at 00:30-00:33 (22.45.11.314-22.45.14.483) |
| **58.** | Garcia slowed to the apron of the driveway but did not come to a full stop. | **Exh. 3, Garcia Depo** at 52:11-13 (Garcia does not recall if he stopped before turning), 90:7, 90:12-24, 91:4-14<br>**Exh. 4, Terwilliger Depo** at 21:20-22 (Terwilliger does not recall if Garcia stopped before turning), 25:6-9, 51:13-19, 51:25-52:8<br>**Exh. 20, Valley/Cypress Video** at 00:33-00:36 (22.45.14.483-22.45.17.384)<br>**Lee Decl ¶¶**6, 12 |
| **59.** | When Garcia was still at apron the Nissan entered the Valley/Cypress intersection. | **Exh. 2, Precie Depo** at 62:15-63:2<br>**Exh. 3, Garcia Depo** at 91:4-14, 91:23-92:2<br>**Exh. 20, Valley/Cypress Video** at 00:34-00:36 (22.45.15.584-22.45.15.784) |
| **60.** | At that moment, Bautista activated his emergency lights. | **Exh. 2, Precie Depo** at 62:15-18<br>**Exh. 3, Garcia Depo** at 92:18-93:1<br>**Exh. 7, Martin Depo** at 30:9-12 (approximately 3 seconds from overhead lights to collision)<br>**Exh. 20, Valley/Cypress Video** at 00:34 (22.45.15.584) |
| **61.** | Garcia was still at the apron when the Nissan passed the east crosswalk of Cypress in Lane 1. | **Exh. 2, Precie Depo** at 63:6, 64:1-5<br>**Exh. 3, Garcia Depo** at 93:9-14 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | | **Exh. 4, Terwilliger Depo** at 52:15-18<br>**Exh. 5, Wolff Depo** at 43:13-21<br>**Exh. 9, Scene Photos** at 1-3<br>**Exh. 20, Valley/Cypress Video** at 00:36 (22.45.16.483) |
| **62.** | To clear an intersection, an officer must check if any cars are immediately preventing a turn. | **Exh. 3, Garcia Depo** at 52:15-18<br>**Exh. 7, Martin Depo** at 60:4-12 |
| **63.** | At the apron, Garcia and Terwilliger saw the Nissan east of the intersection on Valley, which is a flat and straight road making it easy to see long distances. | **Exh. 2, Precie Depo** at 43:22-44:6<br>**Exh. 3, Garcia Depo** at 52:22-23<br>**Exh. 4, Terwilliger Depo** at 22:12-13, 23:17-23<br>**Exh. 11, Marked Map** at 1.<br>**Exh. 20, Valley/Cypress Video** at 00:36 (22.45.16.483) |
| **64.** | At the apron of the driveway, seconds prior to the collision, Garcia saw the Nissan headlights in Lane 1 and said, "Fuck, there they are." | **Exh. 3, Garcia Depo** at 32:2-4, 32:18-24<br>**Exh. 4, Terwilliger Depo** at 16:11-15, 21:16-25, 25:24-26:3 (marked map Exhibit 6, 26:7-8)<br>**Exh. 5, Wolff Depo** at 189:5-8, 189:11-14<br>**Exh. 11, Marked Map** at 1.<br>**Exh. 20, Valley/Cypress Video** at 00:36-37 (22.45.16.483-22.45.17.284) |
| **65.** | There was no other communication between Garcia and Terwilliger. | **Exh. 4, Terwilliger Depo** at 26:10-15, 26:24-27:5 |
| **66.** | Garcia intentionally removed his foot from the brakes, intentionally placed his foot on the accelerator, and intentionally depressed the accelerator to 100% as he accelerated out from the apron from 5.2 | **Exh. 3, Garcia Depo** at 30:16-21, 49:12-17<br>**Exh. 5, Wolff Depo** at 119:25-120:11 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | to 23.9 mph, and with an engine rpm from 812 to 4,788. | **Exh. 8, MAIT Report** at COF 144<br>**Exh. 20, Valley/Cypress Video** at 00:36-37 (22.45.16.483-22.45.17.284) |
| **67.** | Garcia did not make any effort to avoid the collision including by honking the horn or swerving. | **Exh. 2, Precie Depo** at 38:16-18<br>**Exh. 3, Garcia Depo** at 31:13-23, 49:8-10<br>**Exh. 4, Terwilliger Depo** at 23:24-24:3 |
| **68.** | Instead, Garcia initiated a left turn and then disengaged from it into a straight path of travel, quickly manipulated the steering wheel slightly left and right, until he collided the front end of his SUV with the right passenger side of the Nissan. | **Exh. 2, Precie Depo** at 49:15-25 (Garcia pulled in front of the Nissan then the Nissan started to go left).<br>**Exh. 5, Wolff Depo** at 120:16-25 (between 1.6 and 1.4 seconds prior to the collision, Garcia drastically changes his steering input from 143 to 20 degrees which is straitening his tires); 121:1-8 (Garcia returns the tires to center at 1.2 seconds prior to the collision effectively driving straight); 121:9-22 (1 second prior approximately up to the collision, Garcia jerks the vehicle to the left again); 136:12-137:10; 138:25-139:15<br>**Exh. 8, MAIT Report** at COF 144 |
| **69.** | Garcia's SUV was generally oriented north and Bonilla's Nissan was still oriented east at the time of the impact. | **Exh. 2, Precie Depo** at 65:24-66:20 (at 37 seconds of the video, the Garcia SUV's white driver's side is visible above the "V" on screen)<br>**Exh. 4, Terwilliger Depo** at 49:4-50:3 (video shows the |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | | incident just before the collision at the top left-land corner of the screen and the general location of the collision)<br>**Exh. 5, Wolff Depo** at 156:20-157:2, 189:15-190:25 (Garcia wide white door is visible and both Nissan red taillights visible); 191:1-12 (collision occurred within a second of Bonilla's Nissan leaving view on video)<br>**Exh. 9, Scene Photos** at 1-3<br>**Exh. 10, Wolff Diagram** at 1<br>**Exhs. 30**, **31**, **32**, and **33** (reconstructions showing collision in their entirety) |
| **70.** | The collision occurred in Lane 1 of eastbound Valley. | **Exh. 1, Zozaya Depo** at 6:24-7:1<br>**Exh. 2, Precie Depo** at 37:9-11<br>**Exh. 3, Garcia Depo** at 94:6-9<br>**Exh. 4, Terwilliger Depo** at 49:4-50:3 (video shows the incident just before the collision at the top left-land corner of the screen and the general location of the collision); 53:10-13 (at 37 seconds of the video, the Nissan is seen in the Number 1 lane eastbound); 53:18-23 (at 37 seconds, the white door of Officer Garcia's vehicle is seen above the "A" and the "L" on screen); 54:5-8 (at 38 seconds of the video, the Nissan is visible behind the work "Valley.")<br>**Exh. 5, Wolff Depo** at 189:15-190:25 (Garcia wide white door |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | | is visible and both Nissan red taillights visible); 191:1-12 (collision occurred within a second of Bonilla's Nissan leaving view on video)<br>**Exh. 9, Scene Photos** at 1-3<br>**Exh. 20, Valley/Cypress Video** at 2024-02-03, 22.45.16.483–22.45.18.620<br>**Exhs. 30**, **31**, **32**, and **33** (reconstructions showing collision in their entirety)<br>**Lee Decl.** ¶5 |
| **71.** | Garcia's larger and heavier SUV collided so violently into the Nissan it collapsed the passenger compartment intruding into the passenger compartment and into the two boys sitting on the passenger side, then propelled the Nissan northeast into two parked vehicles. | **Exh. 4, Terwilliger Depo** at 32:17-22, 160:6-13<br>**Exh. 5, Wolff Depo** at 158:14-19, 162:3-6, 162:17-19, 163:6-8, 164:1-8, 164:23-165:1, 178:10-17<br>**Exh. 9, Scene Photos** at 1-3<br>**Exh. 12, Nissan Photo** at 1<br>**Exhs. 30**, **31**, **32**, and **33** (reconstructions showing collision in their entirety) |
| **72.** | Thereafter, no officer attempted to render medical aid to the kids and never attempted to check their pulse or assess the three passenger kids who eventually died. | **Exh. 2, Precie Depo** at 55:5-11, 55:18-23<br>**Exh. 8, MAIT Report** at COF 16<br>**Exh. 12, Nissan Photo** at 1 |
| **73.** | Garcia's collision also caused Terwilliger serious injury, requiring medical leave for a year, and having to medically retire. | **Exh. 4, Terwilliger Depo** at 17:9-18:14, 35:5-7, 35:22-25<br>**Exh. 7, Martin Depo** at 40:11-14 |
| | **Garcia Drove with Reckless Disregard to the Life and Safety of the Passengers** | |
| **74.** | Garcia drove recklessly and without due regard, and in violation of basic officer | **Clark Decl** ¶16 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | training, policy, and the Rules of the Road. | |
| **75.** | Garcia was in control of the speed and direction of movement of his SUV. | **Exh. 1, Zozaya Depo** at 28:21-25<br>**Exh. 3, Garcia Depo** at 73:14-17 |
| **76.** | Officers are required to follow the Vehicle Code unless responding with lights and sirens to an emergency situation. | **Exh. 2, Precie Depo** at 28:3-10<br>**Exh. 3, Garcia Depo** at 69:16-19 |
| **77.** | Having emergency lights on makes the patrol vehicle more visible at night. | **Exh. 5, Wolff Depo** at 101:17-20 |
| **78.** | Garcia failed to activate his emergency lights and siren. | **Exh. 1, Zozaya Depo** at 49:20-22<br>**Exh. 3, Garcia Depo** at 55:16-19<br>**Exh. 4, Terwilliger Depo** at 29:19-30:3, 53:24-54:1 |
| **79.** | Using a blinker communicates the driver's intent to turn in a particular direction and helps other drivers assess whether they need to slow down or move. | **Exh. 5, Wolff Depo** at 101:21-102:3 |
| **80.** | Failure to signal is a violation of the Vehicle Code and an unsafe turning movement, worthy of initiating a traffic stop, even when there is no collision. | **Exh. 1, Zozaya Depo** at 18:6-18, 19:2-13<br>**Exh. 2, Precie Depo** at 27:25-28:2 |
| **81.** | Garcia failed to signal, which is a Vehicle Code violation. | **Exh. 5, Wolff Depo** at 102:4-6<br>**Exh. 25, Valley/Cypress Video** at 00:30-00:38 |
| **82.** | Garcia failed to come to a complete stop before turning, which is a Vehicle Code violation. | **PAMF** 58<br>**Clark Decl.** ¶20<br>**Lee Decl.** ¶¶6, 12 |
| **83.** | Officers are required to wear a seatbelt in a moving vehicle while on duty. | **Exh. 2, Precie Depo** at 27:16-18<br>**Exh. 4, Terwilliger Depo** at 44:15-25 (Vehicle Code Section 27215.5 states that officers are required to wear a seatbelt while operating a motor vehicle); 45:1-8 (policy requires officers |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | | to wear a seatbelt while operating a vehicle on duty)<br>**Exh. 6, Macias Depo** at 30:5-22, 31:15-23 (pursuant to policy and Vehicle Code §27315.5, officers must wear a seatbelt when in the line of duty) |
| **84.** | Garcia failed to wear a seatbelt and failed to ensure Terwilliger was wearing a seatbelt, which is a Vehicle Code violation and a violation of policy. | **Exh. 2, Precie Depo** at 27:19-21<br>**Exh. 3, Garcia Depo** at 76:16-10<br>**Exh. 4, Terwilliger Depo** at 31:22-32:2, 45:9-14<br>**Exh. 6, Macias Depo** at 31:24-32:4 (driver is required to ensure that all other occupant officers are also properly restrained) |
| **85.** | The Vehicle Code and policy require officers to drive with due regard for the safety of others including avoiding a collision, driving safely, and not posing a danger to other motorists. | **Exh. 1, Zozaya Depo** at 55:19-25<br>**Exh. 3, Garcia Depo** at 72:8-13, 72:18-73:12, 78:2-5, 78:13-19<br>**Exh. 4, Terwilliger Depo** at 47:25-48:8<br>**Exh. 6, Macias Depo** at 25:15-20 (Vehicle Code §21056 requires officers to drive with due regard); 25:25-26:4 (pursuit policy also requires officers to drive with due regard) |
| **86.** | Driving with due regard includes assessing the weather conditions including having a larger space between vehicles when roads are wet. | **Exh. 4, Terwilliger Depo** at 48:9-16 |
| **87.** | Driving with due regard also considers the time of day and visibility requiring officers to keep a larger safety cushion. | **Exh. 4, Terwilliger Depo** at 48:17-49:3 |
| **88.** | Defensive driving, pursuant to policy and training, requires officers to maintain a safe space between their | **Exh. 3, Garcia Depo** at 79:7-80:1 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | vehicle and other vehicles, and to maintain a high visual horizon by seeing past what is immediately in front of them and looking into the distance. | |
| **89.** | Garcia admits that when an officer does not comply with safety and defensive driving rules, it could lead to a collision. | **Exh. 3, Garcia Depo** at 76:6-10 |
| **90.** | Making an unsafe left turn into oncoming traffic would be a Vehicle Code violation. | **Exh. 5, Wolff Depo** at 102:10-16 |
| **91.** | To clear for a turn, officers must determine if it is safe to turn without causing a disruption in traffic or collision. | **Exh. 3, Garcia Depo** at 71:16-19 |
| **92.** | Officers must be aware of their surroundings and look out for hazards and dangers well ahead of his vehicle including for the actions of other drives on the road. | **Exh. 3, Garcia Depo** at 69:20-25, 74:23-75:3<br>**Exh. 4, Terwilliger Depo** at 43:10-44:3 (situational awareness is an officer being aware of the situation around him including knowing where partner officers are and where the subject of the call is) |
| **93.** | One responsibility was for Garcia to manage the space between his SUV and the Nissan. | **Exh. 3, Garcia Depo** at 71:9-11, 73:18-21 |
| **94.** | It would be unsafe to turn when there is not enough space because it does not give enough warning to Bonilla. | **Exh. 1, Zozaya Depo** at 19:15-16 |
| **95.** | Another consideration is the approximate speed of the Nissan. | **Exh. 3, Garcia Depo** at 71:12-15 |
| **96.** | Generally, if it is safe to turn, a driver may proceed but if it is not the driver must yield the right-of-way to the vehicle on the road. | **Exh. 3, Garcia Depo** at 70:9-12, 71:20-72:2<br>**Exh. 5, Wolff Depo** at 92:17-24<br>**Exh. 7, Martin Depo** at 31:12-25 |
| **97.** | The Nissan had the right-of-way. | **Exh. 3, Garcia Depo** at 70:20-24 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | | **Exh. 5, Wolff Depo** at 92:6-12 |
| **98.** | Garcia failed to yield the right-of-way, which is a Vehicle Code violation and violation of policy. | **Clark Decl.** ¶¶16, 20<br>**Lee Decl.** ¶12 |
| **99.** | Based on training, officers are required to have their headlights on while in a moving vehicle at night. | **Exh. 2, Precie Depo** at 44:13-20<br>**Exh. 3, Garcia Depo** at 57:9-11<br>**Exh. 4, Terwilliger Depo** at 30:21-23<br>**Exh. 7, Martin Depo** at 23:6-15, 32:1-9, 33:17-34:10, 65:14-20 (appropriate to drive with headlights and Garcia failed to do so) |
| **100.** | Headlights provide visibility of the road and other vehicles or obstacles for the driver and visibility of the vehicle for other drivers. | **Exh. 3, Garcia Depo** at 57:12-25<br>**Exh. 6, Macias Depo** at 62:3-63:8 |
| **101.** | The only time officers are permitted to drive at night without headlights is when there is a safety concern or when trying to be "more inconspicuous" for "tactical reasons." | **Exh. 3, Garcia Depo** at 58:18-59:7<br>**Exh. 4, Terwilliger Depo** at 34:7-19<br>**Exh. 6, Macias Depo** at 64:5-16 (only reason to not activate headlights is trying to conceal your position) |
| **102.** | There was no safety concern that would indicate a need to drive without headlights. | **Exh. 3, Garcia Depo** at 59:8-13 |
| **103.** | Garcia's headlights were off to "blackout" the SUV and trying make himself less visible, trying to be inconspicuous. | **Exh. 2, Precie Depo** at 52:7-10, 58:2-8<br>**Exh. 3, Garcia Depo** at 56:6-9, 60:11-62:1<br>**Exh. 4, Terwilliger Depo** at 30:4-9<br>**Exh. 5, Wolff Depo** at 98:16-23 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | | **Exh. 25, Valley/Cypress Video** at 00:30-00:38 |
| **104.** | Based on training, it is dangerous to drive at night without headlights, and it could cause a collision because the vehicle would be difficult to see. | **Exh. 4, Terwilliger Depo** at 30:24-31:21<br>**Exh. 5, Wolff Depo** at 98:24-99:5<br>**Exh. 6, Macias Depo** at 65:23-66:2 (safety hazard)<br>**Exh. 7, Martin Depo** at 59:12-22 |
| **105.** | If Garcia's headlights were activated, it could have given Bonilla an opportunity to brake at a greater distance. | **Exh. 5, Wolff Depo** at 100:5-12, 100:20-22 |
| **106.** | Garcia's failure to use headlights was a Vehicle Code violation. | **Exh. 5, Wolff Depo** at 102:7-9<br>**Exh. 7, Martin Depo** at 66:1-3 |
| **107.** | Given the lack of headlights and Bautista's blinding emergency lights and headlights, Garcia was difficult to see. | **Exh. 1, Zozaya Depo** at 51:19-52:3, 57:16-21<br>**Exh. 2, Precie Depo** at 39:8-10, 44:10-12, 47:16-18<br>**Exh. 5, Wolff Depo** at 100:13-19<br>**Exh. 7, Martin Depo** at 34:19-35:2 |
| | **Vehicle Intervention was Excessive and Unreasonable Deadly Force** | |
| **108.** | Intentionally using a police SUV to collide with the Nissan, including as an intervention technique such as blocking and ramming, is use of deadly force and requires approval of a supervisor. | **Exh. 3, Garcia Depo** at 76:11-15, 80:24-81:9, 81:23-25, 82:6-13<br>**Exh. 4, Terwilliger Depo** at 45:19-21, 46:5-8, 47:17-19<br>**Exh. 7, Martin Depo** at 42:12-43:8, 66:25-67:22<br>**Clark Decl** ¶¶12, 13, 15, 22 |
| **109.** | Blocking should not be utilized because it is too dangerous and there are safer techniques to stop a fleeing vehicle including a PIT maneuver and spike strips. | **Exh. 4, Terwilliger Depo** at 46:9-24 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| **110.** | Ramming has an even higher standard and requires all other reasonable alternatives must have been exhausted or reasonably appear ineffective before use. | **Exh. 4, Terwilliger Depo** at 47:7-24 |
| **111.** | Officers are trained that deadly force is not authorized merely because a vehicle is fleeing and may only be used when necessary in defense of life. | **Exh. 3, Garcia Depo** at 81:14-17, 91:18-22<br>**Exh. 4, Terwilliger Depo** at 46:25-47:6 |
| **112.** | Garcia's use of deadly force was objectively excessive and unreasonable pursuant to training and policy because the Nissan was not an imminent threat of death or serious bodily injury, had not harmed or threatened to harm anyone, and was suspected of only a minor traffic violation. | **Exh. 6, Macias Depo** at 71:6-18<br>**Exh. 7, Martin Depo** at 42:12-43:8, 44:16-45:8, 46:19-23, 70:1-5<br>**Clark Decl** ¶15 |
| **Defendants' Unconstitutional Training, Practices, and Policies** | | |
| **113.** | Officers are required to know their training and policy. | **Exh. 1, Zozaya Depo** at 54:20-22<br>**Exh. 4, Terwilliger Depo** at 11:13-14 |
| **114.** | Training included tests and certifications to drive a patrol vehicle, tactical driver training, emergency vehicle operations course, and policy review, all where safe driving is supposed to be covered. | **Exh. 3, Garcia Depo** at 66:21-24, 67:2-7, 67:12-24, 68:5-10, 68:12-15, 68:16-18<br>**Exh. 4, Terwilliger Depo** at 11:4-8 |
| **115.** | Officers must follow the rules of the road just like any other licensed driver in California unless there is a specific exception under the Code or they are in violation of law. | **Exh. 1, Zozaya Depo** at 36:13-17, 37:19-22<br>**Exh. 3, Garcia Depo** at 69:11-19<br>**Exh. 4, Terwilliger Depo** at 40:6-12, 41:17-24<br>**Exh. 6, Macias Depo** at 22:12-22, 24:12-14, 25:8-14 |
| **116.** | However, Fontana officers do not know necessary components of training and | **Exh. 1, Zozaya Depo** at 54:23-55:9 (Zozaya is not familiar with Vehicle Code Sections |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | policy due to their lack of adequate training and policies. | 21055 or 21056); 29:10-17 (Zozaya claimed that he was never trained that terminating a pursuit can cause the subject vehicle to slow down); 30:2-11 (Zozaya was never trained that if a subject vehicle thinks they got away, they tend to slow down and drive safer so that they can remain inconspicuous); 35:5-20 and 36:1-6 (Zozaya does not know that officers must use their lights and sirens in order to exceed the speed limit); 56:22-57:11 (Zozaya does not know the rules for painted medians, center-turning lanes, and double-yellow lines); **Exh. 2, Precie Depo** at 44:22-24 (Precie is not sure if the requirement to have headlights on is in FPD policy or training); **Exh. 3, Garcia Depo** at 66:10-16 (Garcia is not sure what the requirements are for officers to know their training and policies with regard to vehicle pursuits); 66:17-20 (according to Garcia, officers are not only "required to have a general knowledge of the policy"); **Exh. 6, Macias Depo** at 45:6-12 (Fontana PMK does not know if failure to disclose facts or use of unreasonable force are cause of discipline); 61:14-22 (Fontana PMK does not know if the policy requires supervisor approval for more than 3 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | | vehicles to be involved in a pursuit); 22:23-23:1 (Fontana PMK cannot confirm without review of the Code if the Vehicle Code requires officers to be in Code 3 for the exception to apply); 24:8-11 (Fontana PMK does not know if there is any FPD training related to Vehicle Code §21055); 26:5-8 (Fontana PMK does not know if the words "due regard" are contained in the policy); 29:16-21, 30:2-3 (Fontana PMK is not familiar with the concept of "space cushion" and FPD has no policy or training related to "space cushion."); 39:19-24 (Fontana PMK is not familiar with the FPD BWC policy for "mandatory, discretionary, and non-permissible" use);<br>**Clark Decl** ¶¶21-22 |
| **117.** | These officers also violated the Vehicle Code and policy repeatedly in this incident due to their lack of adequate training and policies. | **Exh. 1, Zozaya Depo** at 11:3-5 (Zozaya did not activate his body-worn camera during the pursuit);<br>**Exh. 3, Garcia Depo** at 28:23-29:2, 54:18-21 (Garcia was wearing a body-worn camera but does recall activating it despite all it taking is to press a button);<br>**Exh. 4, Terwilliger Depo** at 12:25-13:4 (Terwilliger was wearing a body-worn camera during the incident but never activated it); 40:18-22, 43:2-5 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
| --- | --- | --- |
| | | (Terwilliger is not familiar with the rules for crossing double-yellow lines); 41:25-42:3, 42:8-14 (Terwilliger believes there are times when officers have an exception to following the vehicle code without lights and sirens, like exceeding the speed limit even when not authorized to respond Code 3);<br>**Exh. 6, Macias Depo** at 23:2-5 (Fontan has no policy regarding Vehicle Code §21055); 29:8-15 (Fontana has no policy regarding defensive driving); 31:6-8 (Fontana policy does not define what unusual circumstances would be); 31:9-12 (Fontana has no training to determine what unusual circumstances would be); 33:9-34:5 (no training or guidance for when an officer should use discretion to remove a seatbelt during the conclusion of a vehicle pursuit in anticipation for a foot pursuit); 40:24-41:3 (Fontana policy does not describe when it is mandatory to activate the BWC); 41:4-7 (no training in FPD for when it is mandatory to activate the BWC);<br>**Exh. 6, Macias Depo** at 38:25-39:14 (purpose of the BWC program is to collect evidence for investigations, report writing, to promote accountability and enhance |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | | public trust in officer performance, and to evaluate and improve department training and policies)<br>**Exh. 13, City Response to Adams RFA** No. 2, No. 4, No. 6, No. 8, No. 10, No. 12, No. 13, No. 21, No. 22, No. 23, No. 26, No. 27, No. 30, No. 31, No. 32, No. 36, No. 37, No. 38, No. 41, No. 45, No. 46, No. 49, No. 56, No. 57, No. 58, No. 59, No. 61, No. 62, No. 63, No. 64, No. 66, No. 67, No. 74, No. 75, No. 76, No. 77<br>**Exh. 14, City Response to Mason RFA** No. 2, No. 32, No. 33<br>**Exh. 15, City Response to Adams ROGG** No. 8, No. 9<br>**Clark Decl** ¶¶21-22<br>**PAMF** 7-8, 16, 23, 26, 27, 30-32, 34-35, 50-53, 58, 62-63, 65-68, 72, 74-107, 108-112 |
| **118.** | There is evidence of a custom and practice of inaction and ratification by inaction and practice. | **Exh. 1, Zozaya Depo** at 45:12-14 (no tactical debrief of the incident)<br>**Exh. 2, Precie Depo** at 16:4-19 (no tactical debrief of the incident)<br>**Exh. 3, Garcia Depo** at 17:12-14 (no tactical debrief of the incident)<br>**Exh. 6, Macias Depo** at 52:9-53:1, 54:16-24 (No officer was reprimanded, counseled, retrained, disciplined, caused to |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| | | receive new training, or sat through a tactical debrief as a result of this incident); 53:2-14 (no training memo was sent out to department members as a result of this incident and FPD has no procedure for doing so even after a major incident like this); 57:14-17 (no request for an investigation was made); 36:21-37:2 (Fontana has never found an officer out of policy for violation of the seatbelt policy); 37:3-6 (officers are not investigated as to whether they are wearing a seatbelt)<br>**Exh. 6, Macias Depo** at 65:14-18 (no officer has ever been found to be out of policy for driving at night without headlights)<br>**Exh. 13, City Response to Adams RFA** No. 2, No. 4, No. 6, No. 8, No. 10, No. 12, No. 13, No. 21, No. 22, No. 23, No. 26, No. 27, No. 30, No. 31, No. 32, No. 36, No. 37, No. 38, No. 41, No. 45, No. 46, No. 49, No. 56, No. 57, No. 58, No. 59, No. 61, No. 62, No. 63, No. 64, No. 66, No. 67, No. 74, No. 75, No. 76, No. 77<br>**Exh. 14, City Response to Mason RFA** No. 2, No. 32, No. 33<br>**Exh. 15, City Response to Adams ROGG** No. 8, No. 9<br>**Clark Decl** ¶¶21-22 |

| PSUF No. | Plaintiffs' Facts | Plaintiffs' Supporting Evidence |
|---|---|---|
| **119.** | Fontana failed to investigate this incident and has no procedure to investigate the death of three juveniles from an officer collision. | **Exh. 6, Macias Depo** at 48:14-25, 49:1-25, 50:24-51:4, 52:5-8; 27:18-24 (Fontana PMK does not have the experience to state how he would investigate a fatal collision) |
| **120.** | This incident was only investigated by a third party where there are no Fontana procedures to provide disciplinary action on an officer based on their results. | **Exh. 6, Macias Depo** at 51:10-20 |
| **121.** | The officers gave 10-minute statements at most to investigators over a month after the incident, which were not recorded, and reports of the statements included inaccuracies. | **Exh. 1, Zozaya Depo** at 10:20-22<br>**Exh. 2, Precie Depo** at 13:11-16, 46:8-13<br>**Exh. 4, Terwilliger Depo** at 14:11-15, 15:5-13 |
| **122.** | Garcia did not author a report or conduct a walk-through of the incident with investigators. | **Exh. 3, Garcia Depo** at 12:17-18, 17:6-8 |
| **123.** | Garcia was also in another traffic collision in an intersection while driving a patrol vehicle that caused injury. | **Exh. 3, Garcia Depo** at 5:11-13, 5:22-6:6, 6:13-16, 6:23-7:12 |
| **124.** | Causes for discipline include violation of policy, or any violation of state or local law or regulation, unsatisfactory work performance, violation of ethical rules, concealing incompetent work, failure to disclose or misrepresent material facts, falsification of records, unreasonable force, and failure to observe safety standards. | **Exh. 6, Macias Depo** at 44:11-47:15 |
| **125.** | Garcia was not disciplined or retrained but was allowed to medically retire. | **Exh. 3, Garcia Depo** at 18:1-9, 21:21-23 |