Eugene P. Ramirez (State Bar No. 134865)
*eugene.ramirez@manningkass.com*
Kayleigh Andersen (State Bar No. 306442)
*kayleigh.andersen@manningkass.com*
Eugene Hanrahan (State Bar No. 185826)
*Eugene.Hanrahan@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, CITY OF FONTANA; EDWARD BAUTISTA; JESUS GARCIA; DANIEL PRECIE; BRIAN ZOZAYA

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

DIANA BIAS; TATANISHA PITTS; DOMINIC ADAMS Sr., and BRITTANY MASON,

Plaintiffs,

v.

CITY OF FONTANA; EDWARD BAUTISTA; JESUS GARCIA; DANIEL PRECIE; BRIAN ZOZAYA; and DOES 1-10, inclusive,

Defendants.

Case No. 5:25−cv−00207−JGB−ACCV
District Judge, Jesus G. Bernal
Magistrate Judge, Angela C. C. Viramontes

**[MOTION IN LIMINE NO. 4]**

**NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND OPINIONS OF EXPERT FELIX LEE AND ACCOMPANYING RECONSTRUCTION ANIMATION PURSUANT TO RULE 702 AND DAUBERT; MEMORANDUM OF POINTS AND AUTHORITIES**

*Filed concurrently with (Proposed) Order*

Date: 11/16/2026
Time: 9 a.m.
Crtrm.: 1 (2nd Floor)

**TO THE HONORABLE COURT AND TO ALL PARTIES AND COUNSEL:**

By and through their counsel of record in this action, defendants CITY OF FONTANA; EDWARD BAUTISTA; JESUS GARCIA; DANIEL PRECIE; and

BRIAN ZOZAYA ("Defendants") will move will move in limine for an order to exclude the opinions and testimony of plaintiffs' expert, Dr. Felix Lee at trial because his opinions are based on an erroneous understanding of the evidence which colors the entirety of his opinion, failing to meet the standard set forth in *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). Specifically, Mr. Lee has been asked to opine on, but lacks the relevant foundation, expertise, and methodology to opine on, all of the following:

1. Any testimony or opinions that are based on cumulative/duplicative, speculative information, and/or lack foundation;

2. Any testimony or opinions regarding the accident reconstruction analysis the motor vehicle incident at the center of this case that occurred on February 3, 2024;

3. Any testimony or opinions about the collision reconstruction made by the animation company Fox AE animators;

4. Any testimony or opinions about the speed of the vehicles at time of the incident;

5. Any testimony or opinions about the existence of a "secondary slap;"

6. Any testimony or opinions about the plaintiffs' vehicle positions, number of collisions, and path trajectory at or after impact with the patrol vehicle

This motion is based on all pleadings, records and files in this action, and upon such further oral and documentary evidence as may be presented at the hearing on this motion. This motion is made following conference of counsel over the phone which took place on October 9, 2026 between Kayleigh Andersen and Marcel Sincich

MANNING | KASS

DATED: October 16, 2026

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Eugene P. Hanrahan
Eugene P. Ramirez
Kayleigh A. Andersen
Eugene P. Hanrahan
Attorneys for Defendants, CITY OF FONTANA; EDWARD BAUTISTA; JESUS GARCIA; DANIEL PRECIE; BRIAN ZOZAYA

MANNING | KASS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

By this motion *in limine*, Defendants seek to exclude Mr. Lee's opinions, expert report, and specifically all of the following, at time of trial:

1. Any testimony or opinions that are based on cumulative/duplicative, speculative information, and/or lack foundation;

2. Any testimony or opinions regarding an accident reconstruction analysis the motor vehicle incident at the center of this case that occurred on February 3, 2024;

3. Any testimony or opinions about the collision reconstruction made by the animation company Fox AE animators;

4. Any testimony or opinions about the speed of the vehicles at time of the incident;

5. Any testimony or opinions about the existence of a "secondary slap;"

6. Any testimony or opinions about the plaintiffs' vehicle positions, number of collisions, and path trajectory at or after impact with the patrol vehicle

All of Lee's opinions that relate to the categories above must be excluded as they are unreliable, lack evidentiary support and are speculatory. This does not meet the *Daubert* standard of admissibility. First, the methodology that Lee admits to using to make his report and inform his opinion is based on a crash reconstruction he cannot verify the components and creation of and based on an improper methodology whereby Lee had a foregone conclusion and inputted data and relied upon, crucially, an area of first impact that did not comport with outside and EDR data to form his opinion. Lee lacked the adequate evidentiary support to maintain any conclusions, which are therefore based on speculation and not reflected by the objective data, including the EDR data. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). See also Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Evid. 702.

## II. ***DAUBERT*** THRESHOLD

The trial court serves a gatekeeping function regarding the admissibility of

expert evidence. Fed. R. Evid. Rule 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid, Rule 702 also provides that a witness may be qualified as an expert if "the testimony is based on sufficient facts or data." "Where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question…, the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). If the testimonial evidence fails in this regard, the expert opinion is inadmissible. *Id.*

In applying Rule 702, the court determines whether proffered expert testimony meets the requirements of Rule 702 by a preponderance of the evidence." *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 984 F.Supp.2d 1021,1026 (C.D. Cal. 2013) The offering party must show by a preponderance of the evidence that (1) the expert is qualified to render the opinion; and (2) the opinion offered has adequate factual and scientific support for that opinion. *Daubert*, 509 U.S. at 592-93. "Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). Under Federal Rule of Evidence 702, expert opinion testimony is only admissible in federal court:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (l) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Furthermore, the offering party must show by a preponderance of the evidence that (1) the expert is qualified to render the opinion; and (2) the opinion offered has adequate factual and scientific support for that opinion. In other words, expert

testimony is not admissible if it is speculative. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. *cf. Saelzler v. Advanced Group 400*, 25 Cal.4th 763, 771 (2001) ("proof of causation cannot be based on mere speculation, conjecture and inferences drawn from other inferences to reach a conclusion unsupported by any real evidence, or on an expert's opinion based on inferences, speculation and conjecture").

## III. RELEVANT EXPERT OPINIONS OF FELIX LEE

In his declaration Rule 26 report, Lee opined:

1. The vehicle damage supports an initial collision between the front of the Ford Explorer and right front of the Nissan Sentra. This offset broadside collision would induce a clockwise rotation of the Ford Explorer and counterclockwise rotation of the Nissan Sentra, resulting in a "secondary slap" between the right rear of the Nissan Sentra and left front of the Ford Explorer … After the Nissan and Ford separated from the "secondary slap" contact, the Ford continued to rotate clockwise to its rest position facing northeast. The Nissan continued to rotate counterclockwise in a northeast direction and struck the parked Toyota Corolla, before rolling backwards into a parked Chevy Silverado

2. PC-Crash, a validated momentum and vehicle trajectory software, was then used to reconstruct the collision between the Ford Explorer and Nissan Sentra and to simulate their post-impact trajectories considering the form, location, and degree of vehicle damage, roadway evidence, locations of secondary collisions, vehicle rest positions, and EDR data. The best-fit PC-Crash simulation of the collision and post-collision trajectories is depicted in Figure 2 to Figure 7.

3. The reconstruction indicates the police-determined area of impact in the two-way turn lane is incorrect. It would not be physically possible for the Ford to slide 60' laterally (eastward) upon impact, since the Ford was in motion facing northwest and the Nissan was in motion facing northeast during impact;

4. The reconstruction also indicates the police conclusion that the Nissan

lost control, slid to the right, and the passenger side of the Nissan collided with the front of the Ford in a broadside collision is inconsistent with the physical evidence. The initial impact, according to the reconstruction, was instead between the front left of Ford and right front of Nissan. There was no evidence of the right side of Nissan sliding into the Ford. The northeast orientation of the Nissan during impact is consistent with a leftward swerve applied just prior to impact with the Ford;

5. A broadside collision occurred between the Nissan and Ford (1st impact) a. The front left of the Ford struck the right front of the Nissan b. The area of impact was in the left portion of the eastbound #1 lane c. The Nissan was traveling around 82 to 84 mph during impact with the Ford Explorer traveling around 19 to 20 mph d. The Nissan sustained a longitudinal speed change (ΔV) of 36 mph and a lateral speed change (ΔV) of 44 mph e. The impact orientation of the Nissan (facing northeast, straddling the eastbound #1 lane and two-way turn lane) is consistent with a leftward swerve applied just prior to impact with the Ford;

6. A "secondary slap" contact occurred between the right rear of the Nissan Sentra and left front wheel of the Ford Explorer (2nd impact), depositing a wheel impression onto the Nissan right rear door panel;

[Declaration of Kayleigh A. Andersen ("Andersen Decl."), ¶ 2, Exhibit A-B.]

## IV. FELIX LEE'S OPINIONS MUST BE EXCLUDED FOR IMPROPER METHODOLOGY AND UNRELIABLE RECONSTRUCTION

"Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz-Brault v. Missouri Pacific RR Co.*, 254 F.3d 825, 829 (9th Cir. 2001); *see Daubert*, 509 U.S. at 590.

Lee gives several improper opinions which are based on and an observably flawed and improper methodology that colors and fatally implodes all other opinions since they are hinged on this improper basis. See Fed. Rule. Evid. § 402, 702, 703; *Gen. Elec. co. v. Joiner*, 522 U.S. 136, 146-47 (1997) (holding courts have discretion

to decide that materials relied upon by experts are insufficient to support an expert's conclusions).

**The Unverified, Foundationless, Speculative Reconstruction Video Must Be Excluded**

At the outset, Lee admits that the 'reconstruction' video he relies upon was from a third party animation company. Andersen Decl., ¶ 2, B, Lee Deposition at 15:3-22:20. He did not verify or know whether or not, in reconstructing the crash, the animators received the crucial EDR data; he admits to not knowing what material animators received or used in order to create the animation at all. Therefore, Lee is unable to verify or authenticate the animation or its contents. That Lee signed off on and 'approved' the videos that his animators churned out as truthful or accurate simply because he agreed with their representation is irrelevant and represents Lee adopting whatever simulation fits his theory of the case.

Moreover, Lee is not an animator himself. He is not qualified to render opinions as to incident reconstruction and all that it attempts to depict with respect to the position, speed, and direction of the vehicles involved in the crash. Lee is ***not*** qualified to render, create, or otherwise verify animations reconstructions of the incident but has attempted to do so in this case.

These factual realities, based on Lee's own admissions, evidence that the reconstruction animation upon with Lee bases his opinions is not reliable, lacks foundation, and does not assuredly reflect all of the available information coming from the crash, including EDR data, police reports, scene photographs, or other such materials. Lee is not able to verify any of the information that went into the reconstruction or the veracity of said reconstruction. *Id.*, ¶ 2, A. Therefore, without verification or foundation, the video must be excluded.

**Demonstrably Erroneous Designation Of Collision Area**

Lee admits in his report that he is being used to contradict the MAIT report's interpretation of the crash retrieval data (CDR). Lee states, to the detriment of his

entire report, that, based on his speculative reconstruction, the car positions were as follows: "Garcia could not have completed the turn, Garcia was not facing west at the time of the collision, was not in the center lane or westbound lanes. The reconstructed area of impact was in the left portion of the eastbound #1 lane of Valley Boulevard." Lee contradicts the area of first collision provided in the established MAIT report. Per Lee, the collision area moved from the middle diver to the eastbound lane. In so stating, Lee cripples and defeats his entire report.

First, neither the court nor parties need an expert to tell them where the police patrol vehicle was located before the collision happened. The single video of the pre collision that exists shows "black and white" silhouettes of allegedly officers' patrol vehicles and Valley Blvd is clearly visible. See Dkt. Nos. 40-1 and 41, Ex. H. This video shows one officer driving over the incoming (eastbound) lanes, crossing the middle turning lane, and getting in a west lane. The second officer patrol car, which plaintiffs proffer is defendant Garcia, can be seen passing over both eastbound lanes and entering the middle turning lane on the video. Dkt. No. 40-1. 41. Ex. H at 00:35-00:45 (recommended to be watched on .25x speed). Though blurry, the video makes it impossible for the collision to have happened in the eastbound lanes because the vehicles are above this area.

Because Lee states the collision happened in the eastbound lanes (and bases his whole report thereon), his opinion is inherently erroneous and does not meet the *Daubert* standard. Lee failed to account for or explain the discrepancy between his opinions and the only footage parties have depicting any part of the collision. In fact, when questioned about the video, Lee stated it is "so grainy that you cannot see the precise angle of the car in any of these positions prior to the impact." Andersen Decl., 2, Ex. B at 116:6-23. His erroneous opinion as based on this speculative and improper methodology that does not incorporate or account for all of the evidence. It must be excluded.

**<u>Erroneous Method of Analysis: Presupposing Conclusion And Inputting</u>**



MK MANNING | KASS

MANNING | KASS

**Data To Match**

Additionally, Lee's methods of opining do not meet the standards set forth in *Daubert*. Rather than taking into account the specific EDR and CDR data and the video evidence mentioned above along with other available material and following the information to where it led, Lee testified that he simply tried different scenarios in a PC crash software in order to "match" the outcomes that fit his interpretation of the physical evidence. Andersen Decl., ¶ 2, B, Lee Deposition, at 84:7-93:18. Lee admits that he presupposed a conclusion regarding how the crash happened and how the vehicles must've ended up in their location and input various calculations that would match. In plain terms, Lee admitted that he had a conclusion for which he created conditions (and verified reconstructions) to match.

Lee plainly states that he subordinated the evidence to his presupposed conclusions. For example, Lee claims that the collision was caused by a T-bone type of interaction between the patrol vehicle and plaintiffs' vehicle. Andersen Decl., ¶2, B, Lee Deposition, at 117:25-119:10. Although he admits to not being able to see the crash on the video, Lee presupposes a T-bone style collision is supported essentially off-camera by the video anyway. *Id.* When asked about the EDR data for the plaintiffs' vehicle and how it challenges his conclusions, Lee explicitly stated, "I don't think we can rely on any of the EDR data for steering, for the [plaintiffs' vehicle]." *Id.* at 119:11-18.

Additionally, when faced with the contrary conclusions in the MAIT report, Lee simply repeats that none of them are possible but fails to explain how these contrary opinions are foreclosed by any of the data. Moreover, Lee demonstrated in deposition various instances of inconsistent application of the available material. For example, Lee stated that the EDR data was unreliable but relied on it partially when making his report and concluding his opinions. *Id.* at 119:15-124:17. Lee applies some of the EDR data but not the parts he found unbelievable and does not have an explanation for the presence or application of said data. He concludes there existed a

leftward swerve but does not see this in any video evidence or deduce this from the relevant demonstrative EDR data. He essentially reconstructs that there must have been one based on his theory about how the vehicles ended up where they did.

This type of methodology does not meet the standard for "good science." An expert who reaches his opinion by "cherry-picking" information to support his conclusion while rejecting or ignoring the great weight of the evidence that contradicts his conclusion" is not admissible because the "opinion does not reflect scientific knowledge, is not derived by the scientific method, and is not "good science." *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007).

Lee is clearly unwilling and unable to state that the vehicles were within the area observed by prior investigators, within the MAIT, and visible in the only video evidence in this case. Lee is clearly unwilling and unable to state the most likely speeds, positions, direction, or even type of impact between the vehicles involved in this incident to reasonable degree of scientific probability in this matter because he has presupposed a conclusion as to all of these factors and decided (without explanation) that an alternative conclusion is impossible. As such, the same constitutes speculation and is inadmissible.

## V. CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant the instant motion to exclude Lee's opinions and testimony, specifically regarding the accident reconstruction analysis, the collision reconstruction video used by Lee (and made by Fox AE animators), the location, speed, path, and trajectory of the vehicles, and the existence of a "secondary slap" occurring during the collision, and all other unsupported and speculative scientific opinions rendered in his Rule 26(a) Expert Report and at deposition, from trial.

DATED: October 16, 2026

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Eugene P. Hanrahan
Eugene P. Ramirez
Kayleigh A. Andersen
Eugene P. Hanrahan
Attorneys for Defendants, CITY OF FONTANA; EDWARD BAUTISTA; JESUS GARCIA; DANIEL PRECIE; BRIAN ZOZAYA

**COMPLIANCE STATEMENT REGARDING LOCAL RULE 11-6.2**

The undersigned, counsel of record for Defendants, certifies that this brief contains 3,033 words, which complies with Local Rule 11-6.1.

DATED: October 16, 2026

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: */s/ Eugene P. Hanrahan*
Eugene P. Ramirez
Kayleigh A. Andersen
Eugene P. Hanrahan
Attorneys for Defendants, CITY OF FONTANA; EDWARD BAUTISTA; JESUS GARCIA; DANIEL PRECIE; BRIAN ZOZAYA



MANNING | KASS